UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
METSO MINERALS INC.,

                                Plaintiff,         CV-06-1446 (ADS)(ETB)

      -against-                          <u>MEMORANDUM
                                                              OPINION AND ORDER</u>

POWERSCREEN INTERNATIONAL
DISTRIBUTION LIMITED, TEREX
CORPORATION, POWERSCREEN
NEW YORK, INC. and EMERALD
EQUIPMENT SYSTEMS, INC.,

                                Defendants.
----------------------------------------------------------------X

Before the court is the motion of the plaintiff, Metso Minerals Inc. ("Metso" or "plaintiff"), seeking a protective order pertaining to certain privileged documents that plaintiff asserts were inadvertently produced to the defendants during discovery. Defendants, Powerscreen International Distribution Limited, Terex Corporation, Powerscreen New York, Inc. and Emerald Equipment Systems, Inc. (collectively referred to as "defendants") maintain that plaintiff's production of the privileged documents was not inadvertent and amounts to a waiver of the attorney-client privilege.

An evidentiary hearing with respect to this issue was held on July 10, 2007. Plaintiff offered two witnesses at the hearing, both attorneys from plaintiff's counsel's law firm who were involved in the document production at issue. Defendant offered no witnesses.

For the following reasons, the plaintiff's motion for a protective order is granted.

<u>FACTS</u>

-1-

This is an action for patent infringement. Plaintiff alleges that defendants infringed U.S. Patent Number 5,577,618 ("the '618 Patent"), which is entitled "Mobile Aggregate Material Processing Plant." Defendants deny any infringement and assert, among other things, that plaintiff's patent is invalid.

On March 30, 2007, during the course of discovery in the within action, plaintiff's counsel, Cohen Pontani Lieberman & Pavane LLP ("Cohen Pontani"), produced to defendants' counsel, Bryan Cave LLP, approximately 1,584 pages of documents in response to document production demands made by defendants (the "March 30th Production"). (Tr. of Evid. Hrg., dated July 10, 2007 ("Tr."), 45.) These documents were received by Cohen Pontani from a European law firm referred to as the Ashurst law firm ("Ashurst") and pertained generally to the ownership and acquisition of the '618 Patent. (Id., 7, 55-56.)

A fourth-year associate at Cohen Pontani, David Badanes, testified that the documents were received from Ashurst on March 15, 2007. (Id., 7.) Mr. Badanes began reviewing them on March 20, 2007. (Id., 9, 20.) Although Mr. Badanes could not specifically recall the process by which he reviewed these documents, he testified that he typically adheres to a certain procedure when he is readying documents for production. (Id., 6, 24.) This procedure includes first instructing the paralegal assigned to the case to have the documents photocopied so that a "pristine copy" is able to be maintained in the firm's storage files. (Id., 6.) Mr. Badanes testified that he then reviews the documents, separating them into several categories, including (1) documents to be produced; (2) documents requiring redaction; (3) privileged documents that need to be placed on a privilege log; (4) documents that require discussion with a more senior attorney; and (5) non-responsive documents. (Id.) This procedure of copying, reviewing and

sorting documents is "exactly the same," regardless of the source of the documents. (Id., 6-7.)

Mr. Badanes further testified that this procedure was employed with respect to the documents received from Ashurst and subsequently produced to defendants. (Id., 7-8, 23.) After the documents were separated and categorized, those documents that were intended to be produced were provided to the paralegal to be furnished to the copier, as is typically done in all cases. (Id., 8.) However, an "error" of some sort occurred in this instance, whereby the documents were apparently "commingled" and those documents that were intended to be placed on the privilege log - and accordingly, withheld from the production - were instead provided to the copier with the responsive documents and were ultimately produced to the defendants. (Id.) Mr. Badanes was unable to recall how this error specifically occurred. (Id.) Mr. Badanes did not review the documents a second time once they were received back from the copier, prior to their production. (Id., 21, 22.)

By email, dated May 25, 2007, defendants' counsel, George Yankwitt, informed plaintiff's counsel, Lisa Ferrari, that there were numerous documents included in the March 30th Production that were stamped "privileged." (Id., 64; Pl. Ex. 3.) Mr. Yankwitt further informed Ms. Ferrari that he considered any privilege to have been waived by virtue of the documents having been produced. (Id.) However, Ms. Ferrari testified that she had actually learned of the inclusion of privileged documents in the March 30th Production on May 23, 2007, while preparing a witness for an upcoming Rule 30(b)(6) deposition. (Tr., 64-65.) By letter, dated May 25, 2007, two days after discovering that privileged documents had been produced and on the same day that Mr. Yankwitt informed Ms. Ferrari of the issue, Ms. Ferrari thanked Mr. Yankwitt for bringing the matter to her attention and informed him that it was Cohen Pontani's

belief that the privileged documents had been inadvertently produced. (Id., 65-66; Pl. Ex. 11.) Ms. Ferrari further informed Mr. Yankwitt that Cohen Pontani was investigating the situation and requested that he not share the privileged documents with anyone, including his clients, until he heard back from her concerning the results of the investigation. (Id., 66; Pl. Ex. 11.)

After investigating the issue, Cohen Pontani confirmed that the documents were indeed inadvertently produced, although how the mistake occurred is unclear. (Tr., 67.) By letter, dated May 30, 2007, Ms. Ferrari informed Mr. Yankwitt of the inadvertent production and requested that the documents be immediately returned. (Id.; Pl. Ex. 12.) Ms. Ferrari further informed Mr. Yankwitt that certain non-privileged documents included in the March 30th Production should have been marked "confidential," pursuant to the terms of a Protective Order entered by the parties, but, for some unknown reason, were not. (Id.) Attached to the May 30, 2007 correspondence was also a second supplemental privilege log, identifying the privileged documents inadvertently produced, and a corrected production of the non-privileged, responsive documents bearing the appropriate confidentiality designation. (Tr., 68.) Ms. Ferrari reviewed all of the documents originally received from Ashurst prior to making this revised production.[1] (Id., 70-71, 82.) The documents asserted to be privileged include internal drafts by Ashurst, who are plaintiff's former attorneys, as well as correspondence between Ashurst and plaintiff, and amount to 1,062 pages of the original 1,584 page production. (Id., 70, 81.)

By letter, dated June 6, 2007, Mr. Yankwitt responded to Ms. Ferrari's May 30, 2007 correspondence, stating again that defendants' view was that plaintiff had waived any privilege

---

[1] Ms. Ferrari testified on cross-examination that she did not review the documents prior to the initial production on March 30, 2007. (Tr., 81.)

with respect to the documents included in the March 30th Production by virtue of the fact that they had produced them. (Id., 72; Pl. Ex. 13.) Mr. Yankwitt further stated that plaintiff's designation of confidentiality with respect to the responsive documents was untimely under the terms of the parties' Amended Protective Order. (Id.)

Plaintiff submitted the instant motion to the court on June 6, 2007, seeking an order (1) finding that plaintiff's disclosure of privileged documents in the March 30th Production was inadvertent and did not constitute a waiver of any privilege as to those documents; (2) requiring defendants to either return or destroy the inadvertently produced documents; and (3) permission to designate the responsive documents produced in plaintiff's supplemental production on May 30, 2007 as "confidential," which plaintiff failed to so designate when originally producing them on March 30, 2007.

DISCUSSION

I. Inadvertent Production of Privileged Documents

"As a general rule, the voluntary production of a privileged document waives any claim of privilege with respect to that document." United States v. Rigas, 281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003). However, the inadvertent production of privileged documents does not waive privilege unless the producing party's conduct was "so careless as to suggest that it was not concerned with the protection of the asserted privilege." Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc., 239 F.R.D. 160, 163 (E.D.N.Y. 2005) (citing SEC v. Cassano, 189 F.R.D. 83, 85 (S.D.N.Y. 1999). Courts routinely engage in a four-factor balancing test, in which no single factor is dispositive, to determine whether the inadvertent production of privileged

documents waives privilege. The four factors are: (1) the reasonableness of precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the extent of disclosure relative to the scope of discovery; and (4) overreaching issues of fairness. <u>Lois Sportswear v. Levi Strauss & Co.</u>, 104 F.R.D. 103, 105 (S.D.N.Y. 1985) ; <u>see</u> <u>also</u> <u>Rigas</u>, 281 F. Supp. 2d at 738 (S.D.N.Y. 2003).

      A.     <u>Reasonableness of Precautions to Prevent Inadvertent Disclosure</u>

The first factor to consider is the extent to which plaintiff's counsel undertook reasonable precautions to avoid disclosure. <u>Lois</u>, 104 F.R.D. at 105. The reasonableness of a party's actions to protect privileged information is measured "in light of the risks *foreseeable* to that party at the time the precautions were taken." <u>Rigas</u>, 281 F. Supp. 2d at 739 (emphasis in original). Moreover, the mere fact of accidental disclosure does not automatically render the precautionary measures unreasonable. <u>Id.</u>; <u>see</u> <u>also</u> <u>In re Copper Market Antitrust Litig.</u>, 200 F.R.D. 213, 222 (S.D.N.Y. 2001) ("The mere fact of disclosure does not establish that a party's precautions undertaken to protect the privileged evidence were unreasonable.") (citation omitted).

Although this rule recognizes that mistakes are often made in the discovery process, it "creates an incentive for counsel to guard the privilege closely, as the failure to take reasonable precautions will result in a waiver." <u>United States v. Gangi</u>, 1 F. Supp. 2d 256, 264 (S.D.N.Y. 1998). Where attorneys employ fairly "extensive and rigorous procedures" when reviewing and producing documents, privilege is generally found not to have been waived and the production of any privileged documents is deemed inadvertent. <u>Aramony v. United Way of Am.</u>, 969 F. Supp. 226, 236 (S.D.N.Y. 1997) (holding that there was no waiver of privilege where attorneys

and paralegals initially reviewed documents and segregated potentially privileged documents for review by senior associates, even though the law firm did not re-review the documents selected for copying); Prescient Partners, LP v. Fieldcrest Cannon, Inc., No. 96 Civ. 7590, 1997 WL 736726, at *5 (S.D.N.Y. Nov. 26, 1997) (finding precautions taken to be reasonable where attorney personally reviewed documents, marked privileged documents and instructed paralegal to remove privileged documents prior to production); Lloyds Bank PLC v. Republic of Equador, No. 96 Civ. 1789, 1997 WL 96591, at *4 (S.D.N.Y. Mar. 5, 1997) (holding that there was no waiver where attorneys spent fifty hours reviewing documents for responsiveness and privilege and segregated documents prior to production); Georgia-Pacific Corp. v. GAF Roofing Mfg. Corp., 93 Civ. 5125, 1995 WL 11787, at *2 (S.D.N.Y. Mar. 20, 1995) (finding no waiver where the attorney spent 145 hours reviewing documents for production, the attorney segregated privileged documents, and only by inadvertence, a small number of privileged documents were produced).

Here, counsel for plaintiff, Mr. Badanes, testified that he typically follows the same procedure when reviewing and producing documents. Specifically, Mr. Badanes first has the documents photocopied so that a "pristine" or control set of the documents can be maintained. Next, Mr. Badanes reviews the documents, separating them into five categories: (1) responsive documents, which are to be produced; (2) documents that need to be redacted before being produced; (3) privileged documents; (4) documents that may require discussion with a senior attorney; and (5) non-responsive documents. The documents subject to production are then provided to a paralegal for photocopying and are thereafter produced to the opposing party. As Mr. Badanes testified, which I credit, this procedure was followed in the instant action with

respect to the March 30th Production of the documents plaintiff received from Ashurst.

Accordingly, I do not find plaintiff's counsel's document review procedures to be "so lax, careless, inadequate or indifferent to consequences" as to label them unreasonable, rendering inadvertent production of the privileged documents a waiver. In re Copper, 200 F.R.D. at 222 (citing Martin v. Valley Nat'l Bank, No. 89 Civ. 8361, 1992 WL 196798, at *3 (S.D.N.Y. Aug. 6, 1992)).

    B.    <u>Time Taken to Rectify the Error</u>

The second factor is whether the producing party sought relief promptly upon learning that the privileged information had been disclosed. Atronic, 239 F.R.D. at 165. "Inadvertent disclosure has been held to be remedied when the privilege was asserted immediately upon discovery of the disclosure and a prompt request is made for the return of the privileged documents." Id. (citing cases). "Inordinate delay in claiming the privilege can prejudice the adversary and may be deemed a waiver." Prescient Partners, 1997 WL 736726, at *6 (citation omitted). The length of delay is measured "'from the time the producing party learns of the disclosure, not from the time of the disclosure itself.'" Atronic, 232 F.R.D. at 165 (quoting United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 2000 WL 744369, at *6 (S.D.N.Y. June 8, 2000); Prescient Partners, 1997 WL 736726, at *6 (citing cases).

In In re Natural Gas Commodity Litigation, 229 F.R.D. 82 (S.D.N.Y. 2005), the court held that there was no waiver where the producing party immediately asserted privilege upon discovery of the inadvertent disclosure and the pages at issue were listed on a privilege log. See id. at 90; see also Georgia-Pacific Corp. 93 Civ. 5125, 1995 WL 11787, at *2 (S.D.N.Y. 1995) (holding that reacting two business days after discovery of the inadvertent disclosure was not an

inordinate delay). Similarly, in United States v. Rigas, 281 F. Supp. 2d at 741, the court held that where the government sent a letter seeking the return of privileged information on the same day that it learned of the inadvertent disclosure, its efforts to rectify the error weighed in favor of finding that there was no waiver of privilege.

I credit the testimony of plaintiff's counsel, Ms. Ferrari, who testified that she discovered plaintiff's inadvertent disclosure on May 23, 2007, while reviewing documents for an upcoming deposition. On May 25, 2007, defendants' counsel, Mr. Yankwitt, also informed plaintiff's counsel, via email, of the disclosure of what appeared to be privileged documents. That same day, Ms. Ferrari sent Mr. Yankwitt a letter thanking him for bringing the matter to her attention and informing him of her belief that the documents were inadvertently produced. Ms. Ferrari further advised Mr. Yankwitt that Cohen Pontani would be investigating the situation and requested that he not share the documents, or the information contained therein, with anyone pending the results of her investigation. On May 30, 2007, five calendar days later, but actually only two business days later due to the Memorial Day holiday, Ms. Ferrari again wrote to Mr. Yankwitt, confirming that the documents had been inadvertently produced and requesting either their immediate return or certification of their destruction.

Based on the foregoing, I do not find that plaintiff inordinately delayed in attempting to rectify the error of its inadvertent disclosure.

    C.    <u>The Scope of Discovery and Extent of Disclosure</u>

The third factor focuses on a comparison between the number of privileged documents - or pages - disclosed and the overall size of the document production. See Prescient Partners, 1997 WL 736726, at *6 (holding that there was no waiver where 117 pages of the

overall document production of 12,612 pages were inadvertently disclosed). "This factor recognizes the reality that 'it is virtually impossible to avoid any error whatsoever in dealing with large volumes' of discovery material." Rigas, 281 F. Supp. 2d at 740 (quoting Cassano, 189 F.R.D. at 86). Courts have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure as opposed to a knowing waiver of privilege. See, e.g., In re Natural Gas, 229 F.R.D. at 89 (finding no waiver where defendant inadvertently disclosed three pages out of 65,000 pages produced and 140,000 pages reviewed); In re Copper, 200 F.R.D. at 222 (finding the scope of inadvertent production small where 17 privileged documents out of 15,000 pages were inadvertently produced); Asian Vegetable Research v. Inst. of Int'l Educ., 94 Civ.6551, 1995 WL 491491, at *7 (S.D.N.Y. Aug. 17, 1995) (finding twenty inadvertently disclosed pages was a "relatively small" number compared to the total of 75,000 pages produced); Lois, 104 F.R.D. at 105 (finding that where 22 documents out of 16,000 pages reviewed were claimed to be privileged, disclosure did not constitute a waiver).

In the within action, the March 30th Production consisted of 1,584 pages. Plaintiff asserts that 1,062 pages of that production - or 181 documents - are privileged and were inadvertently produced. Defendants argue that this amounts to sixty-seven percent (67%) of the entire March 30th Production and therefore, based on case law, is not so small as to weigh against a finding of waiver. However, as plaintiff asserts, although the privileged documents amount to sixty-seven (67%) of the March 30th Production, they constitute twelve percent (12%) of the entire production to defendants thus far, which totals approximately 9,000 pages. Moreover, there is no pattern of error here. Rather, this is the first time that plaintiff has inadvertently produced privileged documents.

Accordingly, although the size of the disclosure is relatively large when compared to the overall size of the March 30th Production, it is not so extensive when compared to the total document production in this case on a whole. In addition, the fact that this disclosure is the result of a single error on the part of plaintiff weighs in favor of finding that privilege has not been waived. See Prescient Partners, 1997 WL 736726, at *7 (finding that "despite the large size of the disclosure," where disclosure was caused by a single unforeseen error "as opposed to numerous errors evidencing imprudence," it did not weigh in favor of waiver).

D. Overreaching Issues of Fairness

The final factor focuses on "whether the act of restoring immunity to an inadvertently disclosed production of documents would be unfair." Prescient Partners, 1997 WL 736726, at *7. It does not, however, focus on "whether the privilege itself deprives parties of pertinent information." Id.; see also In re Copper, 200 F.R.D. at 223 ("Depriving a party of information in an otherwise privileged document is not prejudicial.").

"Courts generally weigh the prejudices to each party." In re Natural Gas, 229 F.R.D. at 89. On the one hand there is the degree to which the contents of the disclosure have been disseminated and relied upon, see Rigas, 281 F. Supp. 2d at 741 ("[g]enerally, courts hold that fairness dictates a finding of waiver in cases where the privileged information at issue has been widely disseminated"), and, on the other hand, is the harm to the client who suffers a waiver of privilege due to an inadvertent error. See Prescient Partners, 1997 WL 736726, at *7 ("Absent any prejudice to the defendants caused by restoring immunity to the documents, '[i]t would be inappropriate for the client of producing counsel to suffer the waiver of privilege . . . due to an isolated, inadvertent error.'") (quoting Aramony, 969 F. Supp. at 237). Additionally, "in certain

circumstances, '[a]dvancing claims or defenses that make the protected information at issue relevant to the case may justify a waiver.'" Atronic, 232 F.R.D. at 166 (finding a waiver where the emails at issue went to "the heart of th[e] breach of contract litigation") (quoting Local 851 Brotherhood of Teamsters v. Kuehne & Nagel Air Freight, Inc., 36 F. Supp. 2d 127, 134 (E.D.N.Y. 1999) (alteration in original).

Defendants assert that because the documents at issue go to the heart of the defenses asserted in their Answer, namely ownership rights of the patent at issue and plaintiff's standing to bring this action, restoring privilege to them would be fundamentally unfair. However, it is not clear from the evidence introduced at the evidentiary hearing or the parties' post-hearing submissions whether these documents do indeed pertain to the issues raised by defendants. Moreover, as stated above, the evaluation of overall fairness does not focus on whether or not the receiving party is being deprived of information it believes is pertinent to its prosecution or defense of the action. See In re Copper, 200 F.R.D. at 223; Prescient Partners, 1997 WL 736726, at *7; see also Bank Brussels Lambert v, Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 446 (S.D.N.Y. 1995) ("[T]he relevance of a privileged document to the merits of the litigation does not make it unjust to withhold it from discovery."). Rather, it pertains to the relative prejudices each party would suffer by virtue of restoring privilege to the documents inadvertently disclosed. See In re Natural Gas, 229 F.R.D. at 89; Prescient Partners, 1997 WL 736726, at *7.

Here, defendants' counsel states in its initial opposition letter to the instant motion, dated June 12, 2007, that "none of the documents [at issue] have been disclosed . . . to anyone" and that "they have been and remain segregated." (Pl. Ex. 15, at 1.) Moreover, in their post-hearing

memorandum of law, defendants reiterate that they "have not utilized any of these documents in preparation for the upcoming depositions pending resolution of this issue by the Court." (Def. Mem. of Law, 4.) Accordingly, defendants cannot claim to have relied on these documents to their detriment and "have not demonstrated any unfairness to them that would result from the return of the documents." In re Natural Gas, 229 F.R.D. at 90 (finding that considerations of overall fairness favored restoring privilege to the documents where plaintiffs did not use or rely on the documents inadvertently produced and refrained from reviewing the documents pending the court's resolution of the dispute).

On the other hand, plaintiff will suffer a great disadvantage should a waiver of privilege be found, whereby defendants will be privy to, and will be able to use against plaintiff, over 1,000 pages of privileged information by virtue of one single error on the part of plaintiff's counsel. Since there has been no showing of prejudice to defendants if plaintiff's assertion of privilege is recognized as to the documents at issue, "[i]t would be inappropriate for [plaintiff] to suffer the waiver of privilege . . . due to an isolated, inadvertent error." Aramony, 969 F. Supp. at 237.

Finally, the court notes that disputes such as this are troubling given the ethical standards all attorneys are expected to adhere to. As pointed out by the court in United States v. Rigas, 281 F. Supp. 2d at 742,

> '[a] lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them.' *One would expect nothing less.*

Id. (quoting Am. Bar Ass'n Standing Comm. on Ethics and Prof. Resp., Formal Op. 92-368

(1992)) (emphasis added).

Based on the foregoing, I find that a balance of the factors outlined above weighs in favor of the plaintiff and that the privileged documents produced to the defendants were the result of an inadvertent disclosure. Accordingly, the plaintiff has not waived any privilege with respect to those documents.

Defendants are directed to return the 1,062 pages of documents from the March 30th Production that have been identified by plaintiff as privileged or, in the alternative, destroy the documents and provide plaintiff with a certification of destruction. As stated at the evidentiary hearing, defendants may challenge the validity of plaintiff's assertion of privilege with respect to specific documents by motion(s) to compel.

II.     The Designation of "Confidential" on Certain Responsive Documents

By its motion, plaintiff also seeks to designate the supplemental production of responsive documents made to defendants on May 30, 2007 as "confidential," pursuant to the Amended Protective Order previously agreed to by the parties to this action. Plaintiff failed to designate the confidentiality of these documents when it originally produced them to defendant as part of the March 30th Production. Defendant objects to plaintiff's request on the grounds that it is untimely.

As defendants point out, the Amended Protective Order provides that the producing party shall designate a document as "confidential" at the time of production or where, it fails to do so, within thirty (30) days of production. (Am. Protective Order, dated Dec. 18, 2006, ¶ 2(b)). Here, the documents at issue herein were originally produced on March 30, 2007, without the

proper confidentiality designation. Plaintiff's supplemental production, including only those documents it deemed responsive after discovering its inadvertent disclosure of privileged materials, was made on May 30, 2007. This production included the designation of "confidential" on those documents believed to be so by plaintiff, which apparently amounts to the entire supplemental production of approximately 522 pages. Defendants contend that the confidentiality designation on May 30, 2007 is untimely because it occurred sixty (60) days after the production of the documents, rather than within thirty (30) days of the date of production, as required by the Amended Protective Order.

Although defendants are technically correct, given the sensitive nature of the information at issue in this action and the inadvertent disclosure of privileged documents that occurred in the March 30th Production, fairness dictates that plaintiff be permitted to designate as confidential those documents it believes to be so that were included in the supplemental document production of May 30, 2007. The designation was made within seven (7) days from discovery of the error and defendants claim no prejudice. Plaintiff is accordingly granted permission to do so.

CONCLUSION

Based on the foregoing, plaintiff's motion for a protective order with respect to the 1,062 pages of privileged documents inadvertently produced to defendants is granted. Plaintiff is not deemed to have waived any privilege with respect to those documents. Defendants are directed to immediately return the documents to plaintiff or, alternatively, destroy the documents and certify their destruction. Plaintiff is also permitted, pursuant to the Amended Protective Order, to designate as "confidential" the documents produced in plaintiff's supplemental document

production of May 30, 2007.


SO ORDERED.

Dated: Central Islip, New York
       September 6, 2007

                                                    /s/ E. Thomas Boyle
                                                    HON. E. THOMAS BOYLE
                                                    United States Magistrate Judge