```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
METSO MINERALS, INC.,                         :
            Plaintiff,                        :
                                              :
     v.                                       :    Civil Action No. CV-06-01446
                                              :            (ADS) (ETB)
POWERSCREEN INTERNATIONAL                     :
DISTRIBUTION LIMITED,                         :
TEREX CORPORATION,                            :
POWERSCREEN NEW YORK, INC., and               :
EMERALD EQUIPMENT SYSTEMS, INC.,              :
            Defendants.                       :
----------------------------------------------------------------x
```

**METSO'S OPPOSITION TO
DEFENDANTS' MOTION *IN LIMINE* [D.E. 347]
TO PRECLUDE PLAINTIFF'S INTRODUCTION OF EVIDENCE OR ARGUMENT
REGARDING UNEXPECTED RESULTS**

Plaintiff Metso Minerals, Inc. ("Metso") hereby opposes Defendants' Motion *In Limine* to Preclude Plaintiff's Introduction of Evidence or Argument Regarding Unexpected Results (Docket Entry 347). Defendants' motion is fundamentally flawed as it is based upon an utterly false allegation -- that Mr. Whyte's Expert Report "is not based on a comparison between the '618 patent and the closest prior art -- as required by the doctrine of unexpected results"; "He does not identify any comparison with the prior art". (Defendants' brief, pages 1 and 4). Defendants appear not to have read the entirety of Mr. Whyte's Expert Report, nor for that matter, the deposition testimony of Malachy Rafferty, in which they both specifically compare the invention claimed in Metso's '618 patent to "the closest prior art". Defendants' motion is baseless.

**I.   FACTS**

One of the many compelling reasons why the claims of Metso's '618 patent are not obvious under 35 U.S.C. § 103(a) is that the claimed invention had unexpected results. In particular, the way in which the lateral conveyors folded in their unique and never-before employed **L** orientation

- 1 -

allowed the center longitudinal conveyor to be wider (48 inches in width) than in prior screening machines (which were 30 to 36 inches in width), with<u>out</u> requiring the entire screening machine to be wider, which might make it problematic to transport the entire mobile screening machine on roads.  Having a wider center conveyor enabled the use of a wider screen box through which the material to be screened passed, and thus dramatically increased (by about 77%) the processing capacity of the center conveyor and the processing capacity of the entire screener as compared to then known mobile screeners, including defendant Powerscreen's commercially sold screener design depicted in its Eriksson patent (WO 85/03652), and the allegedly prior art screener known as the Dominator screener.

Defendant Powerscreen's Eriksson design screener and the Dominator screener have been, to date, the two primary references in all of defendants' obviousness attacks, making them, according to defendants' past allegations, the closest prior art (although, consistent with defendants' long-standing litigation strategy in this case to disclose nothing voluntarily, defendants' brief surprisingly does not specifically identify what prior art references defendants contend are the "closest prior art").  The Dominator screener was apparently made and sold <u>in Northern Ireland</u>, where defendant Powerscreen is located, before the U.S. patent application for Metso's '618 patent was filed, so it is certain that defendant Powerscreen, located in Northern Ireland and a self-described leader in the business, was aware of it at that time.  (However, it never occurred to Powerscreen to combine these two designs to result in the **L** fold design of Metso's '618 patent, although defendants will allege at trial that this combination was obvious, clearly using improper hindsight).  Both Powerscreen's Eriksson design, commercially sold screener and the Dominator screener had center conveyors 30 to 36 inches wide.  However, obtaining a screener with a wider center conveyor was <u>not</u> the intended goal of the invention of Metso's '618 patent, but was an

unexpected and significant novel benefit. As Malachy Rafferty, the inventor of the invention claimed in Metso's '618 patent, testified at his deposition:

> Q. What was the need, if any, to have it fold as you indicated it folds, and to tie it tighter into the machine if you didn't want to have a larger machine, with a larger screen box?
> RAFFERTY: Well, the answer would be very long if I really explained it from the start, was that Powerscreen took me to Court, right, some years before this, right? And they made affidavits and stuff against me for that I allegedly copied them. And they turned round then and they made a machine the same as mine and photographed it. And it looked that I copied them. But it turned out when it went through courts and different things that they made a machine the same as mine and copied it. Now, when I was making the Senator machine, I knew that I -- and I just remembered today I was going through all the paperworks I had, that Powerscreen had a patent on the wing conveyer, right, and also Finlay had a copy or a patent on their conveyer, so I was left with no alternative only to come up with a new type of conveyer not seen in the marketplace before. So that is the real reason why I invented that conveyer. It so happens to be that you can put a wider screen on with that conveyer.
> Q. I'm sorry, I didn't catch that?
> RAFFERTY. It so happens to be that you can put a wider conveyer and stuff on with that screen, but that's not the real reason why it was invented. (Rafferty Dep., pp. 255:8 - 256:9).
>
> U.K. JUDGE: I think the question is: is that something, what you've described as the benefit, potential benefit of added width is that something which you had expected from the idea that you were working on.
> RAFFERTY: Well maybe to put it another road, when you're designing something, you always try and get the best advantages out of it.
> U.K. JUDGE: Yes.
> RAFFERTY: So, one of the advantages is you can have a wider conveyer, the second advantage is you can have a wider screen, and the third advantage is by doing all of that you can have the machine narrow herself, that means you can travel on the road and get TUV and all the things, yes, but there's other wee things as well, but I could go through the list of stuff now, you know.
> Q: Why is having a wider screen or wider centre conveyer of interest to the customers?
> RAFFERTY. You get bigger production on the machine and as I said yesterday that would have been one of the first biggest production three belt machines manufactured in Ireland and possibly other places. (Rafferty Dep., pp. 416:5 - 417:2).

So, even the inventor believed that being able to achieve a wider center conveyor, and thus an increased production capacity, was an unexpected (and desired) result as a consequence of folding the lateral conveyors in the novel **L** orientation. This novel **L** folding lateral conveyor

design was not practiced by any of the then prior known screeners (and defendants have found none despite scouring the world's many patent offices for it for years). Having a wider center conveyor while maintaining a relatively narrow width for the entire screener machine was also unheard of and not provided by defendant Powerscreen's Eriksson design screener or the Dominator screener, the closest prior art, according to defendants. Despite defendants' allegation to the contrary, this fact was confirmed in the Expert Report of Metso's expert Stephen Whyte, an expert report that was produced <u>before</u> the deposition of Malachy Rafferty quoted from above. Defendants' motion falsely alleges that Mr. Whyte's Expert Report "is not based on a comparison between the '618 patent and the closest prior art -- as required by the doctrine of unexpected results" (defendants' brief, page 1), and that "He does not identify any comparison with the prior art" (defendants' brief, page 4). However, defendants surprisingly fail to inform the Court that Mr. Whyte's "Opposition" Expert Report of 9/5/08, which is nowhere attached to defendants' papers, specifically **does** refer to Powerscreen's Eriksson design screener and Powerscreen's Eriksson patent, apparently alleged by defendants as the "closest prior art", and compares them to the invention claimed in Metso's '618 patent with respect to the unexpected result relating to the central conveyor. Based upon Mr. Whyte's expertise and professional engineering experience over the past 18 years, the past 15 years in designing mobile screeners and crushers, and in obtaining patented improvements thereto, Mr. Whyte stated in his Expert Report:

> "One of those screeners commercially sold by Powerscreen is described in Powerscreen's PCT Patent Application WO 85/03652, corresponding to U.S. Patent No. 4,983,280 (Eriksson). That screener suffered from three significant problems ... Second, because the width of the entire machine had [to] be sufficiently narrow so as not to exceed vehicle width restrictions for road travel, the combined thicknesses of the two lateral conveyors in the transport position along side the main central conveyor reduced the maximum possible width of the main central conveyor. ... In contrast, and as described in the '618 patent (see, for example, col. 2, line 62 to col. 3, line 5), a screener in accordance with the claims of the '618 patent does not suffer these disadvantages. ... Second, having the lateral conveyors extend upward and then longitudinally in their transport positions unexpectedly allows the main central conveyor to be wider without requiring the entire screener to be wider. If the

width of the central conveyor is wider, the entire throughput volume of the screener can be increased. Calculations show that an increase of main conveyor width by 33% (i.e., 36" to 48") unexpectedly results in an increase in central conveyor throughput by about 77%. (See attached Exhibit SAW 19). In particular, the invention claimed in the '618 patent allows the width of the main central conveyor to increase from about 36" to about 48". Since customers want to be able to process as much material as possible in the same amount of time, such a dramatic increase in throughput volume is very desirable." (Whyte Opposition Expert Report, ¶¶ 54, 55, attached hereto as Exhibit 1).

Defendants also fail to inform the Court that Mr. Whyte's Opposition Expert Report also refers to the other mobile screeners that, based upon his personal knowledge in this very field of technology, were commercially available:

"I am familiar with various mobile screeners that were commercially available before the invention of the '618 patent." (Whyte Opposition Expert Report, ¶ 54, attached hereto as Exhibit 1).

Both the Powerscreen Eriksson design screener and the Dominator screener had central conveyors that were 30 to 36 inches wide, so they suffered from the same problem discussed in detail above in Mr. Whyte's Expert Report. Defendants do not contend in their brief that these two designs did <u>not</u> suffer from this same problem.

The unexpected benefit of the invention of Metso's '618 patent that a wider center conveyor could be used was so significant that defendants willfully copied Metso's patented design -- defendant Powerscreen's designer, Neill Suitor, had Metso's patent in his very hands and was studying Metso's commercial embodiment, the Senator screener, as he was redesigning defendant Powerscreen's screeners. Powerscreen thus modified its mobile screener design to copy the novel **L** folding lateral conveyor design of Metso's patent, and Powerscreen's infringing screeners have had, since then, wider center conveyors and wider screen boxes than in prior designs. (As evidenced by Mr. Rafferty's testimony above, copying Mr. Rafferty's designs was standard operating procedure at Powerscreen -- Powerscreen had previously copied one of Mr. Rafferty's designs and then, apparently ignoring the fact that Powerscreen had stolen the design from Rafferty, brazenly charged

Rafferty with copying.) Other competitors, who have yet to be sued for their infringements of Metso's patent, similarly copied Metso's patented **L** folding lateral conveyor design, and their infringing mobile screeners similarly have wider center conveyors and wider screen boxes than in prior designs. The defendants and their infringing brethren all reap the unexpected increased processing capacity benefit of Metso's '618 patent.

Defendants appear to take issue (pages 3-4) with the calculations that are reported in Mr. Whyte's Expert Report which dramatically and clearly demonstrate with numerical values the increase in processing capacity of a screener when the center conveyor is widened. Although defendants admit that such an increase in capacity "can be **calculated** using basic geometry and trigonometry" (page 4, emphasis in original), defendants do not contend that this calculation is not within the scope of an expert's testimony, or even Mr. Whyte's. The calculation of the <u>amount</u> of increased processing capacity resulting from an increased center conveyor can be calculated, provided one has any reason for doing so. It is also surprising that a 33% increase in width of the center conveyor results in more than twice as much an increase in processing capacity, 77%. If defendants contest these calculations in any way, that is the purpose of trial cross-examination. In any event, what was certainly unexpected was that changing the folding orientation of the lateral conveyors would allow a wider center conveyor to be used, which would have the effect of an increased processing capacity.

Defendants erroneously contend that the calculations in Mr. Whyte's Expert Report refer only to embodiments of Metso's '618 patent:

> "Further, his two data sheets both appear to describe two embodiments of the '618 patent (one with a slightly wider belt); he does not include a data sheet for the prior art." (pages 4-5).

Defendants are wrong. Mr. Whyte's "data sheets" compare the narrower 36-inch wide center belt throughput of the prior art devices to the 48-inch wide center belt throughput of the Senator

screener, the first commercial embodiment of the invention claimed in Metso's '618 patent, as is clear from a careful reading of Mr. Whyte's Expert Report, ¶ 55, attached hereto as Exhibit 1.

Defendants argue (pages 3-4) that achieving a wider center conveyor, and thus an increased production capacity, by folding the lateral conveyors in the novel **L** orientation was not an unexpected result, but merely "readily calculable by simple mathematics". However, virtually all inventions are, in hindsight, readily calculable by mathematics and other science and are obvious <u>after</u> they are invented. Nevertheless, Malachy Rafferty, the inventor, considered the ability to use a wider center conveyor as an unexpected result of changing the orientation of the folding lateral conveyors. And if it was not unexpected, but perfectly predictable, why did Powerscreen and the as yet un-sued other patent infringers not come up with the patented idea independently, but instead copied the idea, given the very clear benefits of having a wider center conveyor mounted on a relatively narrow screening machine?

Defendants complain (page 3) that the Expert Report of Arthur Steiner, Metso's patent expert, "parrots" Mr. Whyte's statement about unexpected results. Of course, Mr. Steiner's Expert Report merely <u>relied upon</u> the opinions expressed by Mr. Whyte in his Expert Report.

## II.  ARGUMENT

### A.  EVIDENCE OF UNEXPECTED RESULTS CANNOT BE EXCLUDED OR IGNORED

Defendants assert that Metso's '618 patent is invalid as being obvious under 35 U.S.C. § 103(a). To determine obviousness, the jury will have to assess: (1) the scope and content of the prior art, (2) the differences between the prior art and the claimed invention, (3) the level of skill in the art, and (4) <u>secondary considerations of nonobviousness</u>. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966) (emphasis supplied). The Federal Circuit has held that when secondary considerations exist, they cannot be ignored in the obviousness analysis. *Ortho-McNeil Pharm. Inc. v. Mylan Labs. Inc.,* 520 F.3d 1358, 1365 (Fed. Cir. 2008); *Gambro Lundia AB v. Baxter*

*Healthcare Corp.*, 110 F.3d 1573, 1578-79 (Fed. Cir. 1997) ("Objective indicia may often be the most probative and cogent evidence of nonobviousness in the record"). "[S]econdary considerations" have been an integral part of the obviousness analysis since long before 2000 when defendants' willful infringement began. See, e.g., *Dow Chemical Co. v. American Cyanamid Co.,* 816 F.2d 617, 620, 622 (Fed. Cir. 1987).

Among the many "secondary considerations of nonobviousness" is unexpected results of the invention that is claimed in the patent. *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380 (Fed. Cir. 1986) ("Objective evidence such as commercial success, failure of others, long-felt need, and unexpected results must be considered *before* a conclusion on obviousness is reached and is not merely "icing on the cake," as the district court stated at trial."); *Ortho-McNeil Pharm. Inc. v. Mylan Labs. Inc.,* 520 F.3d 1358, 1365 (Fed. Cir. 2008) ("As this court has repeatedly explained, . . . [secondary considerations] evidence is not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of nonobviousness"). *Lindemann v. Am. Hoist & Derrick Co.,* 730 F.2d 1452, 1461-2 (Fed. Cir. 1984) (finding clear error where "the district court ignored the unexpected or surprising results achieved by the claimed invention"); *Rolls-Royce, PLC v. United Technologies Corp.*, 603 F.3d 1325, 1340 (Fed. Cir. 2010).

For this reason alone, evidence of the unexpected results of the invention claimed in Metso's '618 patent must be given full consideration by the jury.

### B. EXCLUDING EXPERT TESTIMONY IS A DRASTIC MEASURE THAT IS INAPPROPRIATE HERE

*Daubert* requires the District Court to ensure that expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-90 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). "When the methodology is sound,

and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) (citing *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). "*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *i4i,* 598 F.3d at 852.

At their heart, defendants' disagreements are with Messrs. Whyte's and Steiner's *conclusions*, not their methodology.

Defendants' allegations of "jury confusion" are again just disagreements with Metso's experts' conclusions, which are properly addressed at trial through competing expert testimony and cross-examination, not through a motion *in limine*. *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) (citing and quoting *Daubert,* 509 U.S. at 590, 596) ("As long as the expert's testimony rests upon 'good grounds' ... it should be tested by the adversary process -- competing expert testimony and active cross-examination -- rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies."). Accordingly, wholesale exclusion of evidence or opinions as to unexpected results is wrong.

### III. CONCLUSION

For these reasons, defendants' present motion must be denied.

Dated: October 5, 2010          COHEN PONTANI LIEBERMAN & PAVANE LLP

<u>s/ Michael C. Stuart</u>
Michael C. Stuart
Lisa A. Ferrari
Marilyn Nieman
Teodor J. Holmberg
551 Fifth Avenue
New York, New York  10176
Tel.:  (212) 687-2770
Fax:  (212) 972-5487
*Attorneys for Plaintiff Metso Minerals, Inc.*

#205831

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused to be served a complete and correct copy of the foregoing **METSO'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* [D.E. 347] TO PRECLUDE PLAINTIFF'S INTRODUCTION OF EVIDENCE OR ARGUMENT REGARDING UNEXPECTED RESULTS** on defendants, as follows, by ECF, addressed as follows:

> George B. Yankwitt, Esq.
> Mary M. Chang, Esq.
> Squire, Sanders & Dempsey LLP
> 30 Rockefeller Plaza
> New York, New York 10112
>
> *Counsel for Defendants*
> *Powerscreen International Distribution Limited,*
> *Terex Corporation,*
> *Emerald Equipment Systems, Inc., and*
> *Powerscreen New York, Inc.*

October 5, 2010                                                             /s/ Michael C. Stuart