UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

METSO MINERALS, INC.,           :

                            :

        Plaintiff,           :

                            :

        v.               :      Civil Action No. CV-06-01446

                            :          (ADS) (ETB)

POWERSCREEN INTERNATIONAL    :

DISTRIBUTION LIMITED,        :

TEREX CORPORATION,         :

POWERSCREEN NEW YORK, INC., and  :

EMERALD EQUIPMENT SYSTEMS, INC.,  :

                            :

        Defendants.      :

---------------------------------------------------------------x

# PLAINTIFF METSO'S
## PROPOSED **AMENDED** JURY INSTRUCTIONS

Michael C. Stuart
Lisa A. Ferrari
Marilyn Neiman
Teodor J. Holmberg
Cohen Pontani Lieberman & Pavane LLP
551 Fifth Avenue
New York, New York 10176
Phone: 212-687-2770
Telefax: 212-972-5487

Counsel for Plaintiff
Metso Minerals, Inc.

**TABLE OF CONTENTS**

I.  PRELIMINARY JURY INSTRUCTIONS ................................................................ 1

    A.  The Nature of the Action and the Parties ................................................ 1

    B.  United States Patents ................................................................................ 2

    C.  Patent Litigation ...................................................................................... 4

    D.  Contentions of the Parties ........................................................................ 5

    E.  Trial Procedure ........................................................................................ 7

II.  POST TRIAL INSTRUCTIONS ...................................................................... 10

    A.  General Matters, Issues Presented ........................................................ 10

    B.  Inventorship ........................................................................................... 10

    C.  Witnesss Credibility .............................................................................. 11

    D.  Expert Witnesses—Generally ............................................................... 13

    E.  Conflicting Expert Testimony ............................................................... 13

    F.  Claim Construction, Generally ............................................................. 14

    G.  Claim Construction, Specifically .......................................................... 15

    H.  Infringement ........................................................................................... 18

        1.  Infringement, Generally ............................................................ 18

        2.  Literal Infringement .................................................................. 20

        3.  Infringement Under The Doctrine Of Equivalents ................... 22

        4.  Infringement Regarding Claim 1, Specifically ........................ 24

        5.  Dependent Claims ..................................................................... 29

        6.  Infringement Regarding Claims 2, 3, 7 and 9, Specifically ..... 30

            a)  Claim 2 ......................................................................... 30

            b)  Claim 3 ......................................................................... 31

            c)  Claim 7 ......................................................................... 32

            d)  Claim 9 ......................................................................... 33

    I.  Direct Infringement: Mutiple Alleged Infringers ................................. 33

    J.  Indirect Infringement—Active Inducement ........................................... 35

    K.  Willful Infringement .............................................................................. 36

    L.  Damages ................................................................................................. 39

        1.  Generally ................................................................................... 39

**2.**     Reasonable Royalty - Entitlement ............................................................. 40

**3.**     Reasonable Royalty - Definition.................................................................. 41

**4.**     Reasonable Royalty, Relevant Factors ...................................................... 42

**5.**     Acceptable Non-Infringing Alternatives..................................................... 45

**6.**     Reasonable Royalty, Timing........................................................................ 46

**7.**     Reasonable Royalty, Form of Agreement................................................... 47

**8.**     Inclusion of the Entire Market Value of the Infringing Screeners in the Royalty Base ........................................................................................................ 47

**9.**     Convoyed Sales............................................................................................ 48

**10.**    The Amount of the reasonable royalty does not need to be proven precisely ............................................................................................................... 49

**M.**    Invalidity Defense ............................................................................................... 49

**1.**     Summary ...................................................................................................... 49

**2.**     "Prior Art" Defined .................................................................................... 50

**3.**     Obviousness ................................................................................................ 52

    **a)**    Scope and Content of the Prior Art................................................. 53

    **b)**    Differences Between the Claimed Invention and the Prior Art ......... 57

    **c)**    Level of Ordinary Skill .................................................................... 61

    **d)**    Factors Indicating Non-Obviousness ............................................... 61

**N.**    Equitable Defenses............................................................................................... 64

**1.**     Inequitable Conduct ................................................................................... 64

    **a)**    Material .......................................................................................... 64

    **b)**    Intent to Deceive............................................................................. 65

    **c)**    Balancing of Materiality and Intent ................................................ 66

**O.**    Laches ................................................................................................................... 68

# **TABLE OF AUTHORITIES**

## **Cases**

A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700 (Fed. Cir. 1983) ............................................. 22

A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed. Cir. 1992) .................... 70

Amgen Inc. v. F. Hoffmann-La Roche Ltd., 580 F.3d 1340 (Fed. Cir. 2009) ................. 20, 24, 50

Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946) ............................................................ 12

Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476 (1964) ................................. 40

Atlas Powder Co. v. E.I. Du Pont De Nemours & Co., 750 F.2d 1569 (Fed. Cir. 1984) ........................................................................................ 24

Barbed Wire Patent Case, 143 U.S. 275 (1892) ............................................................ 57

BMC Resources v. Paymentech, L.P., 498 F.3d 1373 (Fed. Cir. 2007) ................................. 20, 21

Broadcom Corp. v. Qualcom, Inc., 543 F.3d 683 (Fed. Cir. 2008) ........................................ 39

CIAS, Inc. v. Alliance Gaming Corp., 504 F.3d 1356 (Fed. Cir. 2007) .................................... 22

Colorado v. New Mexico, 467 U.S. 310 (1984) ............................................................ 39, 50, 61

Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, 424 F.3d 1293, 1311 (Fed. Cir. 2005); ........................................................................................ 35

Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336 (Fed. Cir. 2001) ........................................................................................ 40

Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358 (Fed. Cir. 2003) ........................ 67

Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 f.2d 1320 (Fed. Cir. 1987) ................. 49

Demaco Corp. v. F. Von Langsdorf Licensing Ltd., 851 F.2d 1387 (Fed. Cir. 1988) ........................................................................................ 63

DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314 (Fed. Cir. 2009) ........................................................................................ 39, 63

Digital Control Inc. v. Charles Mach. Works, 437 F.3d 1309 (Fed. Cir. 2006) ........................ 67

Dow Chem. Co. v. Mee Indus., Inc., 341 F.3d 1370 (Fed. Cir. 2003) .................................... 57

DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006) .................................... 36

Eagle Comtronics Inc. v. Arrow Comm'n Labs Inc., 305 F.3d 1303 (Fed. Cir. 2002) ........................................................................................ 24

Environmental Designs, Ltd. v. Union Oil Co., 713 F.2d 693 (Fed. Cir. 1983) ........................ 61

Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC, 350 F.3d 1327, 1342 (Fed. Cir. 2003 .................................................................... 36

Ferring B.V. v. Barr Labs., Inc., 437 F.3d 1181 (Fed. Cir. 2006) ........................................ 67

iii

*Finnigan Corp. v. USITC,* 180 F.3d 1354 (Fed. Cir. 1999)........................................................ 57

*Fromson v. W. Litho Plate & Supply Co.,* 853 F.2d 1568 (Fed. Cir. 1998)................................ 41

*Gambro Lundia AB v. Baxter Healthcare Corp.,* 110 F.3d 1573 (Fed. Cir. 1997)..................... 63

*Gargoyles, Inc. v. United States,* 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); ......................... 46

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770 (Fed. Cir. 1995)............................ 70

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F.Supp. 116 (S.D.N.Y. 1970).......... 42, 45, 47

*Golight, Inc. v. Wal-Mart Stores, Inc.,* 355 F.3d 1327 (Fed. Cir. 2004) .................................... 42

*Graham v. John Deere Co.,* 383 U.S. 1 (1966) ................................................................ 53, 61, 63

*Grain Processing Corp. v. Am. Maize-Prods. Co.,* 185 F.3d 1341, 1349 (Fed. Cir. 1999) ...................................................................................................................................... 45

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605 (1950) .................................... 24

*Hogan v. New York Times Co.,* 211 F. Supp. 99, 119 (D. Conn. 1962 ...................................... 13

*i4i L.P. v. Microsoft Corp.,* 598 F.3d 831 (Fed. Cir 2010).................................................... 39, 45

*In re Caveney and Moody,* 761 F.2d 671 (Fed. Cir. 1985)........................................................... 56

*In re Certain Crystalline Cefadroxil Monohydrate,* 15 U.S.P.Q.2d 1263, 1270-1 (U.S. Int'l Trade Comm'n 1990) ............................................................................................ 63

*In re Seagate Technology, LLC,* 497 F.3d 1360 (Fed. Cir. 2007) ............................................... 38

*Insituform Techs., Inc. v. CAT Contracting, Inc.,* 385 F.3d 1360, 1377-78 (Fed. Cir. 2004) ....................................................................................................................................... 36

*Interactive Pictures Corp. v. Infinite Pictures, Inc.,* 274 F.3d 1371 (Fed. Cir. 2001).................. 42

*Johnson & Johnston Assoc. v. R.E. Service Co.,* 285, F.3d 1046 (Fed. Cir. 2002) (en banc)................................................................................................................... 20, 21, 24

*Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728 (Fed. Cir. 2001)....................................... 57

*Kaufman Co. v. Lantech, Inc.,* 926 F.2d 1136, 1142-43, 1143 n.17 (Fed. Cir. 1991) ....................................................................................................................................... 46

*KeyStone Retaining Wall Systems, Inc. v. Westrock, Inc.,* 997 F.2d 1444 (Fed. Cir. 1993) ....................................................................................................................................... 56

*Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867 (Fed. Cir. 1988) ....................................................................................................................................... 68

*KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398 (2007) .................................... 53, 57, 58, 60, 61, 63

*Larson Mfg. Co. of S.D. v. Aluminart Prods., Ltd.,* 559 F.3d 1317 (Fed. Cir. 2009) ....................................................................................................................................... 67

*Leesona Corporation v. U.S.,* 599 F.2d 958 (Ct. Claims 1979)................................................... 48

*Lindemann Maschinenfabrik Gmbh v. American Hoist & Derrick Co.,* 730 F.2d 1452 (Fed. Cir. 1984)............................................................................................................. 63

iv

Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301 (Fed. Cir. 2009) ..................... 40, 42, 47, 49

MacDougall, 201 F.2d 265 (2d Cir. 1952); ............................................................................ 12

Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572 (Fed. Cir. 1996)................................................ 41, 42

Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc),
    aff'd, 517 U.S. 370 (1996) ...................................................................................... 15, 16

Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1373 (Fed. Cir. 2008) ................................ 46

Maxwell v. J. Baker, Inc., 86 F.3d 1098 (Fed. Cir. 1996) ..................................................... 42

Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc., 395 F.3d 1364 (Fed. Cir.
    2005) .......................................................................................................................... 63

Metso Minerals, Inc. v. Powerscreen Int'l Dist., Ltd., 681 F.Supp.2d 309
    (E.D.N.Y. 2010)................................................................. 16, 17, 18, 25, 26, 27, 28, 70

Metso Minerals, Inc. v. Powerscreen Int'l. Dist., Ltd., 2010 U.S. Dist. LEXIS
    68274 (July 9, 2010) (Docket No. 328) (E.D.N.Y. 2010) ................................... 16, 25, 26

MGM Studios Inc. v. Grokster, 419 F.3d 1005 (Fed. Cir. 2005) .................................................. 36

Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1123 (Fed. Cir. 2003) ............................... 45

Milgo Electronics Corp. v. United Business Communications, Inc., 623 F.2d 645,
    660 (10th Cir. 1980 ................................................................................................... 35

Minco, Inc. v. Combustion Eng'g, Inc., 95 F.3d 1109 (Fed. Cir. 1996)..................................... 41

Moleculon Research Corp., v. CBS, Inc., 793 F.2d 1261 (Fed. Cir. 1986).................................. 22

NTP, Inc. v. Research in Motion Ltd., 418 F.3d 1282, 1313-21 (Fed. Cir. 2005). ..................... 35

On Demand Mach. Corp. v. Ingram Indus., Inc., 442 F.3d 1331, 1344-45 (Fed.
    Cir. 2006) .................................................................................................................... 35

Ortho-McNeil Pharm. Inc. v. Mylan Labs. Inc., 520 F.3d 1358 (Fed. Cir. 2008)....................... 63

Paper Converting Machine Co. v. Magna-Graphics Corp., 745 F.2d 11 (Fed. Cir.
    1984) .......................................................................................................................... 48

Phillips v. AWH Corporation, 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............................ 15, 16

Polaroid Corp. v. Eastman Kodak Co., 641 F.Supp. 828 (D.Mass. 1985), aff'd,
    789 F.2d 1556 (Fed. Cir. 1986)....................................................................................... 63

RCA Corp. v. Applied Digital Data Systems, Inc., 730 F.2d 1440 (Fed. Cir. 1984) .................. 63

Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538 (Fed. Cir. 1995) ........................................ 41, 42, 48

Rolls-Royce Limited & Renishaw, Plc v. GTE Valeron Corp., 625 F. Supp. 343
    (E.D.Mich. 1985), aff'd, 800 F.2d 1101 (Fed. Cir. 1986)................................................. 63

Rolls-Royce, PLC v. United Technologies Corp., 603 F.3d 1325 (Fed. Cir. 2010).............. 61, 63

Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S. Ct. 724, 88 L. Ed. 967
    (1944);........................................................................................................................ 12

Scanner Techs. Corp. v. ICOS Vision Sys. Corp., 528 F.3d 1365, 1376 (Fed. Cir. 2008). ....................................................................................................... 68

Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565 (Fed. Cir. 1991) ............................................................................................................ 68

SmithKline Diagnostics Inc. v. Helena Lab. Corp., 859 F.2d 878 (Fed. Cir. 1988).............. 15, 40

SmithKline Diagnostics, Inc. v. Helena Lab. Corp., 926 F.2d 1161, 1166 (Fed. Cir. 1991) ............................................................................................................ 46

Standard Havens Prods., Inc. v. Gencor Indus., 953 F.2d 1360, 1373 (Fed. Cir. 1991) ............................................................................................................ 46

Star Sci., Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357 (Fed. Cir. 2008) ........................ 67

State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573 (Fed. Cir. 1989) .......................... 42, 47

Takeda Chem. Indus. Ltd. v. Alphapharm PTY, Ltd., 492 F.3d 1350 (Fed. Cir. 2007) ...................................................................................................... 57, 59, 60

Tec Air, Inc. v. Denso Mfg. Michigan Inc., 192 F.3d 1353 (Fed. Cir. 1999)............................. 63

Tegal Corp. v. Tokyo Electron Co., 248 F.3d 1376, 1377-1378 (Fed. Cir. 2001) ...................... 35

Tektronix Inc. v. United States, 552 F.2d 343 (Ct. Cl. 1977)....................................................... 48

Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193 (Fed. Cir. 2002) .............................. 57

Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc., 750 F.2d 1552 (Fed. Cir. 1984) ............................................................................................................ 42

Trell v. Marlee Electronics Corp., 912 F.2d 1443 (Fed. Cir. 1990) ...................................... 42, 47

TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 901-902 (Fed. Cir. 1986)..................................... 46

Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1545-46 (Fed. Cir. 1991) ...................... 46

United States v. Bohle, 475 F.2d 872, 874 (2d Cir. 1973)........................................................... 14

United States v. Simon, 425 F.2d 796 (2d Cir. 1969)................................................................... 13

Upjohn Co. v. Mova Pharm. Corp., 225 F.3d 1306 (Fed. Cir. 2000) ......................................... 67

Wang Labs. v. Toshiba Corp., 993 F.2d 858 (Fed. Cir. 1993) .................................................... 40

Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17 (1997)..................................... 24

Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1363-66 (Fed. Cir. 2003 ...................... 36

Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368 (Fed. Cir. 1998) .......................... 57

Zenith Labs, Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418 (Fed. Cir. 1994).............. 20, 21, 24

**Statutes**

35 U.S.C. § 102....................................................................................................... 51, 56

35 U.S.C. § 103(a) ........................................................................................... 51, 53, 56, 57, 61

35 U.S.C. § 112 .................................................................................................................. 15

35 U.S.C. § 271 .................................................................................................................. 20

35 U.S.C. § 281 .................................................................................................................. 40

35 U.S.C. § 282 ................................................................................................... 50, 67, 70

35 U.S.C. § 284 .................................................................................................................. 40

## I.      PRELIMINARY JURY INSTRUCTIONS

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and your role as jurors.

### A.      The Nature of the Action and the Parties

This is a patent infringement case.  The patent involved in this case is entitled "Mobile Aggregate Material Processing Plant" and covers a large screening machine whose primary function is to sort stones and debris into piles of like-sized particles.  Specifically, the patent covers a screening machine that is mobile and can be folded into a particular compact position for transporting on roads.

During the trial, the parties will offer testimony to familiarize you with this technology.

The plaintiff in this case is Metso Minerals, Inc.  Metso is a corporation incorporated in Finland.  Metso owns the patent here in suit, which is U.S. Patent Number 5,577,618.  This patent will often be referred to as Metso's patent and it may also be referred to using the last three digits of its patent number, that is, the '618 patent.  On November 26, 1996, the United States Patent and Trademark Office issued the '618 patent.

There are four defendants in this case.  One defendant is Powerscreen International Distribution Limited, which is a corporation of Northern Ireland in the United Kingdom.  A second defendant is Terex Corporation, which is a Delaware corporation with offices in Westport, Connecticut.  Terex is the corporate parent of Defendant Powerscreen.  A third defendant is Emerald Equipment Systems, Inc., which is a New York corporation with offices in East Syracuse, New York.  The fourth defendant is Powerscreen New York, Inc., which has a place of business in Medford, New York.

1

Metso alleges in this litigation that certain screening machines made by the Northern Ireland Powerscreen defendant and imported into and sold in the United States infringe Metso's '618 patent.  Metso alleges that these screening machines were sold in the United States by defendant Emerald and by defendant Powerscreen New York.

### B.  United States Patents

I will now explain to you what a United States patent is.

The Constitution of the United States gives the federal government the power to reward inventors by granting them patents on their invention.  The purpose of the patent system, as set forth in the Constitution, is to promote the progress of science and the useful arts.  Patents are granted by the Constitution and by the patent laws of the United States as an incentive to inventors.  The patent laws are intended to induce inventors to disclose their inventions, thereby benefitting the public wealth of knowledge in the art to which the invention pertains.   In exchange for this disclosure, inventors are granted a right to exclude all others from making, using, selling and offering for sale of their inventions in the United States for a period of 20 years from the filing of their application for patent.

During the trial, the parties may offer testimony to familiarize you with how one obtains a United States patent, but I will give you a general background here.

The United States Patent and Trademark Office, often referred to as the Patent Office, is the agency of the U.S. government whose duty is to examine patent applications for patentability.  The Patent Office is staffed by patent examiners who are trained and skilled in the area of technology with which they deal.  The patent laws of the United States set forth certain specific requirements which must be satisfied if an inventor is to receive a patent.

When a patent application is submitted to the Patent Office, it is reviewed by an examiner to determine whether it meets all of the formal requirements of the statute.  The Patent Office examiner also conducts a search of prior art patents and literature in the pertinent technical field, called the "prior art" to determine whether or not the invention set forth in the patent application is new and not obvious to one of ordinary skill in the art.  The examiner also reviews any prior art submitted by the applicant.  When the parties are done presenting evidence, I will give you specific instructions as to what constitutes prior art in this case.  But generally it is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the filing date of the patent application.

The patent examiner will initially reject the patent application for one or more of three reasons.  First, the examiner might believe that the formal requirements for a patent application are not fulfilled.  Second, the examiner might believe that the prior art shows that the claimed invention is not new.  And third, the examiner might believe that the claimed invention was obvious to a person skilled in the art.  The patent applicant then has an opportunity to amend the claims of the patent application and to present arguments to try to persuade the examiner to change his mind.  This process may go back and forth between the patent examiner and the applicant several times over several months or even years.  If the examiner concludes that all of the requirements for a patent have been satisfied, the examiner will "allow" the patent application and a patent will then be issued by the Patent Office.  Not all patent applications filed in the Patent Office result in a U.S. patent.  The written record of the proceedings in the Patent Office are often called the "file wrapper" or the "prosecution history" of the patent.

The application for Metso's '618 patent went through this procedure and ultimately the U.S. Patent Office granted the '618 patent.

3

The U.S. patent laws and various international treaties permit an inventor who does not live in the United States and who is not a United States citizen to apply for and obtain a patent in the United States, just as U.S. citizens can apply for and obtain a foreign patent in a foreign country.  The application for Metso's '618 patent was filed and originally obtained by a citizen of Northern Ireland named Malachy Rafferty.  At times during the trial, Metso's '618 patent may also be referred to as the Rafferty patent.

Subsequent to the issuance by the U.S. Patent Office of the '618 patent, the plaintiff, Metso, acquired the '618 patent.  The U.S. patent laws also permit a foreign corporation, such as Metso, to own a U.S. patent and to use the U.S. courts to enforce its rights in a U.S. patent that it owns with respect to any infringement of that patent in the United States.  Likewise, U.S. corporations can acquire patents obtained in a foreign country and enforce those foreign patents against foreign corporations in foreign courts.

### C.   Patent Litigation

Someone is said to be infringing on claims of a patent when they, without the permission of the patent owner, import, make, use, offer to sell, or sell the patented invention, as defined by the claims, within the United States before the patent expires.  A patent owner who believes someone is infringing on the exclusive rights of his patent may bring a lawsuit like this to stop the alleged infringing acts and recover damages, which generally is money paid by the infringer to the patent owner to compensate for the harm caused by the infringement.  The patent owner must prove infringement of the claims of the patent by a preponderance of the evidence.  If you find that Metso has established infringement, Metso is entitled to at least a reasonable royalty to compensate it for that infringement.

A granted patent is presumed to be valid.  But that presumption of validity can be overcome if clear and convincing evidence is presented that proves the patent is invalid.  One example of a way in which the presumption may be overcome is if the U.S. Patent Office has not considered, for whatever reason, invalidating prior art that is presented to you.  A person sued for allegedly infringing a patent can deny infringement and also can defend by proving the asserted claims of the patent are invalid.  The accused infringer must prove invalidity by clear and convincing evidence.  I will discuss more of this topic later.

I will now briefly explain the parties' basic contentions in more detail.

### D.    Contentions of the Parties

The plaintiff, Metso, contends that the defendants make, use, offer to sell, and/or sell a number of screening machines that infringe claims 1 to 7 and 9 of the '618 patent.  Metso alleges that 11 of defendants' screening machines infringe Metso's patent.  Metso must prove that the defendants infringe the '618 patent by a preponderance of the evidence.  That means that Metso must show that it is more likely that the defendants' screening machines infringe than it does not infringe.  In addition, Metso alleges that defendants' infringement has been willful.  Metso must prove that any infringement was willful by clear and convincing evidence.

There are two ways in which a patent claim can be directly infringed.  First, a claim can be literally infringed.  Second, a claim can be infringed under what is called the "doctrine of equivalents."   To determine literal infringement, you must compare the accused screening machine with each claim that Metso asserts is infringed.  It will be my job to tell you what the language of the patent claims means.  You must follow my instructions as to the meaning of the patent claims.

A patent claim is infringed literally only if the defendants' screening machines include each and every element in that patent claim.  If the defendants' screening machines do not contain one or more elements in that claim, the defendants do not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually and each accused screening machine.  Metso must prove literal infringement by a preponderance of the evidence.

Under the doctrine of equivalents, you may find that the defendants' screening machines infringe a claim of the '618 patent even if not every element of that claim is present in the defendants' screening machines.  However, to do so, you must find that there is an equivalent component in the defendants' screening machines for each element of the patent claim that is not literally present in the defendants' screening machine.  Metso must prove infringement under the doctrine of equivalents by a preponderance of the evidence.

Prior to this trial, the parties filed a number of motions to resolve various issues concerning the meaning of the language of the claims of the '618 patent and concerning infringement.  Some months ago, I decided those motions, and, as a result, you now only have to decide four facts with respect to the infringement issue.  First, you are to decide whether defendants' screeners on a track-mounted chassis has "wheels".  Second, you are to decide whether defendants' screeners can fold so that a lateral conveyor does not project laterally beyond the chassis.  Third, you are to decide whether defendants' screeners have a pair of "wing plates".  And fourth, you are to decide whether defendants' screeners have a "holding plate".

The defendants deny that they are infringing the '618 patent and that if there was infringement, that that infringement was not willful.  The defendants also contend that the '618 patent is invalid.  Invalidity is a defense to infringement.  Therefore, even though the patent

6

examiner has allowed the claims of the '618 patent, you, the jury, have the ultimate responsibility for deciding whether the claims of the '618 patent are valid.  The defendants contend that Metso's '618 patent is invalid because it would have been obvious in view of certain combinations of items of prior art.  The defendants must prove invalidity by clear and convincing evidence.  This is a higher standard than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.  Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

The defendants contend that the '618 patent is unenforceable because the inventor, Malachy Rafferty, committed inequitable conduct by withholding from the U.S. Patent Office examiner during the examination of the application for the '618 patent a particular item of what defendants contend is material prior art, and that Mr. Rafferty did so with an intent to deceive the examiner.   The burden of proving inequitable conduct is high.  Defendants must prove inequitable conduct by clear and convincing evidence.

Finally, the defendants contend that Metso is not entitled to recover damages for acts that occurred before it filed this lawsuit because Metso allegedly delayed filing this lawsuit for an unreasonably long and inexcusable period of time and that because of this delay defendants have been prejudiced in a significant way in defending this lawsuit.  This defense is referred to as laches.  Defendants must prove laches by a preponderance of the evidence.  You may also find that even if all of the elements of laches have been proven, it should not, in fairness, apply, given all the facts and circumstances in this case.

### E.        Trial Procedure

We are about to commence the opening statements in the case.  Before we do that, I want to explain the procedures that we will be following during the trial and the format of the trial.

This trial, like all jury trials, comes in six phases. We have completed the first phase, which was to select you as jurors. We are now about to begin the second phase, the opening statements. The opening statements of the lawyers are statements about what each side expects the evidence to show. The opening statements are not evidence for you to consider in your deliberations.

The evidence comes in the third phase, when the witnesses will take the witness stand and the documents will be offered and admitted into evidence. In the third phase, the plaintiff, Metso, goes first in calling witnesses to the witness stand. These witnesses will be questioned by Metso's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. After Metso has presented its witnesses, the defendants will call their witnesses, who will also be examined and cross-examined. The parties may present the testimony of a witness by reading from their deposition transcript or playing a videotape of the witness's deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

The evidence often is introduced piecemeal, so you need to keep an open mind as the evidence comes in. You are to wait until all the evidence comes in before you make any decisions. In other words, keep an open mind throughout the entire trial.

After we conclude the third phase, the lawyers again have an opportunity to talk to you in what is called "closing argument," which is the fourth phase. Again, what the lawyers say is not evidence. The closing arguments are not evidence for you to consider in your deliberations.

The fifth phase of the trial is when I read you the jury instructions. In that phase, I will instruct you on the law. I have already explained to you a little bit about the law. But in the fifth phase of the trial, I will explain the law in much more detail.

Finally, in the sixth phase of the trial, it will be time for you to deliberate.  You can then evaluate the evidence, discuss the evidence among yourselves and make a decision in the case. You are the judges of the facts, and I decide questions of law.  I will explain the rules of law that apply to this case, and I will also explain the meaning of the patent claim language.  You must follow my explanation of the law and the patent claim language even if you do not agree with me.

Nothing I say or do during the course of the trial is intended to indicate what your verdict should be.

## II.      POST TRIAL INSTRUCTIONS

### A.      General Matters, Issues Presented

Members of the jury:

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following six main issues:

First, whether Metso has proven that each of the 11 of the defendants' screeners infringe claims 1-73, 7 or 9 of the '618 patent.

Second, if there was infringement, what amount of damages, if any, Metso has proven.

Third, if there was infringement, whether Metso has proven that the defendants infringed willfully.

Fourth, whether the defendants have proven that any of claims 1 to 7 and 9 of the '618 patent are invalid.

Fifth, whether the defendants have proven that the '618 is unenforceable because of inequitable conduct.

And sixth, whether the defendants have proven that there was laches.

### B.      Inventorship

Even though you have heard conflicting testimony whether Mr. Rafferty or Mr. Byrne invented the subject matter of the '618 patent, I am instructing you that inventorship is not for your consideration, and you are to consider Mr. Rafferty the sole inventor of the '618 patent.  You may however, consider the conflicting testimony concerning inventorship solely in determining the credibility of witnesses.

### Authority

Memorandum of Decision and Order, dated January 28, 2010, D.E. 292, pp. 47-50; 681 F.Supp.2d 309.

### C.    Witnesss Credibility

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides.  In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

How do you determine where the truth lies? You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he appear to be frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his demeanor--that is, his carriage, behavior, bearing, manner and appearance while testifying? Often it is not what a person says but how he says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his

intelligence, the reasonableness and probability of his testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case.

Always remember that you should use your common sense, your good judgment and your own life experience.

**Authority**

Modern Federal Jury Instructions-Civil, 76-1 Witness Credibility, citing, inter alia, Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S. Ct. 724, 88 L. Ed. 967 (1944);  Dyer v. MacDougall, 201 F.2d 265 (2d Cir. 1952); Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946) .

If you find that any witness has testified falsely with respect to a material fact in the case, you may, but you are not required to, disregard his entire testimony. Or, in your discretion, you may choose to follow that which you believe is true, and reject the balance. It is entirely within your discretion to weigh it, to determine the weight to be given to the testimony and to judge the credibility of the witness.

**Authority**

Hogan v. New York Times Co., 211 F. Supp. 99, 119 (D. Conn. 1962), cited in 4-76 Modern Federal Jury Instructions-Civil P 76.01.

## D.   Expert Witnesses—Generally

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts. In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment and common sense. The determination of the facts in this case rests solely with you.

### Authority

Modern Federal Jury Instructions-Civil, 76-9 Expert Witnesses—Generally, citing United States v. Simon, 425 F.2d 796 (2d Cir. 1969).

## E.   Conflicting Expert Testimony

You have heard testimony of expert witnesses who have been called by both sides to give their opinion about damages and other expert witnesses who have been called by both sides to give their opinions regarding infringement and obviousness.

13

The witnesses who testified in this case did so in order to assist you in reaching a decision on these issues.

The testimony of these witnesses is in conflict. They disagree. You must remember that you are the sole trier of the facts and their testimony relates to a question of fact; so, it is your job to resolve the disagreement.

The way you resolve the conflict between these witnesses is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses. In addition, since they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion and the witness' motive, if any, for testifying.

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence. You should not permit a witness' opinion testimony to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness. The determination of the facts in this case rests solely with you.

**Authority**

Modern Federal Jury Instructions-Civil, 76-10 Conflicting Expert Testimony (modified), citing United States v. Bohle, 475 F.2d 872, 874 (2d Cir. 1973).

### F.	Claim Construction, Generally

Before you decide whether the defendants have infringed the claims of Metso's patent or whether Metso's patent is invalid, you will have to understand the patent claims.  The patent

claims are the numbered sentences at the end of the patent.  The patent claims involved here are claims 1 to 7 and 9, beginning at column 7, line 12 of the '618 patent, which is Plaintiff's Exhibit 1 in evidence.  The claims are intended to define, in words, the boundaries of the invention.  Only the claims of the patent can be infringed.  Neither the written description, nor the drawings of a patent can be infringed.  Each of the claims must be considered individually.  You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

**Authorities**

35 U.S.C. § 112; Phillips v. AWH Corporation, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); Markman v. Westview Instruments, Inc., 52 F.3d 967, 979-81 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996); SmithKline Diagnostics Inc. v. Helena Lab. Corp., 859 F.2d 878, 882 (Fed. Cir. 1988).

**G.    Claim Construction, Specifically**

It is my job as judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any claim of the '618 patent has been infringed and whether any claim is invalid.

**Authorities**

Phillips v. AWH Corporation, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).

I will now tell you the meanings of certain words and groups of words from the patent claims:

15

CHASSIS -- A "chassis" is the entire assembly of the screener that rests beneath the functional parts of the screener, and therefore includes more than merely the longitudinal beams. The claim term "chassis" includes the wheels or tires and the wheel arches, as shown in Figure 5 of the '618 patent.  The claim term "chassis" also includes the tracks and the assembly on which the tracks rotate and are mounted because these elements are beneath the functional parts of the screener.

**Authorities**

Memorandum Decisions and Orders, 681 F.Supp.2d 309, 320-321; and 2010 U.S. Dist. LEXIS 68274 (July 9, 2010) (Docket No. 328, pages 8-9).

HEAD ARTICULATION MEANS – The Court construes the function of the "head articulation means" means to be:

"connecting the head section to the tail section in such a way that the head section is movable from an operative position to a transport position with the head section extending longitudinally above the chassis and positioned with respect to the input hopper and material processing means so that it does not project laterally beyond the chassis."

**Authority**

Memorandum of Decision and Order, dated January 28, 2010, D.E. 292, p. 26 681 F.Supp.2d 309 .

"The court finds the following structures to be necessary to carry out this function: a pivot joint, a connecting pin, a bushing, wing plates, and a holding plate. 'Head articulation means' is therefore interpreted to incorporate these structures, and their equivalents."

16

**Authority**

Memorandum of Decision and Order, dated January 28, 2010, D.E. 292, p. 26 681 F.Supp.2d 309.

DOES NOT PROJECT LATERALLY BEYOND -- The phrase "does not project laterally beyond" means "does not extend, in any amount, laterally beyond."  As I will explain later in more detail, in determining infringement, you are required to consider whether the accused screeners either meet this claim element literally or by equivalence.

**Authorities**

Memorandum Decision and Order, 681 F.Supp.2d 309, 326

WHEEL -- A "wheel" is "a circular frame that has a hub at the center for attachment to or suspension from an axle, on which it revolves, and that serves to bear the weight of the screening plant".

**Authorities**

Memorandum Decision and Order, 681 F.Supp.2d 309, 322.

Because the issues that you are to decide on infringement of claim 1 are narrow, these are the only claim terms that I need to define for you to determine infringement as to claim 1.

17

As to claims 2 to 7 and 9, you should give the rest of the words their ordinary meaning in the context of the patent specification and prosecution history.

### H.    Infringement

### 1.    Infringement, Generally

I will now instruct you as to the rules you must follow when deciding whether Metso has proven that the defendants have infringed any of the claims of the '618 patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent.  Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.  Here, Metso alleges that the defendants' screening machines infringe claims 1-7 and 9 of Metso's '618 patent.

You have heard evidence about both Metso's commercially marketed and sold screeners and the defendants' accused screeners.  However, in deciding the issue of infringement you may not compare the defendants' accused screeners to Metso's screeners.  Rather, you must compare the defendants' accused screeners to the claims of the '618 patent when making your decision regarding infringement.

You have heard evidence about different parts of the '618 patent other than the claims, such as, the Background of the Invention, Objectives of the Invention, Summary of the Invention, drawings, and Detailed Description of Some Embodiments.  However, in deciding the issue of infringement you may not compare the defendants' accused screeners to the prior art, or drawings, particular embodiments or examples of the invention described in the '618 patent.  Rather, as I just stated, you must compare the defendants' accused screeners to the claims of the '618 patent when making your decision regarding infringement.

In this case, Metso asserts that the defendants have infringed the '618 patent. The defendants would be liable for infringing Metso's patent if you find that Metso has proven by a preponderance of the evidence that the defendants have made, used, offered to sell, or sold the invention defined in at least one claim of Metso's patent. In other words, there is infringement if it is more likely than not that the defendants have made, used, offered to sell, or sold the invention defined in at least one claim of Metso's patent.

Proof by a preponderance of the evidence means that Metso must produce evidence, which when it is considered in light of all of the facts, leads you to believe that what plaintiff Metso claims is more likely than not. That, for example, it is more probable than not that the defendants infringed claims 1-7 or 9 of Metso's '618 patent. To put it differently, if you were to put Metso's and the defendants' evidence on the infringement question on opposite sides of a scale, Metso's evidence would only have to make the scale tip slightly towards its side. If it tips slightly in that direction, then you must find for Metso on the issue of infringement. If the scale tips slightly in the other direction, you must find for the defendants.

In determining whether any proposition has been proven, you should consider all of the evidence bearing on the question without regard to which party produced it.

To infringe a patent, it is not necessary that the person who makes, uses or sells the infringing product actually knows that the patent exists or has an intent to infringe it. A person may directly infringe a patent even though he or she may in good faith believe that what he or she is doing is not an infringement of any patent, including the patent in suit.

To determine literal infringement, you must compare each of the 11 accused screening machines with each claim that Metso asserts is infringed, using my instructions as to the meaning of the patent claims.

**Authorities**

35 U.S.C. § 271; Zenith Labs, Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1423 (Fed. Cir. 1994); Johnson & Johnston Assoc. v. R.E. Service Co., 285, F.3d 1046, 1052 (Fed. Cir. 2002) (en banc); Amgen Inc. v. F. Hoffmann-La Roche Ltd., 580 F.3d 1340, 1374 (Fed. Cir. 2009); BMC Resources v. Paymentech, L.P., 498 F.3d 1373, 1381 (Fed. Cir. 2007).

There are two ways in which a patent claim may be infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents".

**2.     Literal Infringement**

For literal infringement, Metso must prove by a preponderance of the evidence that the subject matter of a patent claim is found in a particular model of Powerscreen screener.  In other words, one of Metso's patent claims is literally infringed if a particular model of Powerscreen screener includes each and every element in that claim of Metso's patent.  If a particular model of Powerscreen screener omits any single element recited in that claim of Metso's patent, then that particular model of Powerscreen screener does not literally infringe that particular claim of Metso's patent.  You must determine literal infringement with respect to each asserted patent claim individually and with respect to each model of Powerscreen screener to ascertain whether each model of Powerscreen screener has literally infringed one or more claims of Metso's patent.

**Authorities**

BMC Resources v. Paymentech, L.P., 498 F.3d 1373, 1381 (Fed. Cir. 2007).

Each Powerscreen screener should be compared to the invention described in each patent claim it is alleged to infringe, not to the Metso's preferred or commercial embodiment of the claimed invention.

**<u>Authorities</u>**

<u>Zenith Labs, Inc. v. Bristol-Myers Squibb Co</u>., 19 F.3d 1418, 1423 (Fed. Cir. 1994);

<u>Johnson & Johnston Assoc. v. R.E. Service Co.</u>, 285, F.3d 1046, 1052 (Fed. Cir. 2002) (en banc).


The preamble to claim 1 uses the phrase "A mobile, road-hauled aggregate material processing plant comprising". The word "comprising" means "including the following elements but not excluding other elements."

If you find that one or more of the defendants' screeners include all of the elements in claim 1, the fact that the defendants' screeners might include additional elements or components would not avoid infringement of any of the claims. In other words, if a claim has elements A, B and C, defendants do not avoid infringement if the accused screener has elements A, B, C and D.

For example, a claim to a table *comprising* a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

21

~~If you find that one or more of the defendants' screeners include all of the elements in claim 1, the fact that the defendants' screeners might include additional elements or components would not avoid literal infringement of a claim that uses "comprising" language.~~

**Authorities**

Model Patent Jury Instructions (National Jury Instruction Project, June 17, 2009) (modified), CIAS, Inc. v. Alliance Gaming Corp., 504 F.3d 1356, 1360 (Fed. Cir. 2007); Moleculon Research Corp., v. CBS, Inc., 793 F.2d 1261, 1271 (Fed. Cir. 1986); A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 703 (Fed. Cir. 1983).

### 3.      Infringement Under The Doctrine Of Equivalents

If you decide that any model of the defendants' screeners does not literally infringe an asserted patent claim, you must then decide whether that model of screener infringes the asserted claim under what is called the "doctrine of equivalents."

If defendants make, use, sell, offer to sell within, or import into the United States a screener that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies that claim "under the doctrine of equivalents."

Under the doctrine of equivalents, a screener can infringe an asserted patent claim if there is in the particular model of Powerscreen screener an equivalent to an element in the patent's claim.  An element in the accused Powerscreen screener is equivalent to a claim element if the differences between the two are "insubstantial" to one of ordinary skill in the art as of the time of the alleged infringement.

One way to decide whether any difference between a requirement of an asserted claim and a part of an accused Powerscreen screener is insubstantial is to consider whether, as of the time of the alleged infringement, the part of the accused Powerscreen screener performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.  If so, then the differences between the accused Powerscreen screener and the claim element are insubstantial, and there is infringement under the doctrine of equivalents.

In deciding whether any difference between a claim requirement and an accused Powerscreen screener is insubstantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part with the claimed requirement.

However, interchangeability between the claim requirement and the part of the accused Powerscreen screener need not have been known at the time the patent application was filed if this interchangeability became known later, at the time of the infringement, as a result of later-developed technology.

If an element is separately patentable, that fact will not be sufficient by itself to avoid equivalency.

In your analysis under the doctrine of equivalents, as in your analysis under literal infringement, each Powerscreen screener should be compared to the invention described in each patent claim it is alleged to infringe, not to the Metso's preferred or commercial embodiment of the claimed invention.

The same element of an accused Powerscreen screener may satisfy more than one element of a claim, and, correspondingly, more than one element of an accused Powerscreen

screener may satisfy a single element of a claim.   Either case is sufficient to establish infringement because a one-to-one correspondence of components is not required for infringement under the doctrine of equivalents.

**Authorities**

Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608-9 (1950); Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 39-40 (1997); Amgen Inc. v. F. Hoffmann-La Roche Ltd., 580 F.3d 1340, 1382 (Fed. Cir. 2009); Zenith Labs, Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1423 (Fed. Cir. 1994); Johnson & Johnston Assoc. v. R.E. Service Co., 285, F.3d 1046, 1052 (Fed. Cir. 2002) (en banc); Atlas Powder Co. v. E.I. Du Pont De Nemours & Co., 750 F.2d 1569, 1581 (Fed. Cir. 1984); Eagle Comtronics Inc. v. Arrow Comm'n Labs Inc., 305 F.3d 1303, 1317 (Fed. Cir. 2002).

### 4.   Infringement Regarding Claim 1, Specifically

~~Metso has accused 11 of defendants' screeners of infringement of Metso's patent. Metso's patent has only one independent claim that is at issue here, claim 1. I have already determined that many of the elements of claim 1 are present in the accused Powerscreen screeners. There are only four issues for you to decide with respect to infringement of claim 1:~~

~~First, whether or not the mechanism that causes a lateral conveyor of the accused Powerscreen screeners to fold and unfold allows that lateral conveyor to fold into a transport position so that the lateral conveyor "does not project laterally beyond the chassis" of the screener.~~

~~Second, whether or not that mechanism has "wing plates" and a "holding plate".~~

~~Third, whether or not that mechanism has a "holding plate".~~

~~Fourth, if an accused Powerscreen screener is mounted on tracks, whether or not the track chassis of that screener has "wheels" as I have defined the term "wheels".~~

~~**Authorities**~~

~~Memorandum Decisions and Orders, 681 F.Supp.2d 309, 330-334, and Docket No. 328, pages 10-12.~~

Metso has accused 11 of defendants' screeners of infringement of Metso's patent. Metso's patent has only one independent claim that is at issue here, claim 1.  I have already determined that many of the elements of claim 1 are present in the accused Powerscreen screeners.  Specifically, with respect to the "Head Articulation Means," I have found that each of the accused machines has a pivot joint, a connecting pin and a bushing.

There are only three issues for you to decide with respect to infringement of claim 1:

First, whether or not the mechanism that allows a lateral conveyor of the accused Powerscreen screeners to fold into an operative position and a transport position allows that lateral conveyor to fold into a transport position so that the lateral conveyor "does not project laterally beyond the chassis" of the screener, or the equivalent thereof.

Second, whether or not that mechanism has "wing plates" and a "holding plate" or their equivalents.

Third, if an accused Powerscreen screener is mounted on tracks, whether or not the track chassis of that screener has "wheels" as I have defined the term "wheels".

**Authorities**

25

Memorandum Decisions and Orders, 681 F.Supp.2d 309, 330-334, and Docket No. 328, pages 10-12.

With respect to the "does not project laterally beyond the chassis" issue, as I instructed you earlier, I have already determined what claim 1 of the Metso patent means by the phrase "does not project laterally beyond". The phrase "does not project laterally beyond" means "does not extend, in any amount, laterally beyond;" however, in determining infringement, you are required to consider whether the accused screeners either meet this claim element literally or by equivalence.

**Authorities**

Memorandum Decision and Order, 681 F.Supp.2d 309, 326.

I have also determined what claim 1 of Metso's patent means by the word "chassis". A "chassis" is the entire assembly of parts of the screener that rests beneath the functional parts of the screener, and therefore includes more than merely the longitudinal beams. The claim term "chassis" includes the wheels or tires and the wheel arches, as shown in Figure 5 of the '618 patent. The claim term "chassis" also includes the tracks and the assembly on which the tracks rotate and are mounted because these elements are beneath the functional parts of the screener.

**Authorities**

Memorandum Decisions and Orders, 681 F.Supp.2d 309, 320-321; and Docket No. 328, pages 8-9.

If you find that any of Powerscreen's screeners in the transport position has a mechanism that allows one or more than one lateral conveyor to fold into a transport position so that it "does

26

<u>not</u> project laterally beyond the chassis" of the screener, then that Powerscreen screener literally satisfies this element of claim 1 of Metso's patent.

However, if you find that any of Powerscreen's screeners has a mechanism that does <u>not</u> allow one or more than one lateral conveyor to fold into a transport position so that it "does <u>not</u> project laterally beyond the chassis" of the screener, then you must determine whether there is infringement under the doctrine of equivalents with respect to that particular screener.  As I instructed you earlier, an element in an accused Powerscreen screener is equivalent to a claim element if the differences between the two are "insubstantial" to one of ordinary skill in the art, whether the accused Powerscreen screener performs substantially the same function in substantially the same way to obtain the same result as the claim element.  If you find equivalence, then you must find that that Powerscreen screener infringes this element of claim 1 under the doctrine of equivalents.  <u>You should find infringement under the doctrine of equivalents of the "does not project laterally beyond the chassis" limitation if the folded lateral conveyor projects only minimally beyond the chassis and that the device operates in all material functions the same as one whose conveyors do not.  Memorandum Decision and Order, 681 F.Supp.2d 309, 331.</u>

In addition, you must determine whether the mechanism that allows a lateral conveyor to fold into a transport position has "wing plates" and a "holding plate".  If the mechanism of an accused Powerscreen screener does not have "wing plates" and a "holding plate", then you must determine if that accused Powerscreen screener has an equivalent to the missing element which performs substantially the same function in substantially the same way to obtain the same result.

If so, then there is infringement by that Powerscreen screener of this element of claim 1 under the doctrine of equivalents.

You must perform this same analysis for the accused Powerscreen screeners mounted on tires and those mounted on tracks: a literal infringement analysis of the "project laterally beyond the chassis" claim limitation and, if there is no literal infringement, an analysis under the doctrine of equivalents, and also a literal infringement analysis of the "wing plates" and the "holding plate" claim limitations and, if there is no literal infringement, an analysis under the doctrine of equivalents.

For the accused Powerscreen screeners mounted on tires, that is the end of your infringement analysis. You should record on your Verdict Form your decision as to each the accused Powerscreen screeners mounted on tires, whether there is literal infringement, and if not, whether there is infringement under the doctrine of equivalents.

However, with respect to the accused Powerscreen screeners mounted on tracks, your infringement analysis requires one more step. For the track-mounted Powerscreen screeners, you must determine if the track chassis of those screeners has "wheels", as I have defined the term "wheels", because claim 1 requires that the screener have a "chassis" that is "wheel-mounted".

As I instructed you earlier, I have determined what claim 1 of Metso's patent means by the word "wheel". A "wheel" is "a circular frame that has a hub at the center for attachment to or suspension from an axle, on which it revolves, and that serves to bear the weight of the screening plant".

**Authorities**

Memorandum Decision and Order, 681 F.Supp.2d 309, 322.

28

If you find that the chassis of an accused Powerscreen track-mounted screener literally has one or more "wheels", then that Powerscreen track-mounted screener has literally satisfied this limitation of claim 1 of Metso's patent.

However, if you find that the chassis of an accused Powerscreen track-mounted screener does not literally have one or more "wheels", then you must determine whether that Powerscreen screener has one or more equivalents to a "wheel". If so, then that Powerscreen screener has satisfied the "wheel" limitation of claim 1 under the doctrine of equivalents.

For the accused track-mounted Powerscreen screeners, that is the end of your infringement analysis. You should record on your Verdict Form your decision as to each the accused Powerscreen screeners mounted on tracks, whether there is literal infringement, and if not, whether there is infringement under the doctrine of equivalents.

### 5.    Dependent Claims

There are two different types of claims in the patent. One type of claim is called an independent claim. The other type of claim is called a dependent claim.

An independent claim is a claim that does not refer to any other claim of the patent. That applies to claim 1 of Metso's patent.

A dependent claim is a claim that refers to at least one other claim in the patent. That applies to all of the other asserted claims of Metso's patent. A dependent claim incorporates all of the elements of each claim to which it refers, as well as the elements recited in the dependent claim itself.

### 6.    Infringement Regarding Claims 2, 3, 7 and 9, Specifically

After you have completed your infringement analysis for each of the accused Powerscreen screeners with respect to claim 1 of Metso's patent, and only if you have determined that there is infringement of claim 1, you must then also perform a literal infringement analysis and an equivalents infringement analysis with respect dependent claims 2, 3, 7 and 9 of Metso's patent with respect to each one of the 11 accused Powerscreen screeners, in both the tire-mounted and track-mounted versions.

I have already determined that the accused Powerscreen screeners have the elements of dependent claims 4, 5 and 6 that are not in claim 1, so you do not have to address these claims.

I have determined that the terms that appear in dependent claims 2, 3, 7 and 9 and not also in claim 1 have no special meanings, so you must rely upon the evidence that you have seen and heard to understand the word of these claims.

You should record on your Verdict Form your decision as to each the accused Powerscreen screeners mounted on tires and those mounted on tracks, whether there is literal infringement of dependent claims 2, 3, 7 and 9 of Metso's patent, and if not, whether there is infringement under the doctrine of equivalents of these claims.

I have already made some determinations with respect to claims 2, 3, 7 and 9 so that your infringement analysis of these claims is somewhat simplified.  I will now explain what you should do with respect to your infringement determination of these claims.

#### a)  Claim 2

For claim 2, you need only look at the third paragraph of the claim referring to the "head articulation means" because I have already determined that the 11 accused Powerscreen screeners all have the elements of the second paragraph of claim 2 relating to the "tail

articulation means".  Thus, you must determine whether or not the 11 accused Powerscreen screeners have a pivot joint connecting the tail and head conveyor frame sections, and whether or not that pivot joint has a pivot axis extending substantially perpendicular to the conveyor plane. This language appears in claim 2 of Metso's '618 patent.

If you find that an accused Powerscreen screener literally has such a pivot joint and a pivot axis, then that Powerscreen screener has literally satisfied this limitation of claim 2 of Metso's patent, and claim 2 is literally infringed by that accused Powerscreen screener.

However, if you find that an accused Powerscreen screener does not literally have such a pivot joint and a pivot axis, then you must determine whether that Powerscreen screener has one or more equivalents to such a pivot joint and a pivot axis.  If so, then that Powerscreen screener has satisfied the pivot joint and pivot axis limitations of claim 2 under the doctrine of equivalents, and claim 2 is infringed under the doctrine of equivalent by that accused Powerscreen screener.

### b)  Claim 3

As stated in the Jury Verdict Form, for any accused Powerscreen screener that you find does <u>not</u> infringe claim 2, that screener cannot infringe claim 3, and you therefore do not have to make an infringement determination with respect to claim 3 and that particular screener.

However, for any accused Powerscreen screener that you find <u>does</u> infringe claim 2, you must determine whether or not there also is infringement of claim 3.  For claim 3, you must determine whether or not the pivot joint connecting the tail and head conveyor frame sections has a fixed pivot pin mounted on the conveyor frame tail section, and whether or not there is a rotatable bushing mounted on the conveyor frame head section.  This language appears in claim 3 of Metso's '618 patent.

If you find that an accused Powerscreen screener literally has such a pivot pin and a bushing, then that Powerscreen screener has literally satisfied this limitation of claim 3 of Metso's patent, and claim 3 is literally infringed by that accused Powerscreen screener.

However, if you find that an accused Powerscreen screener does not literally have such a pivot pin and a bushing, then you must determine whether that Powerscreen screener has one or more equivalents to such a pivot pin and a bushing.  If so, then that Powerscreen screener has satisfied the pivot pin and bushing limitations of claim 3 under the doctrine of equivalents, and claim 3 is infringed under the doctrine of equivalent by that accused Powerscreen screener.

### c)  Claim 7

For claim 7, you must determine whether or not the tail and head articulation means have a drive means for causing movement of the lateral conveyor between the operative and transport positions.  This language appears in claim 7 of Metso's '618 patent.

If you find that an accused Powerscreen screener literally has such a drive means, then that Powerscreen screener has literally satisfied this limitation of claim 7 of Metso's patent, and claim 7 is literally infringed by that accused Powerscreen screener.

However, if you find that an accused Powerscreen screener does not literally have such a drive means, then you must determine whether that Powerscreen screener has one or more equivalents to such a drive means.  If so, then that Powerscreen screener has satisfied the drive means limitations of claim 7 under the doctrine of equivalents, and claim 7 is infringed under the doctrine of equivalent by that accused Powerscreen screener.

### d)  **Claim 9**

As stated in the Jury Verdict Form, for any accused Powerscreen screener that you find does <u>not</u> infringe claim 7, that screener cannot infringe claim 9, and you therefore do not have to make an infringement determination with respect to claim 9 and that particular screener.

For any accused Powerscreen screener that you find <u>does</u> infringe claim 7, you must determine whether or not there also is infringement of claim 9.

For claim 9, you must determine whether or not the mechanism that allows a lateral conveyor to move between the transport position and the operative position has a hydraulic ram drive mounted between the plant support frame and the tail section and whether the mechanism has a hydraulic ram drive means mounted between the tail and the head sections.  This language appears in claim 9 of Metso's '618 patent.

If you find that an accused Powerscreen screener literally has such hydraulic ram drive means, then that Powerscreen screener has literally satisfied this limitation of claim 9 of Metso's patent, and claim 9 is literally infringed by that accused Powerscreen screener.

However, if you find that an accused Powerscreen screener does not literally have such hydraulic ram drive means, then you must determine whether that Powerscreen screener has one or more equivalents to such hydraulic ram drive means.  If so, then that Powerscreen screener has satisfied hydraulic ram drive means limitations of claim 9 under the doctrine of equivalents, and claim 9 is infringed under the doctrine of equivalent by that accused Powerscreen screener.

### I.      **Direct Infringement: Mutiple Alleged Infringers**

You must make a determination of infringement separately for each of the defendants.

It is not necessary for the acts that constitute infringement to be performed by a single person or entity. When infringement results from the participation and combined action(s) of more than one person or entity, they are all joint infringers and jointly liable for patent infringement.

A parent corporation, such as Terex Corporation, is liable for the patent infringement of a subsidiary, such as Powerscreen International Distribution Limited (now Terex GB) where the evidence shows an overlapping business relationship controlled by the the parent corporation or where the parent corporation formulates, directs or controls the subsidiary's operations or that the parent corporation is in control of the management, policies or operations of the subsidiary. So here, you must find that Terex Corporation is liable for any patent infringement by Powerscreen International Distribution Limited (now Terex GB) if you find any of the following:

    a.   There is an overlapping business relationship between Terex Corporaton and Powerscreen International Distribution Limited (now Terex GB) controlled by Terex Corporation;

    b.   Terex Corporation formulates, directs or controls the operations of Powerscreen International Distribution Limited (now Terex GB) or

    c.   Terex Corporation is in control of the management, policies or operations of Powerscreen International Distribution Limited (now Terex GB).

Metso alleges that Terex GB, formerly known as Powerscreen International Distribution Limited, Terex Corporation, Powerscreen New York, Inc. and Emerald Equipment Systems, Inc. have each separately infringed and alternatively, that each has acted with the other to collectively infringe a claim of the '618 patent.

Authorities

FCBA Model Patent Jury Instructions § 3.7, citing 35 U.S.C. § 271(a); On Demand Mach. Corp. v. Ingram Indus., Inc., 442 F.3d 1331, 1344-45 (Fed. Cir. 2006) (infringement by multiple alleged infringers); Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, 424 F.3d 1293, 1311 (Fed. Cir. 2005); NTP, Inc. v. Research in Motion Ltd., 418 F.3d 1282, 1313-21 (Fed. Cir. 2005).; Milgo Electronics Corp. v. United Business Communications, Inc., 623 F.2d 645, 660 (10th Cir. 1980);  Tegal Corp. v. Tokyo Electron Co., 248 F.3d 1376, 1377-1378 (Fed. Cir. 2001).

## J.       Indirect Infringement—Active Inducement

Metso alleges that Terex Corporation is alternatively liable for infringement by actively inducing Terex GB, formerly known as Powerscreen International Distribution Limited, to directly infringe the '618 patent literally or under the doctrine of equivalents.

Terex GB is liable for active inducement only if Metso proves by a preponderance of the evidence that:

(1) Terex Corporation took action during the time the '618 patent was in force intending to cause acts by Terex GB, formerly known as Powerscreen International Distribution Limited;

(2) Terex Corporation was aware of the '618 patent and knew or should have known that the acts, if taken, would constitute infringement of that patent; and

(3) the acts are actually carried out by Terex GB, formerly known as Powerscreen International Distribution Limited, and infringe at least one claim of the '618 patent.

In order to establish active inducement of infringement, it is not sufficient that Terex GB, formerly known as Powerscreen International Distribution Limited, itself directly infringes the

claim. Nor is it sufficient that Terex Corporation was aware of the acts by Terex GB, formerly known as Powerscreen International Distribution Limited, that allegedly constitute the direct infringement. Rather, you must find that Terex Corporation specifically intended Terex GB, formerly known as Powerscreen International Distribution Limited, to infringe the '618 patent, in order to find inducement of infringement.

Authorities

FCBA Model Patent Jury Instructions § 3.2, citing 35 U.S.C. § 271(b); DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (citation and internal quotation marks omitted); MGM Studios Inc. v. Grokster, 419 F.3d 1005 (Fed. Cir. 2005); Insituform Techs., Inc. v. CAT Contracting, Inc., 385 F.3d 1360, 1377-78 (Fed. Cir. 2004) (inducer must have actual or constructive knowledge of the patent); Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC, 350 F.3d 1327, 1342 (Fed. Cir. 2003) (no inducement where evidence did not show defendant knew or should have known that his actions were encouraging infringement); Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1363-66 (Fed. Cir. 2003) (no infringement where lack of intent to induce).

## K.   Willful Infringement

If you find that the defendants infringed Metso's '618 patent, either literally or under the doctrine of equivalents, then you must further determine if this infringement was willful. Willfulness must be proven by Metso by clear and convincing evidence showing:

First, that the defendants were aware of Metso's '618 patent when the alleged infringement began,

Second, that the defendants acted despite an objectively high likelihood that their actions infringed a valid patent, and

Third, that this objectively high likelihood of infringement was either known or so obvious that it should have been known to the defendants.

36

As to the first factor, defendants have admitted that they were aware of Metso's '618 patent when the design of the accused Powerscreen screeners was developed, and thereafter when the defendants began selling the accused Powerscreen screeners in the United States.

As to the second factor, whether there was objectively a high likelihood that there was infringement and whether there was objectively a high likelihood that Metso's patent was valid, this factor is an evaluation of the facts and defendants' defenses known at the time that the alleged infringement began and this evaluation is to be done objectively.  What the defendants knew or believed when the alleged infringement began is not relevant.

If you find that, when the alleged infringement began, objectively there was a high likelihood of infringement and objectively there was a high likelihood that Metso's patent was valid, then you must evaluate the third factor, whether the defendants actually knew or should have known that there was a high likelihood that the defendants were infringing a valid patent. To evaluate this third factor, you may consider:

whether the defendants intentionally copied the invention claimed in Metso's '618 patent or whether the defendants intentionally copied a screener covered by Metso's '618 patent,

what the defendants did after learning about Metso's '618 patent and after being accused by Metso of patent infringement, including whether the defendants undertook any remedial actions, whether the defendants attempted to design around Metso's '618 patent, whether the defendants believed that they had successfully designed around Metso's '618 patent, the reasons why the defendants began to sell and continued to sell their accused screeners in the United States, and the defendants' marketing efforts of their accused screeners in the United States,

what defenses the defendants were aware of when the alleged infringement began as to patent infringement and patent validity, and how credible those defenses were.  In determining

how credible defendants' defenses were you may consider the fact that defendants asserted a number of defenses in this litigation that they ultimately abandoned or that I have already dismissed as being without merit.  The defenses that the defendants previously raised in this case that I have already dismissed are that Metso did not name the correct inventor, that Metso does not own the '618 patent, that the patent was written improperly, that the '618 patent was anticipated by the prior art, that the '618 patent related to subject matter that could not be patented, and that Metso had failed to mark its screeners with the patent number of the '618 patent.

In deciding this third factor, whether defendants knew or should have known that their actions infringed a valid patent, you may also take into account whether the defendants obtained any opinions of their attorneys that Metso's patent was invalid or was not infringed.

In making the determination as to willfulness, you must consider the totality of the circumstances.

Metso must prove that any infringement was willful by clear and convincing evidence. This is a higher standard than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.  Clear and convincing evidence is evidence that shows it is highly probable that any infringement was willful.

Authorities

In re Seagate Technology, LLC, 497 F.3d 1360, 1372-4 (Fed. Cir. 2007) ("defenses prepared [by litigation counsel] for a trial are not equivalent to the competent legal opinion of non-infringement or invalidity which qualify as 'due care' before undertaking any potentially infringing activity.  Because of the fundamental difference between these types of legal advice ..."; "A substantial question about invalidity or infringement is likely sufficient not only to avoid

a preliminary injunction, but also a charge of willfulness based on post-filing conduct. ... Because willful infringement in the main must find its basis in prelitigation conduct ..."); i4i L.P. v. Microsoft Corp., 598 F.3d 831, 860 (Fed. Cir 2010); DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1335-7 (Fed. Cir. 2009); Broadcom Corp. v. Qualcom, Inc., 543 F.3d 683, 699 (Fed. Cir. 2008) ("Because opinion-of-counsel evidence, along with other factors, may reflect whether the accused infringer "knew or should have known" that its actions would cause another to directly infringe, we hold that such evidence remains relevant to the second prong of the intent analysis. ... It would be manifestly unfair to allow opinion-of-counsel evidence to serve an exculpatory function, ... and yet not permit patentees to identify failures to procure such advice as circumstantial evidence of intent to infringe."); Colorado v. New Mexico, 467 U.S. 310, 316 (1984).

### L.      Damages

#### 1.      Generally

If you find that any of the accused Powerscreen screeners infringe any of the claims of Metso's '618 patent, you must determine the amount of damages to be awarded Metso for the infringement.  On the other hand, if you find that each of the asserted patent claims is not infringed, then you need not address damages in your deliberations.

If you need to determine damages, the amount of those damages must be adequate to compensate Metso for the infringement.  Your damage award should put Metso in approximately the financial position it would have been in had the infringement not occurred; but, in no event may the damage award be less than a reasonable royalty.

Metso must prove each element of its damages by a preponderance of the evidence.

The fact that I am instructing you as to the proper measure of damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions as to the measure of damages are given for your guidance in the event you find the evidence in favor of Metso as to infringement.

Authorities

35 U.S.C. §§ 281, 284; Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507 (1964); Smithkline Diagnostics, Inc. v. Helena Labs Corp., 926 F.2d 1161, 1164 (Fed. Cir. 1991); Wang Labs. v. Toshiba Corp., 993 F.2d 858, 870 (Fed. Cir. 1993).

## 2.      Reasonable Royalty - Entitlement

If you find that Metso has established infringement, Metso is entitled to at least a reasonable royalty to compensate it for that infringement.  Metso is entitled to recover no less than a reasonable royalty for each infringing sale.

The patent law specifically provides that the amount of damages that the defendants must pay Metso for infringing Metso's patent may not be less than a reasonable royalty for the use that the defendants made of Metso's patented invention.  A reasonable royalty is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall.  Metso is entitled to a reasonable royalty for all infringing sales.

Authorities

THE FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, November 12, 2009, § 6.5 Reasonable Royalty-Entitlement. 35 U.S.C. § 284; Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and remanding jury award as excessive); Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336 (Fed. Cir. 2001); Fromson v. W. Litho Plate & Supply Co., 853 F.2d

1568, 1574 (Fed. Cir. 1998); Minco, Inc. v. Combustion Eng'g, Inc., 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).


### 3.    Reasonable Royalty - Definition

In this case, Metso seeks a reasonable royalty.  A reasonable royalty is defined as the money amount Metso and defendants would have agreed upon as a fee for use of the patented invention at the time prior to when infringement began.

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the '618 patent was valid and infringed and the Metso and the defendants were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of

the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

Authorities

THE FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, November 12, 2009, § 6.6 Reasonable Royalty-Definition; Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1340 (Fed. Cir. 2009) (vacating and rewarding jury award as excessive); Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1338 (Fed. Cir. 2004); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); Mahurkar v. C.R. Bard, Inc., 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); United States Court of Appeals Fifth Judicial Circuit Pattern Jury Instructions, Instructions 9.8 (1999); Interactive Pictures Corp. v. Infinite Pictures, Inc., 274 F.3d 1371 (Fed. Cir. 2001); Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc., 750 F.2d 1552 (Fed. Cir. 1984); Trell v. Marlee Electronics Corp., 912 F.2d 1443, 1446 (Fed. Cir. 19990); State Indus., Inc. v. Mor-Fo Indus., Inc., 83 F.2d 1573, 1581 (Fed. Cir. 1989).

## 4.        Reasonable Royalty, Relevant Factors

In determining the value of a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you  may consider in making your determination are:

1.        The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results.

2.      The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Metso; and the benefits to those who have used the invention, including the defendants and other infringers.

3.      The extent to which the defendants have made use of the invention, and any evidence that shows the value of that use.

4.      The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

5.      The duration of Metso's '618 patent and the term of the license.

6.      Any royalties received by Metso for licensing of its '618 patent, proving or tending to prove an established royalty.

7.      The rates paid by the defendants to license other patents comparable to the '618 patent.

8.      The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

9.      Metso's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

10.     The commercial relationship between Metso and the defendants, such as whether or not they are competitors in the same territory in the same line of business.

11.     The established profitability of the product made under Metso's '618 patent, its commercial success, and its current popularity.

12.     The effect of selling the patented product in promoting sales of other non-patented items of Metso such as spare parts and crushing machines, the existing value of the invention to Metso as a generator of sales of its non-patented items, and the extent of such collateral sales.

13.     The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the defendants.

14.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

15.     The opinion testimony of qualified experts.

16.     Whether there are available acceptable non-infringing alternatives.

17.     The amount that Metso and the defendants would have agreed upon (at the time the alleged infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement, that is, the amount which a prudent licensee, the defendants, who desired, as a business proposition, to obtain a license to manufacture and sell the patented invention, would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by Metso as the patentee, who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a

44

negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

Authorities

Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F.Supp. 116, 120 (S.D.N.Y. 1970);  i4i L.P. v. Microsoft Corp., 598 F.3d 831, 853 (Fed. Cir 2010).


**5.**      **Acceptable Non-Infringing Alternatives**

In order to be an acceptable alternative to the patented invention, the product must have the advantages of the patented invention that were important to customers.  An acceptable non-infringing alternative must be a product that does not infringe the '618 patent or any patent that is owned by someone other than the plaintiff or the defendants.  A product does not infringe a patent when it does not include all the features required by the patent.

Factors suggesting the alternative was available include whether the material, experience, and know-how for the alleged alternative were readily available at the time the infringement took place.  Factors suggesting the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether an alleged infringer had to design or invent around the patented technology to develop the alleged alternative.


Authorities

Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999) (holding that an unused, but available, noninfringing process was an acceptable alternative); Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1123 (Fed. Cir. 2003) ("The record shows that Lextron did not have the necessary equipment, know-how, and experience to make the

[alternative] machine at the time of infringement."); Gargoyles, Inc. v. United States, 113 F.3d 1572, 1577-1578 (Fed. Cir. 1997); Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1545-46 (Fed. Cir. 1991); Standard Havens Prods., Inc. v. Gencor Indus., 953 F.2d 1360, 1373 (Fed. Cir. 1991); Kaufman Co. v. Lantech, Inc., 926 F.2d 1136, 1142-43, 1143 n.17 (Fed. Cir. 1991); SmithKline Diagnostics, Inc. v. Helena Lab. Corp., 926 F.2d 1161, 1166 (Fed. Cir. 1991); TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 901-902 (Fed. Cir. 1986); FCBA Model Jury Instructions November 2009 (modified); AIPLA Model Jury Instructions, March 2008 (modified).

An infringer may be liable for reasonable royalty damages that exceed the amount that the infringer could have paid to avoid infringement.  A reasonable royalty is not required to be capped at, or limited to the cost of implementing the cheapest available, acceptable, noninfringing alternative.

Authority

Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1373 (Fed. Cir. 2008).

## ~~5.~~6.    Reasonable Royalty, Timing

Although the relevant date for the hypothetical reasonable royalty negotiation is just before the infringement began, you may consider in your determination of reasonable royalty damages any actual profits by the defendant after that time and any commercial success of the patented invention in the form of sales of the patented or infringing products after that time.

Authorities

Trell v. Marlee Electronics Corp., 912 F.2d 1443, 1446 (Fed. Cir. 1990); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1581 (Fed. Cir. 1989).

### 6.7.    Reasonable Royalty, Form of Agreement

In determining a reasonable royalty, you will need to determine the form of the agreement.  Metso contends that the form of the agreement is what is known as a "running royalty."  A running royalty is generally a percentage or rate that is paid to the patent holder based on the infringer's revenue from net sales of products that form the royalty base. Defendants contend that the form of the agreement is what is known as a "single, up-front lump-sum payment," which is as these words suggest a one time payment.

Authorities

Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1326, 1335 (Fed. Cir. 2009);

Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

### 7.8.    Inclusion of the Entire Market Value of the Infringing Screeners in the Royalty Base

In determining a reasonable royalty, you will need to determine what should be included in the royalty base.  In calculating a reasonable royalty, you are directed to include in the royalty base, at least, the value that you determine for the infringing screeners.

Authorities

Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1326, 1335 (Fed. Cir. 2009);

Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

### 8.9.    Convoyed Sales

The royalty base may be extended to products not encompassed within Metso's patent when the extension reflects the value of Metso's patent and when there is a functional relationship between the unpatented products and the defendants' infringing products. Metso contends that the royalty base should be extended to also include defendants' revenues from net sales of crushers functionally related to infringing screeners. Defendants contend that no crushers are functionally related to screeners and that therefore no crushers should be included in the royalty base.

In determining whether some crushers should be included in the royalty base, you are required to determine whether any crushers are functionally related to the infringing screeners. There is a functional relationship when any unpatented crushers function together with the infringing screeners in some manner so as to produce a desired end product or result.

If you determine that any crushers are functionally related to the infringing screeners, you should include those crushers in the royalty base.

Authorities

Rite-Hite Corp., 56 F.3d 1538, 1550 (Fed. Cir. 1995) (the functional relationship test requires that the "unpatented components must function together with the patented component in some manner so as to produce a desired end product or result."); Paper Converting Machine Co. v. Magna-Graphics Corp., 745 F.2d 11, 13 (Fed. Cir. 1984) (quoting Tektronix Inc. v. United States, 552 F.2d 343, 351 (Ct. Cl. 1977)); see also Leesona Corporation v. U.S., 599 F.2d 958, 974 (Ct. Claims 1979) ("Under the entire market value rule, it is not the physical joinder or separation of the contested items that determines their inclusion in or exclusion from the

compensation base, so much as their financial and marketing dependence on the patented item under standard marketing procedures for the goods in question").

### 9.10.   The Amount of the reasonable royalty does not need to be proven precisely

A reasonable royalty determination necessarily involves an element of approximation and uncertainty.  Metso does not need to prove the amount of the reasonable royalty with certainty.

Authorities

Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324 (Fed. Cir. 2009); Cornell University v. Hewlett Packard Co., 609 F. Supp. 2d 279, 290 (N.D.N.Y. 2009)  (quoting Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1327 (Fed. Cir. 1987)) ("Reliance on hypothetical sales or estimated revenues is entirely permissible in connection with a reasonable royalty analysis. 'The determination of a damage award is not an exact science, and the amount need not be proven with unerring precision.'").

### M.    Invalidity Defense

### 1.    Summary

The defendants contend that claims 1 to 7 and 9 of Metso's '618 patent are invalid because the invention claimed was obvious in view of certain items of "prior art".

Claims of an issued patent may be found to be invalid.  Thus, you must determine whether each of claims 1 to 7 and 9 of Metso's '618 patent is invalid.

Each separate claim of a patent issued by the U.S. Patent Office is presumed to be valid independently of the validity of other claims.  Thus, dependent claims, such as claims 2 to 7 and 9 of Metso's '618 patent, may be valid even if their independent claim, claim 1 is invalid.

The presumption of patent validity is a rule of evidence which places the burden of proof on the defendants who dispute the validity of the patent to produce clear and convincing evidence that each of the claims of the patent is invalid.  The clear and convincing standard is a higher burden of proof than the preponderance of evidence standard and is applicable to defendants' invalidity defense because of the presumption of patent validity.  In this case, the presumption of patent validity assigns to the defendants the burden of proving that Metso's patent is invalid by clear and convincing evidence.  Metso does not have to prove that its patent is valid.  The defendants must prove by clear and convincing evidence that each one of these claims is invalid.  The clear and convincing standard does not require proof beyond a reasonable doubt.  Clear and convincing evidence is evidence that shows it is highly probable that the claims are invalid.

**Authorities**

35 U.S.C. § 282; Amgen Inc. v. F. Hoffmann-La Roche Ltd., 580 F.3d 1340, 1363 (Fed. Cir. 2009); Colorado v. New Mexico, 467 U.S. 310, 316 (1984).


## 2.	"Prior Art" Defined

You have heard the term "prior art" used throughout this trial.  The term "prior art" is a legal phrase which refers here to the accumulated knowledge that was available to the public as of September 7, 1993.  For your deliberations, prior art includes any of the following items received into evidence during this trial:

Any machine that was publicly known or used by others in the United States before September 7, 1993

Patents that issued before September 7, 1993

Publications having a date before September 7, 1993

Any machine that was in public use or on sale in the United States before September 7, 1993

Prior art in this case includes the contents of U.S. and foreign patents issued before September 7, 1993, including those patents considered by the Patent Office and those patents that were not considered by the Patent Office.

**Authorities**

35 U.S.C. §§ 102, 103(a).

In this case, defendants contend that the following combinations of alleged prior art render the '618 patent obvious:

    1.   The Dominator screener with the Masterstock 70 or 80 conveyor;

    2.   The Dominator screener with U.S. Patent No. 3,444,987, also referred to as Palmer or the '987 patent;

    3.   The Dominator screener with U.S. Patent No. 4,160,501, also referred to as Johannsen or the '501 patent;

    4.   U.S. Patent No, 4,983,280, also referred to as Eriksson with Masterstock 70 or 80 conveyor.

~~In this case, the defendants contend that the following items are prior art that are relevant to defendants' contention that Metso's '618 patent is obvious:~~

    ~~1.~~     ~~The MastersKreen Dominator screener,~~

    ~~2.~~     ~~PCT Patent publication number WO 85/03652, also referred to as Eriksson and WO '652,~~

    ~~3.~~     ~~U.S. Patent Number 4,160,501, also referred to as Johannsen or the '501 patent,~~

51

4.      The MasterStock 70 or 80 conveyors,

5.      U.S. Patent Number 3,444,987, also referred to as Palmer or the '987 patent,

6.      European Patent Application Number 0,338,752 A1, also referred to as Extec or EP '752, and

7.      U.S. Patent Number 5,234,564, also referred to as Smith or the '564 patent.

### 3.      Obviousness

The defendants contend that claims 1 to 7 and 9 of Metso's '618 patent are obvious.

A claim of a patent is said to be obvious if the differences between the subject matter of the claim and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to one of ordinary skill in the art.   In order to evaluate a claim of obviousness, you must consider all of the following factors:

First, the scope and content of the prior art as of September 7, 1993 relied upon by the defendants.

Second, the differences, if any, between each of claims 1 to 7 and 9 of Metso's '618 patent and what you determine to be the prior art as of September 7, 1993.

Third, the level of ordinary skill in the pertinent art as of September 7, 1993, and

Fourth, additional considerations that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of claims 1 to 7 and 9.

The defendants must prove obviousness by clear and convincing evidence as to each of claims 1 to 7 and 9.

I will now explain each of the four factors in more detail.

**Authorities**

35 U.S.C. §§ 103(a); <u>Graham v. John Deere Co.</u>, 383 U.S. 1, 17-18 (1966); <u>KSR Int'l Co. v. Teleflex Inc.</u>, 550 U.S. 398, 406 (2007).

### a) Scope and Content of the Prior Art

I just discussed what art the defendants rely upon in their obviousness contention.

You must determine what is the <u>prior</u> art that may be considered in determining whether the Metso's 618 patent is obvious.  You can only consider art that is "prior" to September 7, 1993.  If the art existed prior to that date, the art reference is "prior art" and may be considered if it discloses information designed to solve the same problems faced by the inventor or if the reference discloses information that has obvious uses beyond its main purpose that a person of ordinary skill in the art would reasonably examine to solve the same problems faced by the inventor.

Of the items or art relied upon by the defendants in their obviousness contention, Metso does not admit that they are all prior art, that is, that they all existed before September 7, 1993. Metso denies that the Dominator screener and the MasterStock 70 or 80 conveyors are prior art. Thus, the defendants must prove by clear and convincing evidence that the Dominator screener and the MasterStock 70 or 80 conveyors qualify as prior art.

Prior art does not include any machines which were in public use or on sale outside the United States.  Thus, if there were prior public uses or sales that took place outside of the United

States, they do not qualify as prior art.  The prior public use or sales must take place in the United States, not abroad.

You must determine what prior art there was as of September 7, 1993.  To qualify as prior art, the defendants must prove by clear and convincing evidence that each item of art that they rely upon in their obviousness analysis was, in fact, "prior", that is, that each item was available to the public as of September 7, 1993.

In the present case, with respect to the Dominator screener and the Masterstock 70 and 80 conveyors which defendants rely upon in their obviousness defense, you must determine whether or not at least one fully-operational and fully-functional machine was in public use or on sale in the United States before September 7, 1993.  If so, then that machine is "prior art"; if not, that machine is not "prior art".

For such a machine to be on sale in the United States, defendants must prove by clear and convincing evidence that at least one machine was offered for sale to someone in the United States other than the manufacturer before September 7, 1993, and that that machine was fully operational and functional in the manner that the defendants allege is pertinent to the claims of the '618 patent.  Alternatively, defendants must prove by clear and convincing evidence that at least one machine was shipped into the United States and that ownership in that machine was transferred to someone in the United States other than the manufacturer before September 7, 1993, and that that machine was fully operational and functional in the manner that the defendants allege is pertinent to the claims of the '618 patent.

For there to be a sale or an offer to sell a machine, two separate entities must be involved. These two entities cannot be part of the same company or controlled by the same people.

Additionally, for a sale to occur, title to the machine must pass from one entity to the other entity in an arms-length transaction.

For a machine to be in public use in the United States, defendants must prove by clear and convincing evidence that at least one machine was used in public in the United States by someone in the United States other than the manufacturer before September 7, 1993, and that that machine was fully operational and functional in the manner that the defendants allege is pertinent to the claims of the '618 patent.

For any sale or public use to qualify as a prior art event, defendants must prove by clear and convincing evidence that the particular machine that was sold or delivered was fully operational and functional in the manner that the defendants allege is pertinent to the claims of the '618 patent.

For any machine that you determine is "prior art", defendants must prove by clear and convincing evidence how that particular machine operated before September 7, 1993 in any manner that the defendants allege is pertinent to the claims of the '618 patent, and that that machine was fully operational and functional machine in that respect.

If the defendants rely <u>only</u> upon the <u>oral</u> testimony of a witness to establish that an item of art is prior art, or to establish any element of that item of art, such as its operation, its ownership, its use, an offer for its sale, its sale, or its delivery into the United States, that <u>oral</u> testimony must be corroborated.  Reliable evidence of corroboration preferably comes in the form of physical records that were made contemporaneously with the alleged item of prior art. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information, and therefore such testimony rarely satisfies the burden upon the accused infringer to prove invalidity

by clear and convincing evidence.  In modern times, where there is an ubiquitous paper trail of virtually all commercial activity, it is rare indeed that some physical record, for example, a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record, does not exist. The requirement for corroboration of oral testimony applies equally to the testimony of witnesses who have an interest in the outcome of the lawsuit and to the testimony of witnesses who have no interest in the outcome of the lawsuit.

Corroboration should be assessed according to the following factors:  (1) the relationship between the corroborating witness and the alleged prior user, (2) the time period between the event and trial, (3) the interest of the corroborating witness in the subject matter in suit, (4) contradiction or impeachment of the witness' testimony, (5) the extent and details of the corroborating testimony, (6) the witness' familiarity with the subject matter of the patented invention and the prior use, (7) probability that a prior use could occur considering the state of the art at the time, and (8) impact of the invention on the industry, and the commercial value of its practice.

If an item of art does not qualify as "prior art" because it was not prior to September 7, 1993, or if defendants have not proven that that machine was operational before September 7, 1993 in the manner that the defendants allege is pertinent to the claims of the '618 patent, you cannot use that item of art in your obviousness determination, and your obviousness determination can only use any remaining items of art that qualify as "prior", that is, items of art available before September 7, 1993.

**Authorities**

35 U.S.C. §§ 102, 103(a); KeyStone Retaining Wall Systems, Inc. v. Westrock, Inc., 997 F.2d 1444, 1451 (Fed. Cir. 1993); In re Caveney and Moody, 761 F.2d 671, 676 (Fed. Cir. 1985);

Finnigan Corp. v. USITC, 180 F.3d 1354, 1366-1370 (Fed. Cir. 1999); Juicy Whip, Inc. v. Orange Bang, Inc., 292 F.3d 728, 737-43 (Fed. Cir. 2001); Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1371-3 (Fed. Cir. 1998); Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1217-8 (Fed. Cir. 2002); Barbed Wire Patent Case, 143 U.S. 275, 284-5 (1892); Dow Chem. Co. v. Mee Indus., Inc., 341 F.3d 1370, 1378 (Fed. Cir. 2003).

### b) Differences Between the Claimed Invention and the Prior Art

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention, that is, as of September 7, 1993. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of the invention.

In analyzing the prior art you should determine whether or not there was any reason why a person of ordinary skill in the art as of September 7, 1993 should chose the particular item of prior art that the defendants rely upon as a starting point or as the lead machine design that should be improved in view of other prior art and machine designs that were in the prior art as of September 7, 1993.

**Authorities**

35 U.S.C. § 103(a); KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 406, 424-5 (2007); Takeda Chem. Indus. Ltd. v. Alphapharm PTY, Ltd., 492 F.3d 1350, 1359-1360 (Fed. Cir. 2007).

You should determine whether or not there was a motivation or good reason for a person of ordinary skill as of September 7, 1993 to decide to improve or to change the design of the starting point machine. Such reasons for improvement or change may include whether there were known

problems with that starting point machine or demands known to the design community or present in the marketplace that would have motivated a person of ordinary skill to improve or change the design of the starting point machine.  One of ordinary skill must have good reason to pursue the known options within his or her technical grasp.

<u>**Authorities**</u>

<u>KSR Int'l Co. v. Teleflex Inc.</u>, 550 U.S. 398, 418-421, 424 (2007); <u>Rolls-Royce, PLC v. United Technologies Corp.</u>, 603 F.3d 1325, 1338 (Fed. Cir. 2010).


In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention.  You may take into account the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention.  For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious.  On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

You are not to consider whether the claimed invention was obvious to the patentee-inventor, but whether the claimed invention was obvious to a person of ordinary skill in the art at the time of invention.

<u>**Authorities**</u>

<u>KSR Int'l Co. v. Teleflex Inc.</u>, 550 U.S. 398, 416, 418, 420 (2007).

If you determine that any prior art suggested by the defendants were already considered by the U.S. Patent Office Examiner during the prosecution of the application for the '618 patent, defendants must also prove by clear and convincing evidence that the U.S. Patent Office Examiner was wrong in his decision to grant Metso's '618 patent in view of the already considered prior art because the U.S. Patent Examiner, as a qualified government employee is presumed to have properly done his job, he is presumed to have some expertise in interpreting the prior art that considered, he is presumed to be familiar from his duties with the level of skill in the pertinent art, and his duty was to issue only valid patents.

**Authorities**

Am. Hoist & Derrick Co. v. Sowa & Sons, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984); PowerOasis, Inc., v. T-Mobile USA, Inc., 522 F.3d 1299, 1304 (Fed. Cir. 2008).


Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art.  Most, if not all, inventions rely on building blocks long since uncovered, and claimed discoveries almost of necessity will likely be combinations of what is already known.  Therefore, you should consider whether good reason existed at the time of the invention that would have prompted a person of ordinary skill in the art to combine the known elements in the way the claimed invention does.  The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of the problem to be solved, market demand, or common sense.

**Authorities**

Takeda Chem. Indus. Ltd. v. Alphapharm PTY, Ltd., 492 F.3d 1350, 1356-7 (Fed. Cir. 2007).

59

And finally, you must determine whether or not the particular combinations of prior art references if combined would actually result in the invention claimed in Metso's '618 patent.

You are to evaluate each item of prior art for what it taught to those of ordinary skill in the art at the time of the invention, that is, as of September 7, 1993. You are not to evaluate the prior art in light of present day knowledge or in combination with the teachings of the patent itself.

You must evaluate the prior art and knowledge at the time of the invention. You cannot evaluate the prior art and knowledge as of today or in view of what Metso's '618 patent discloses because that would be hindsight. Everyone has 20-20 hindsight. You cannot use hindsight. To preclude the use of hindsight in your evaluation of the prior art you can determine if there is evidence from before the time of the invention of a teaching, suggestion or motivation to combine the elements of the prior art to arrive at the claimed invention. If you find that there is evidence of a teaching, suggestion or motivation to combine the elements of the prior art to arrive at the claimed invention, then that would make it more likely that the claimed invention was obvious. However, defendants still must prove obviousness by clear and convincing evidence. Clear and convincing evidence is evidence that shows the alleged fact is highly probable.

Again, you must undertake this analysis separately for each claim of claims 1 to 7 and 9 of Metso's '618 patent.

**Authorities**

KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 418-421 (2007); Takeda Chem. Indus. Ltd. v. Alphapharm PTY, Ltd., 492 F.3d 1350, 1356-7 (Fed. Cir. 2007); Rolls-Royce, PLC v. United

Technologies Corp., 603 F.3d 1325, 1338 (Fed. Cir. 2010); Colorado v. New Mexico, 467 U.S. 310, 316 (1984).


### c)      Level of Ordinary Skill

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the pertinent field of art.  The person of ordinary skill is presumed to know all prior art that you have determined is prior art and that is reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

the level of education and experience of persons actively working in the field at the time of the invention, including the inventor;

the types of problems encountered in the art at the time of the invention; and

the sophistication of the technology in the art at the time of the invention, including the rapidity with which innovations were made in the art at the time of the invention.

**Authorities**

35 U.S.C. § 103(a); Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966); KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 419-421 (2007); Environmental Designs, Ltd. v. Union Oil Co., 713 F.2d 693, 695 (Fed. Cir. 1983).


### d)      Factors Indicating Non-Obviousness

Before deciding the issue of obviousness, you must also consider certain factors, which, if established, may indicate that the invention would not have been obvious.  No factor alone is

61

dispositive, and you must consider the obviousness or non-obviousness of the invention as a whole.

A first factor is whether screeners covered by the claims of Metso's '618 patent were commercially successful due to the merits of the claimed invention. The invention claimed in the patent may be coextensive with the products covered by the patent, that is, the claim of the patent covers the entire product rather than a component of the product. If the invention claimed in the patent is coextensive with the products covered by the patent, you must presume that any commercial success of the products is due to the merits of the claimed invention. Defendants then have the burden to rebut that presumption by producing evidence showing that extraneous factors are responsible for the product's success. In assessing commercial success, you should consider sales by Metso, both in the United States and outside of the United States. You should also consider sales by the defendants and any other competitors, both in the United States and outside of the United States. Commercial success is relevant because the law presumes an idea would successfully have been brought to market sooner, in response to market forces, had the idea been obvious to persons skilled in the art.

A second factor is whether the patented invention was copied by the defendants and/or by other competitors, including whether the patented design has become the industry's standard.

A third factor is whether the defendants attempted to patent the same invention.

A fourth factor is whether the defendants and other competitors tried to solve problems facing the inventor, but failed to develop the patented invention first.

A fifth factor is whether there was a long felt but unsolved need that the patented invention solved.

A sixth factor is whether there was praise by others of the patented invention.

A seventh factor is whether any competitors acquiesced in the patent.

An eighth factor is whether there were unexpected results that the patented invention achieved.

Answering any, or all, of these questions "yes" may suggest that the claims of Metso's patent were not obvious.

In evaluated all of the evidence, you must remember that the defendant must prove obviousness by clear and convincing evidence.

**Authorities**

Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966); KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 406 (2007); Tec Air, Inc. v. Denso Mfg. Michigan Inc., 192 F.3d 1353, 1360-1 (Fed. Cir. 1999); Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1579-80 (Fed. Cir. 1997); Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1328-29 (Fed. Cir. 2009); Polaroid Corp. v. Eastman Kodak Co., 641 F.Supp. 828, 848 (D.Mass. 1985), aff'd, 789 F.2d 1556, 1569 (Fed. Cir. 1986); RCA Corp. v. Applied Digital Data Systems, Inc., 730 F.2d 1440, 1448 (Fed. Cir. 1984); Lindemann Maschinenfabrik Gmbh v. American Hoist & Derrick Co., 730 F.2d 1452, 1461 (Fed. Cir. 1984); Ortho-McNeil Pharm. Inc. v. Mylan Labs. Inc., 520 F.3d 1358, 1365 (Fed. Cir. 2008); Rolls-Royce Limited & Renishaw, Plc v. GTE Valeron Corp., 625 F. Supp. 343, 348-50 (E.D.Mich. 1985), aff'd, 800 F.2d 1101, 1106 (Fed. Cir. 1986); Rolls-Royce, PLC v. United Technologies Corp., 603 F.3d 1325, 1339-40 (Fed. Cir. 2010); Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc., 395 F.3d 1364, 1376 (Fed. Cir. 2005); Demaco Corp. v. F. Von Langsdorf Licensing Ltd., 851 F.2d 1387, 1392-3 (Fed. Cir. 1988); In re Certain Crystalline Cefadroxil Monohydrate, 15 U.S.P.Q.2d 1263, 1270-1 (U.S. Int'l Trade Comm'n 1990) ("It is the parties challenging the patent that have the burden of producing evidence showing that extraneous factors are responsible for the product's success.").

### N.      Equitable Defenses

### 1.      Inequitable Conduct

Every applicant for a patent has a duty of candor and good faith in its dealing with the United States Patent and Trademark Office.  This is important because the U.S. Patent Office has limited resources.

When a person involved in the prosecution of an application fails to supply material information or supplies false information or statements and does so with an intent to deceive the U.S. Patent Office, he or she may commit what is called "inequitable conduct."  When inequitable conduct occurs during the examination of an application for a patent, any patent that issues from that application is unenforceable as a matter of fairness.  This means that despite the existence and validity of the patent, the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention that is covered by the patent.

Because a finding of inequitable conduct completely extinguishes a patent holder's right to prevent others from using an invention, the burden of proving inequitable conduct is high. Defendants must prove by clear and convincing evidence both that a person meaningfully involved in the prosecution of the '618 patent withheld material information or submitted materially false information or statements to the U.S. Patent Office during the examination of the application for the '618 patent, and that the person did so with an intent to deceive the Examiner.

I will now explain to you what "material" and "intent to deceive" mean.

### a)      Material

Information or statements are "material" if the defendants can prove by clear and convincing evidence that the information or statements establish, either alone or in combination

with other information or statements, that the invention sought to be patented more likely than not failed to satisfy a requirement for a valid patent.  The pertinent requirement here is that the invention must be new and nonobvious.  ~~Information or statements also are material if they refute or are inconsistent with a position that the applicant for a patent took when opposing an argument made by the Examiner that the invention was not patentable or when making an argument to the Examiner that the invention was patentable.~~  Information or statements are also material if there is a substantial likelihood that a reasonable Examiner would consider them important in deciding whether to allow the application to issue as a patent.  ~~False information or statements may be considered material if they would (alone or in combination) falsely suggest that the applicant satisfied a patentability requirement.~~  Withheld information that is cumulative of, or less relevant to any patentability requirement compared to information the examiner already had from any source, is not material (because the Examiner already had similar information on which to make a judgment on patentability).  ~~Material information may be deemed withheld if it was included along with large quantities of other information that is not material so that it would have been hard for the Examiner to recognize its materiality.~~

### b)      Intent to Deceive

In order for inequitable conduct to have occurred, defendants must prove by clear and convincing evidence that any failure to disclose material information or the making of any false or misleading statements were done with an intent to deceive the Examiner.  If the failure to disclose material information occurred through negligence, oversight, carelessness, or an error in judgment, even if it was grossly negligent, then there was no intent to deceive and there is no inequitable conduct.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive.  However, intent requires that the person allegedly withholding the information knew at the time that the withheld information was material and that the withholding was done to deceive or mislead the U.S. Patent Office Examiner.

Intent may also be shown through indirect evidence or, in other words, it may be inferred from conduct.  Evidence of deceptive intent must be clear and convincing.  Any inference of deceptive intent must be based on sufficient evidence and be reasonable in light of that evidence, and it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard.  Whenever evidence offered to show materiality or intent is susceptible of multiple reasonable inferences, you may not overlook one inference in favor of another equally reasonable inference.  But again, intent requires that the person allegedly withholding the information knew at the time that the withheld information was material and that the withholding was done to deceive or mislead the U.S. Patent Office Examiner.

Intent may be shown through direct evidence, such as documents or testimony about one's intent to deceive.  Intent also may be shown through indirect evidence or, in other words, it may be inferred from conduct.  However, intent requires that the person allegedly withholding the information knew at the time that it was material.

### c)     Balancing of Materiality and Intent

If you find that defendants have proved by clear and convincing evidence that material information was withheld and, further, that these omissions were done with an intent to deceive

66

the Examiner, you must then weigh the degree of materiality and the degree of intent to determine whether, on balance, the evidence clearly and convincingly establishes that Mr. Rafferty committed inequitable conduct and Metso's '618 patent should in fairness be declared unenforceable.  When performing this balancing, the higher the level of materiality of the withheld information or of the false and misleading statements, the lower the level of intent that is required to establish inequitable conduct, and vice versa.  Materiality and intent to deceive are separate issues: proof of materiality does not give rise to an inference of intent to deceive, and proof of an intent to deceive does not give rise to an inference of materiality.  There must be clear and convincing evidence that establishes materiality <u>and</u> there must be clear and convincing evidence that establishes an intent to deceive.  If clear and convincing evidence of either, or both, is missing, there can be no inequitable conduct.

**<u>Authorities</u>**

THE   FEDERAL   CIRCUIT   BAR   ASSOCIATION   MODEL   PATENT   JURY <u>INSTRUCTIONS</u>, November 12, 2009, § 5.1 INEQUITABLE CONDUCT; 35 U.S.C. § 282; <u>Larson Mfg. Co. of S.D. v. Aluminart Prods., Ltd.</u>, 559 F.3d 1317 (Fed. Cir. 2009) (vacating district court's determination of inequitable conduct because of lack of materiality); <u>Star Sci., Inc. v. R.J. Reynolds Tobacco Co.</u>, 537 F.3d 1357, 1365 (Fed. Cir. 2008) ("[A]t least a threshold level of each element -- i.e., both materiality and intent to deceive—must be proven by clear and convincing evidence." (citations omitted)); <u>Digital Control Inc. v. Charles Mach. Works</u>, 437 F.3d 1309, 1315 (Fed. Cir. 2006) (explaining PTO Rule 56 standards of materiality); <u>Ferring B.V. v. Barr Labs., Inc.</u>, 437 F.3d 1181 (Fed. Cir. 2006); <u>Dayco Prods., Inc. v. Total Containment, Inc.</u>, 329 F.3d 1358, 1363 (Fed. Cir. 2003); <u>Upjohn Co. v. Mova Pharm. Corp.</u>, 225 F.3d 1306 (Fed. Cir. 2000); <u>Scripps Clinic & Research Found. v. Genentech, Inc.</u>, 927 F.2d

67

1565 (Fed. Cir. 1991); Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867 (Fed. Cir. 1988); Scanner Techs. Corp. v. ICOS Vision Sys. Corp., 528 F.3d 1365, 1376 (Fed. Cir. 2008).

### O.    Laches

Defendants contends that Metso is not entitled to recover damages for patent infringement in the U.S. acts that occurred before it filed this lawsuit because: (1) Metso delayed filing this lawsuit for an unreasonably long and inexcusable period of time, and (2) defendants have been or will be prejudiced in a significant way due to Metso's delay in filing the lawsuit. This is referred to as laches. Defendants must prove delay and prejudice by a preponderance of the evidence.

Whether Metso's delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches. If commencement of a lawsuit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted.  This presumption shifts the burden of proof to Metso to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if Metso presents such evidence, the burden of proving laches remains with defendants. The period of delay is measured from the time that Metso knew, or in the exercise of reasonable diligence should have known, of significantthe defendants' infringement in the U.S. by defendants of Metso's U.S. Patent.  Laches may be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to defendants.  Facts and circumstances that can justify a long delay can include:

being involved in other litigation during the period of delay,

being involved in negotiations with defendants during the period of delay,

economic hardship during the period of delay, and

the amounts of infringing activity by defendants in the United States known to Metso during the period of delay.

You must also consider and weigh any justification offered by Metso for its delay.

If you find unreasonable and unjustified delay occurred after Metso knew or in the exercise of reasonable diligence, should have known of infringement in the U.S. of its U.S. patent, the '618 patent, to find laches, you must also determine if defendants suffered material prejudice as a result of the delay. In this case, defendants must establish evidentiary prejudice. Whether defendants suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this lawsuit resulted in defendants' not being able to present a full and fair defense on the merits to Metso's infringement claim. Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of one or more important witnesses, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. However, defendants must also prove that any loss of evidence took place after any infringement of Metso's U.S. patent. If defendants cannot prove that the loss of evidence took place after infringement began, there can be no laches defense. Thus, if the loss of evidence took place before the infringement began, there can be no laches. The ultimate determination of whether laches should apply is a question of fairness, given all the facts and circumstances. Thus, you may find that laches does not apply if there is insufficient evidence establishing any one of the three elements I just discussed: that the delay was unreasonable or unjustified, that

there was a reasonable excuse or justification, or that the defendants have not suffered significant evidentiary prejudice.  Metso may also defeat a laches defense if defendants have engaged in conduct that would change the equities significantly in Metso's favor.  For example, if you find that defendants contributed to Metso's delay or if you find that defendants engaged in conscious copying or willful patent infringement, each~~either~~ of these may be a factor weighing against defendants.  You may also find that even though all of the elements of laches have been proved, it should not, in fairness, apply, given all the facts and circumstances in this case.

You are instructed to disregard all evidence concerning the destruction of logbooks kept by Mr. Byrne at Masterskreen and drawings of the '618 subject matter that Mr. Byrne prepared. These logbooks and drawings are not relevant to any issues in this case and are not relevant to your determination of laches.

**Authorities**

THE FEDERAL CIRCUIT BAR ASSOCIATION MODEL PATENT JURY INSTRUCTIONS, November 12, 2009, § 5.2 LACHES; 35 U.S.C. § 282; Gasser Chair Co. v. Infanti Chair Mfg. Corp., 60 F.3d 770, 773-74 (Fed. Cir. 1995); A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1033, 1039 (Fed. Cir. 1992) (en banc); Memorandum of Decision and Order, dated January 28, 2010, pp. 47-50 (D.E. 292), 681 F.Supp.2d 309, 320-321.


November 28, 2010                                   Respectfully submitted,
                                                    /s/ Michael C. Stuart
                                                    Michael C. Stuart
                                                    Lisa A. Ferrari
                                                    Marilyn Neiman
                                                    Teodor J. Holmberg
                                                    Cohen Pontani Lieberman & Pavane LLP
                                                    551 Fifth Avenue
                                                    New York, New York 10176
                                                    Phone: 212-687-2770

Telefax: 212-972-5487

Counsel for Plaintiff
Metso Minerals, Inc.

#171983

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I caused to be served a complete and correct copy of the foregoing:

**PLAINTIFF METSO'S PROPOSED AMENDED JURY INSTRUCTIONS**

on defendants, as follows, by ECF, addressed as follows:

> George B. Yankwitt
> Mary M. Chang
> Squire, Sanders & Dempsey LLP
> 30 Rockefeller Plaza
> New York, New York 10112

> *Counsel for Defendants Powerscreen International Distribution Limited, Terex Corporation, Emerald Equipment Systems, Inc., and Powerscreen New York, Inc.*

Dated: November 28, 2010                        /s/ Michael C. Stuart
                                                                   Michael C. Stuart