UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

METSO MINERALS, INC.,
Plaintiff,

v.

POWERSCREEN INTERNATIONAL DISTRIBUTION LIMITED now known as TEREX GB LIMITED, TEREX CORPORATION, POWERSCREEN NEW YORK, INC., and EMERALD EQUIPMENT SYSTEMS, INC.,
Defendants.

CV-06-01446 (ADS) (ETB)

---

**PLAINTIFF METSO'S**
**OPPOSITION TO**
**DEFENDANTS' RENEWED MOTIONS FOR**
**JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(B)**
[Docket Nos. 555, 556]

Michael C. Stuart
Lisa A. Ferrari
Marilyn Neiman
Teodor J. Holmberg
Cohen Pontani Lieberman & Pavane LLP
551 Fifth Avenue
New York, New York 10176
Phone: 212-687-2770
Telefax: 212-972-5487

Counsel for Plaintiff
Metso Minerals, Inc.

**TABLE OF CONTENTS**


I. PRELIMINARY STATEMENT ..... 1

II. LEGAL STANDARD ..... 1

III. ALLEGED NON-INFRINGEMENT OF THE "WHEEL MOUNTED CHASSIS" CLAIM LIMITATION ..... 2

IV. ALLEGED NON-INFRINGEMENT OF THE "HEAD ARTICULATION MEANS" CLAIM LIMITATION ..... 3

V. ALLEGED NON-INFRINGEMENT OF THE "DOES NOT PROJECT LATERALLY BEYOND" CLAIM LIMITATION UNDER THE DOCTRINE OF EQUIVALENTS AS TO CERTAIN INFRINGING MOBILE SCREENERS ..... 4

VI. ALLEGED OBVIOUSNESS OF THE '618 PATENT ..... 5

VII. ALLEGED LACK OF WILLFUL INFRINGEMENT ..... 7

- A. Defendants' Infringement Was Objectively Reckless ..... 7
- B. Defendants Had No Substantial Non-Infringement Defense ..... 9
- C. Defendants Had No Substantial Patent Invalidity Defense ..... 10
- D. Defendants Did Not Reasonably Believe They Did Not Infringe A Valid Patent ..... 11
- E. Defendants' Conduct Was Reckless And An Intentional Disregard For Metso's Patent Rights ..... 13

VIII. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Cases

Atlas Powder Co. v. E.I. DuPont De Nemours, 750 F.2d 1569 (Fed. Cir. 1984) .................................. 2

Black & Decker, Inc. v. Robert Bosch Tool Corp., 260 Fed. Appx. 284 (Fed. Cir. 2008) (unpublished) .................................................................................. 14

BMC Resources v. Paymentech, L.P., 498 F.3d 13731 (Fed. Cir. 2007................................................ 2

Broadcom Corp. v. Qualcom, Inc., 543 F.3d 683 (Fed. Cir. 2008) .................................................. 13

Cruz v. Local Union No. 3, 34 F.3d 1148 (2d Cir. 1994) ......................................................... 2, 3, 4, 6

Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314 (Fed. Cir. 2009)....................................................................................................... 5, 14

Duro-Last, Inc. v. Custom Seal, Inc., 321 F.3d 1098 (Fed. Cir. 2003)..................................... 1, 2, 3, 5

Fairbrother v. Morrison, 412 F.3d 39 (2d Cir. 2005) ............................................................ 2, 3, 6, 7

Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573 (Fed. Cir. 1997)........................................................................................................... 5

Graham v. John Deere Co., 383 U.S. 1 (1966)..................................................................................... 5

In re Seagate Tech., 497 F.3d 1360 (Fed. Cir. 2007)........................................................................... 7

KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398 (2007) ........................................................................... 5

Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co., 730 F.2d 1452 (Fed. Cir. 1984) .................................................................................................. 5

Luciano v. Olsten Corp., 110 F.3d 210 (2d Cir. 1997) ........................................................... 2, 3, 4, 6

Metso Minerals, Inc. v. Powerscreen Int'l. Dist. Ltd., 681 F.Supp. 2d 309 (E.D.N.Y. 2010) ............................................................................................... 4, 10

Ortho-McNeil Pharm. Inc. v. Mylan Labs. Inc., 520 F.3d 1358 (Fed. Cir. 2008)................................ 5

Rolls-Royce, PLC v. United Tech. Corp., 603 F.3d 1325 (Fed. Cir. 2010)........................................... 5

Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc., 620 F.3d 1305 (Fed. Cir. 2010) ................................................................................................... 13

This Is Me Inc. v. Taylor, 157 F.3d 139 (2d Cir. 1998)............................................................... 2, 3, 6

Rules

Rule 50(b), F.R.Civ.P. ...................................................................................................... 1, 2, 15

## I. PRELIMINARY STATEMENT

Defendants' present renewed motions (Dkt. Nos. 555, 556) are made under Rule 50(b), F.R.Civ.P., as they come after the case was submitted to the jury and after the jury's verdict. Consequently, defendants' motions can only be based upon the same grounds of prior motions for JMOL made by defendants before the case was submitted to the jury. On a number of defendants' grounds for JMOL, defendants have not met this basic requirement. Nevertheless, the grounds that defendants assert for JMOL fail to meet the high standard for granting JMOL.

## II. LEGAL STANDARD

If a district court does not grant a JMOL motion under Rule 50(a), F.R.Civ.P., made before submission of the case to the jury, Rule 50(b), F.R.Civ.P., allows the party to renew the motion after the verdict. A post-verdict JMOL motion may not be made on grounds not included in the pre-verdict motion. Duro-Last, Inc. v. Custom Seal, Inc., 321 F.3d 1098, 1105-6 (Fed. Cir. 2003).

Because the issues raised in defendants' present motion pertain uniquely to patent law, Federal Circuit law applies with respect to whether defendants' present post-verdict motion involves the same grounds as defendants' pre-verdict motions. Duro-Last, 321 F.3d at 1106. In Duro-Last, the Federal Circuit held that pre-verdict JMOL motions alleging patent invalidity under an anticipation theory and unenforceability for inequitable conduct did not support a post-verdict motion alleging invalidity under the defense of obviousness since these defenses required different elements of proof. Id., 321 F.3d at 1107-8. If a post-trial motion for JMOL is not based on grounds advanced in the pre-verdict motion, it is improper for the district court to rule on the post-trial motion. Id., 321 F.3d at 1107-8.

A district court may not grant a motion for a JMOL unless the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached. Weakness of the evidence does not justify judgment as a matter of law; the evidence must be such that a reasonable juror would have been compelled to accept the view of the moving party. This Is Me Inc.

v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998). Stated in another way, a JMOL "may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." Fairbrother v. Morrison, 412 F.3d 39, 48 (2d Cir. 2005), quoting Luciano v. Olsten Corp., 110 F.3d 210, 214 (2d Cir. 1997), and Cruz v. Local Union No. 3, 34 F.3d 1148, 1154 (2d Cir. 1994).

## III. ALLEGED NON-INFRINGEMENT OF THE "WHEEL MOUNTED CHASSIS" CLAIM LIMITATION

Defendants contend (pp. 2-6) that they are entitled to JMOL because their track-mounted mobile screeners do not infringe the "wheel mounted chassis" limitation of claim 1 of the '618 patent, either literally or under the doctrine of equivalents.

Initially, the basis for defendants' present motion post-verdict JMOL motion under Rule 50(b), F.R.Civ.P., must be the same as a pre-verdict JMOL motion made by defendants. Duro-Last, 321 F.3d at 1105-6. Because defendants only made pre-verdict motions for JMOL based upon no literal infringement (Trial Tr. 2681-93, 4741-51 (**Exhibit 1**)), and no motions based upon non-infringement under the doctrine of equivalents, the portion of defendants' present motion as to non-infringement of the "wheel mounted chassis" claim limitation under the doctrine of equivalents is improper and must be denied, Duro-Last, 321 F.3d at 1105-6, because the elements to prove literal infringement are significantly different that the elements necessary to prove infringement under the doctrine of equivalents. *Compare* BMC Resources v. Paymentech, L.P., 498 F.3d 1373, 1381 (Fed. Cir. 2007 (literal infringement) with Atlas Powder Co. v. E.I. DuPont De Nemours, 750 F.2d 1569, 1579-80 (Fed. Cir. 1984) (infringement under the doctrine of equivalents).

Defendants argue non-infringement because the Court allegedly charged the jury incorrectly as to the meaning of the "wheel mounted chassis" claim limitation of claim 1 of the '618 patent. If the Court's jury charge as to this claim limitation is correct, as Metso established separately in Metso's opposition (Dkt. No. 578, pp. 2-6) to defendants' motion for a new trial, defendants have not

met the extraordinarily high evidentiary standard for granting JMOL to defendants on this issue under This Is Me, Fairbrother, Luciano and Cruz. Metso's expert, Stephen Whyte, testified that there was infringement literally and/or under at the doctrine of equivalents by all of defendants' mobile screeners of this claim limitation, as well as all of the other claim limitations of claim 1 of the '618 patent and of claims 2 to 7 and 9. (Trial Tr. 2262-2323, 2354-77 (**Exhibit 1**)). If the Court's jury charge as to this claim limitation is not correct, defendants present no evidence as to non-infringement of this claim limitation under the doctrine of equivalents, and the testimony of Metso's expert establishes to the contrary, thereby negating fully the evidentiary standard for granting JMOL to defendants on this issue.

Defendants argument for a JMOL on this issue is without basis.

## IV. ALLEGED NON-INFRINGEMENT OF THE "HEAD ARTICULATION MEANS" CLAIM LIMITATION

Defendants contend (pp. 6-9) that they are entitled to JMOL because none of their mobile screeners infringe the "head articulation means" limitation of claim 1 of the '618 patent, either literally or under the doctrine of equivalents. However, again, defendants did not move pre-verdict for JMOL for non-infringement under the doctrine of equivalents as to the "head articulation means" limitation, and therefore the portion of defendants' present motion as to non-infringement of the "head articulation means" claim limitation under the doctrine of equivalents is improper and must be denied. Duro-Last, 321 F.3d at 1105-6. Rather, defendants only moved for pre-verdict JMOL of no literal infringement of this claim limitation. (Trial Tr. 2681-93, 4741-51 (**Exhibit 1**)).

Defendants argue non-infringement because the Court allegedly incorrectly charged the jury as to the meaning of the "head articulation means" claim limitation of claim 1 of the '618 patent and as to what is necessary to prove infringement of this claim limitation. If the Court's jury charge as to this claim limitation is correct, as Metso established separately in Metso's opposition (Dkt. No. 578, pp. 7-10) to defendants' motion for a new trial, defendants have not met the extraordinarily high evidentiary standard for granting JMOL to defendants on this issue under This Is Me, Fairbrother,

Luciano and Cruz. Metso's expert, Mr. Whyte, testified that there was infringement literally and/or under at the doctrine of equivalents by all of defendants' mobile screeners of this claim limitation, as well as all of the other claim limitations of claim 1 of the '618 patent and of claims 2 to 7 and 9. (Trial Tr. 2262-2323, 2354-77 (**Exhibit 1**)). If the Court's jury charge as to this claim limitation is not correct, defendants present no evidence as to non-infringement of this claim limitation under the doctrine of equivalents, and the testimony of Metso's expert establishes to the contrary, thereby negating fully the evidentiary standard for granting JMOL to defendants on this issue.

Defendants argument for a JMOL on this issue is without basis.

## V. ALLEGED NON-INFRINGEMENT OF THE "DOES NOT PROJECT LATERALLY BEYOND" CLAIM LIMITATION UNDER THE DOCTRINE OF EQUIVALENTS AS TO CERTAIN INFRINGING MOBILE SCREENERS

Defendants contend (pp. 9-11) that they are entitled to JMOL because the doctrines of claim vitiation and prosecution history estoppel preclude application of infringement under the doctrine of equivalents with respect to the "does not project laterally beyond" limitation of claim 1 of the '618 patent. Defendants raised the identical arguments 2 years ago in defendants' motions on summary judgment and claim construction, which the Court rejected in its decision on those motions. 681 F.Supp. 2d at 331-2. Defendants did not seek reconsideration of that aspect of the Court's decision. Consequently, it is law of the case that the doctrines of claim vitiation and prosecution history estoppel do not apply here with respect to the "does not project laterally beyond" limitation of claim 1 of the '618 patent, and that infringement under the doctrine of equivalents is available with respect to that claim limitation. Defendants raised these identical arguments again in their motion for a new trial (Dkt. No. 561, pp. 11-14) to which Metso has responded. (Dkt. No. 578, pp. 10-11).

Defendants argument for a JMOL on this issue is without basis.

## VI. ALLEGED OBVIOUSNESS OF THE '618 PATENT

Defendants contend (pp. 11-12) that they are entitled to JMOL on the ground that the '618 patent was obvious. However, because defendants never advanced this basis for a pre-verdict JMOL, it is improper for the Court to rule on this issue in defendants' post-trial JMOL motion. Duro-Last, 321 F.3d at 1107-8.

To evaluate a claim of obviousness, the following factors are to be considered: (1) the scope and content of the prior art; (2) the differences, if any, between each of claims of the patent and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) "secondary" considerations of non-obviousness. Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966); KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 406 (2007). When "secondary considerations" exist, they cannot be ignored in the obviousness analysis. Ortho-McNeil Pharm. Inc. v. Mylan Labs. Inc., 520 F.3d 1358, 1365 (Fed. Cir. 2008); Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1578-79 (Fed. Cir. 1997) ("Objective indicia may often be the most probative and cogent evidence of nonobviousness in the record"). "Secondary considerations" is thus the fourth factor in the obviousness analysis. Among such "secondary considerations" of non-obviousness are:

- "copying by others", including copying by the defendants and/or by other competitors, and whether the patented design has become the industry's standard. Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1328-29 (Fed. Cir. 2009); Ortho-McNeil, 520 F.3d at 1365; Rolls-Royce, PLC v. United Tech. Corp., 603 F.3d 1325, 1340 (Fed. Cir. 2010).
- "praise by others" of the patented invention. Gambro, 110 F.3d at 1579.
- "unexpected results" that the patented invention achieved. Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co., 730 F.2d 1452, 1461-2 (Fed. Cir. 1984); Ortho-McNeil, 520 F.3d at 1365; Rolls-Royce, 603 F.3d at 1340.

Before the case was submitted to the jury, defendants moved for JMOL that there was insufficient evidence to prove the secondary considerations of "copying by others", "praise by

others" and "unexpected results" (Trial Tr. 4758-68 (**Exhibit 1**)), the fourth factor in the obviousness analysis. Defendants never moved pre-verdict for JMOL that the claims of the '618 patent were obvious in view of the prior art, the first three factors of the obviousness test, or that the claims of the '618 patent were obvious, i.e., all four factors of the obviousness test.

Even if this aspect of defendants' motion is proper, defendants have not met the extraordinarily high evidentiary standard for granting JMOL to defendants on this issue under This Is Me, Fairbrother, Luciano and Cruz. At trial, defendants could not establish that a Dominator mobile screener and a Masterstock 80 conveyor qualified as prior art in that one of each was in the U.S. prior to September 7, 1993 and, if they were, that each functioned properly then. Defendants' expert, Frank Loeffler, could not establish that there was any motivation to select either of these machines as a source for development of the invention recited in claim 1 of the '618 patent or that there was any motivation to combine these machines to result in the invention other than by using the '618 patent as a template for development by using hindsight. (Trial Tr. 4020-2, 4025, 4033-4, 4046-8 (**Exhibit 1**)). Mr. Loeffler also could not establish that, even if one of ordinary skill were motivated to combine the two machines (without resorting to '618 patent hindsight), the resulting combination would be the invention of claim 1. In particular, Mr. Loeffler could not establish that there was any reason to keep the conveyor of the Masterstock 80 unfolded at a 90° angle (i.e., in an **L** configuration) while being transported on a road, and there was no disclosure or suggestion to use a physical stopping mechanism to retain the conveyor at that 90° orientation. (Trial Tr. 4035-9, 4045-6 (**Exhibit 1**)). If the invention was as obvious as defendants contended, defendants did not explain why Powerscreen, as the leader in the field for the previous decade with full knowledge of these alleged prior art machines, failed to independently conceive of the invention before Malachy Rafferty did but instead had to resort to copying Mr. Rafferty's Senator mobile screener. (Trial Tr. 4022-4 (**Exhibit 1**)). Defendants did not explain why so many other competitors, Extec, Keestrack and Fintec, did not themselves first conceive the invention prior to Mr. Rafferty but, like Powerscreen, instead resorted to copying Mr. Rafferty's Senator mobile screener. (Trial Tr. 2905-25, 3125-6 (**Exhibit 1**)). The

commercial success of the patented invention as embodied in the mobile screeners made and sold by Powerscreen and Metso (Trial Tr. 4561-2 (**Exhibit 1**); **Exhibit 2**) also demonstrated the non-obviousness of the invention. This overwhelming evidence of non-obviousness supporting the jury's verdict of non-obviousness demonstrates that there was not "a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture". Fairbrother, 412 F.3d at 48.

Defendants argument for a JMOL on this issue is without basis.

## VII. ALLEGED LACK OF WILLFUL INFRINGEMENT

Defendants contend (pp. 13-18) that they are entitled to JMOL of no willful infringement because defendants' infringement was not objectively reckless, because defendants had "substantial" defenses of non-infringement and patent invalidity, and because defendants' believed they did not infringe a valid patent. Defendants do not meet the high JMOL standard for any of these bases.

### A. Defendants' Infringement Was Objectively Reckless

Viewed objectively, there was certainly a high likelihood that defendants' mobile screeners infringed the claims of the '618 patent. Objectively, one would reasonably expect that the figures of a patent are covered by the patent's claims, and here, the words of claim 1 of the '618 do, in fact, cover exactly what is shown in a preferred embodiment of the invention shown in Figures 4 and 5 of the '618 patent, that is, when folded, the lateral conveyor folds twice, up and forward, into an **L** on its side. One need only make a simple comparison between defendants' infringing mobile screeners and Figures 4 and 5 of the '618 patent to see that both have the same **L** double folded lateral conveyor design, as shown in the side by side comparison on the next page. Clearly, there is an "objectively high likelihood of infringement" by defendants' mobile screeners of the claims of the '618 patent, a threshold requirement for willful infringement under In re Seagate Tech., 497 F.3d 1360, 1371 (Fed. Cir. 2007).




'618 Patent (side view) (from PTX 1.5)
**L** double folded lateral conveyor



Infringing **Chieftain 1400** (side view) (from PTX 100.15)
**L** double folded lateral conveyor



'618 Patent (end view)
(from PTX 1.6)
no lateral projection beyond chassis



Infringing **Chieftain 1400** (end view)
(from PTX 100.10)
no lateral projection beyond chassis

The Court, an objective viewer, also so observed at the close of Metso's case in chief:

> The evidence is clear to me that the defendant knew about this patent early on, and built the machine that infringed. They had the same type of conveyor apparatus in the transport position." (Trial Tr. 2681 (**Exhibit 1**)) (emphasis supplied).

The jury, also an objective viewer, found that 5 models of defendants' mobile screeners **literally** infringed claim 1 of the '618 patent. (Dkt. No. 501-6, Question #1; Dkt. No. 530, ¶ 1). The fact that defendants' infringing screeners looked exactly like the invention shown in the figures of the '618 patent and recited in claim 1 of the '618 patent and these two assessments by objective viewers satisfy the requirement under Seagate for willful infringement that there was an "objectively high likelihood of infringement".

**B. Defendants Had No Substantial Non-Infringement Defense**

Although defendants contend (p. 14) that infringement was "hotly contested at trial", defendants presented absolutely no defense at trial to infringement under the doctrine of equivalents and did not deny such equivalents infringement. In fact, defendants' technical expert, Mr. Loeffler, did not even believe in the doctrine of equivalents and had no explanation as to why defendants' mobile screeners did not infringe the '618 patent under the doctrine of equivalents. (Trial Tr. 3886-90 (**Exhibit 1**)). Defendants' non-infringement defense was reduced to arguing that their mobile screeners had extra features and elements that were not required by claim 1 of the '618 patent. Defendants argued that their mobile screeners had a pair of struts extending from the screeners' frame to the lateral conveyors' head section (Trial Tr. 3752-4, 5186, 5188, 5191-3 (**Exhibit 1**)); that the head and tail sections of the lateral conveyors were only capable of folding together, rather than being capable of folding independently (Trial Tr. 5192-3 (**Exhibit 1**)); that the lateral conveyors could not attain a maintenance position (Trial Tr. 3779, 5190-3, 5228, 5236 (**Exhibit 1**)); that the screeners had hydraulic rams extending from the screeners' frame to the lateral conveyors' head section (Trial Tr. 5186, 5188, 5191-3 (**Exhibit 1**)); and that the head section had to fold so that the head section was positioned longitudinally between the input hopper and the screen box of the screener, defendants'

"blue sky" defense. (Trial Tr. 5174-7, 5180 (**Exhibit 1**)). However, none of these extra elements were in claim 1 of the '618 patent, either literally or inferentially. As to the "wheels" claim element with respect defendants' non-infringement defense for track-mounted screeners, Terex's trial witness employee who had been in the mobile screener business for 31 years, Tony Weir, admitted (even <u>before</u> trial at his deposition) that the tracked Powerscreen mobile screeners <u>literally</u> had a number of types of "wheels", as did defendants' expert, Mr. Loeffler. (Trial Tr. 2902-4, 3957-66 (**Exhibit 1**)). Faced with these telling admissions, defendants retreated to arguing that a track-mounted chassis was stronger and heavier than a tire-mounted chassis (Trial Tr. 2786-90, 3765-6, 5194-8 (**Exhibit 1**)), an irrelevancy, since both are "mobile, road-hauled" and admittedly had the "wheels" required by claim 1. Defendants' non-infringement arguments at trial were thus legally irrelevant and were presented merely to confuse the jury.

Defendants' <u>pre</u>-trial defenses to infringement were similarly weak. In an effort to avoid infringement, defendants argued for claim constructions that had no support in the '618 patent itself or in its file wrapper. Defendants' proposed construction of "chassis" as including only the longitudinal beams would have improperly resulted in claims that did not even cover the preferred embodiment of the invention shown and described in the '618 patent, a clearly faulty claim construction under well-established patent law principles. Alternatively, defendants argued that there was prosecution history estoppel or claim vitiation that precluded a finding of patent infringement under the doctrine of equivalents, but again there was no support for these arguments. Consequently, the Court summarily rejected all of these arguments. 681 F.Supp.2d at 317-26, 332.

Defendants never had a substantial non-infringement defense.

**C. <u>Defendants Had No Substantial Patent Invalidity Defense</u>**

Defendants admit (pp. 15-16) that their obviousness case was based solely upon the Dominator mobile screener and the MasterStock 70/80 conveyor.

As discussed above in Section VI, defendants had insufficient evidence to establish that the Dominator mobile screener and the MasterStock 70/80 conveyor qualified as prior art to the '618 patent, and, if there was sufficient evidence, that there was a motivation to select these machines as starting points for further development, and that there was a motivation to combine the teachings of these two machines to result in the invention claimed in the '618 patent without using hindsight. Even if these two machines were combined, their combination did not result in the invention claimed in the '618 patent because neither disclosed or suggested keeping the conveyor of the MasterStock 70/80 unfolded at a 90° angle (i.e., in an **L** configuration) while being transported on a road, and there was no disclosure or suggestion to use a physical stopping mechanism to retain the conveyor at that 90° orientation. Defendants' analysis (pp. 15-16) does not rebut or even take into account the strong secondary considerations of non-obviousness, including the commercial success of the invention as demonstrated by defendants' and Metso's sales, the failure by defendants (and others) to develop the invention for a decade or more despite being the leader in the industry, copying by defendants and others of the patented design which became the industry standard, and the unexpected results that the **L** fold design enabled dramatically higher product output and longer lateral conveyors.

Additionally, defendants never established that they were aware of this patent invalidity defense before commencement of their willful infringement. In fact, defendants presented no evidence at trial as to <u>when</u> defendants first developed their obviousness defense.

Defendants never had a substantial patent invalidity defense, and certainly were not aware of this defense before they infringed.

### D. <u>Defendants Did Not Reasonably Believe They Did Not Infringe A Valid Patent</u>

Defendants contend (p. 17) that "every single Powerscreen" witness testified that he believed that the Powerscreen mobile screeners did not infringe the claims of the '618 patent. However, none of these witnesses testified that they actually bothered to read the '618 patent, its claims, or its file history before they arrived at their "opinions", the same "opinions" which Powerscreen and its multi-

billion dollar corporate parent, Terex Corporation, allegedly based their decisions to develop and continue selling the infringing mobile screeners.

Defendants' alleged defense of good-faith belief of non-infringement (pp. 16-17) is based upon pre-infringement "opinions" by defendants' engineers Neill Suitor, Richard Byrne, Joe Daly, and Daniel McCusker, none of whom are patent attorneys in the United States (or even in the United Kingdom). (Trial Tr. 2885-6, 3130-1, 3449, 3578 (**Exhibit 1**); McCusker Dep. 17-19 (**Exhibit 3**); Daly Dep. 56 (**Exhibit 4**)). To form his expert "opinion", Richard Byrne read only an abstract of the '618 patent and compared Powerscreen's infringing design to the Senator mobile screener. (Trial Tr. 3555 (**Exhibit 1**)). Mr. McCusker and Mr. Daly relied upon the "opinions" of Mr. Suitor, which Mr. Suitor never fully explained. (McCusker Dep. 41-2, 98, 115 (**Exhibit 3**); Daly Dep. 135-6 (**Exhibit 4**)). And there was no trial testimony by Mr. Suitor as to his "opinions", their bases, what exactly he told others, or whether his "opinions" may have changed.

The 2002 post-infringement "opinion" of Powerscreen's General Manager, Kieran Hegarty, also not an attorney, was based upon discussions with Messrs. Suitor and McCusker, and Mr. Hegarty never even bothered to read the '618 patent. (Trial Tr. 3081-2, 3087-90, 3109-12 (**Exhibit 1**)).

There is no evidence that any of these five people had any understanding of the proper measure of infringement under the U.S. patent laws, including literal infringement and significantly, infringement under the doctrine of equivalents. And despite being a sophisticated international conglomerate with a legal department as early as 2000 when defendants' infringement began (Trial Tr. 3131 (**Exhibit 1**)) and with assets of over $2 billion (**Exhibit 5**, PTX 335.28) -- more than sufficient money and resources to obtain patent advice -- Terex Corporation produced no opinions of any of its bevy of attorneys to justify or excuse their patent infringement.

Defendants assert (p. 17) that their employees' belief of non-infringement was based upon a "*bona fide* construction of what the '618 patent claimed"; however, this construction, a legal issue which could only be properly assessed after analysis of the '618 patent as a whole and its file history

and in view of the U.S. patent laws, was arrived at by British laymen employed by a large corporation with legal departments around the world and adequate resources to obtain a qualified legal opinion of a U.S. patent attorney. Even with this alleged *bona fide* claim construction, there was only consideration of literal infringement and no consideration of infringement under the doctrine of equivalents, a legal doctrine unknown to them.

Defendants' "belief" of non-infringement was reckless, evincing ostrich-like, head-in-the-sand behavior.

Additionally, defendants point to no evidence as to a belief, good-faith or otherwise, at any point in time, that the '618 patent was invalid or unenforceable, or any good-faith belief by defendants as to the merit of any of the defenses actually pursued in this action or at trial, not even any business memoranda reporting that the '618 patent was no longer viewed as a problem.

Defendants' failure to produce any opinions of counsel opining that their mobile screeners did not infringe the '618 patent or that the '618 patent was invalid or unenforceable is circumstantial evidence of an intent by defendants to infringe the '618 patent and that defendants believed it to be valid and enforceable. Broadcom Corp. v. Qualcom, Inc., 543 F.3d 683, 699 (Fed. Cir. 2008).

**E. Defendants' Conduct Was Reckless And An Intentional Disregard For Metso's Patent Rights**

In view of a complete lack of any reasonable belief of non-infringement of the '618 patent or in its invalidity, the objectively high likelihood that defendants were infringing a valid '618 patent was "either known or so obvious that it should have been know" to defendants, making their conduct reckless and constituting willful infringement.

Defendants' attempt (p. 13) to fit their facts into three court decisions is misplaced. In Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc., 620 F.3d 1305, 1319, 1312 (Fed. Cir. 2010), there was no willful infringement because literal infringement was not proven and defendant had presented a "substantial question" as to infringement under the doctrine of equivalents. Here, however, there was literal infringement and defendants presented no defense to equivalents

infringement. Also, in Spine Solutions, there was a substantial question as to obviousness because all of the elements in the patent's claim were disclosed in two prior art references. Here, however, the prior art relied upon by defendants did not disclose all of the elements of claim 1 of the '618 patent, in particular, neither the Dominator mobile screener nor the MasterStock 70/80 conveyor disclosed or suggested keeping the conveyor of the Masterstock 80 unfolded at a 90° angle (i.e., in an **L** configuration) while being transported on a road, or a physical stopping mechanism to retain the conveyor at that 90° orientation. In Depuy, 567 F.3d at 1337, infringement was not literal and infringement under the doctrine of equivalents was "a close one", unlike the present situation. In Black & Decker, Inc. v. Robert Bosch Tool Corp., 260 Fed. Appx. 284, 291 (Fed. Cir. 2008) (unpublished), willfulness was rendered "moot" upon reversal of the infringement finding, so there was no consideration of the willfulness issue.

In sum, there was not "a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." Fairbrother, 412 F.3d at 48. Defendants do not even come close to the JMOL standard on the willful infringement issue.

## VIII. CONCLUSION

For the foregoing reasons, Defendants' Renewed Motions For Judgment As A Matter Of Law Pursuant To Fed. R. Civ. P. 50(b) [Dkt Nos. 555, 556] should be denied.

Dated: April 28, 2011

/s/ Michael C. Stuart
Michael C. Stuart
Lisa A. Ferrari
Marilyn Neiman
Teodor J. Holmberg
Cohen Pontani Lieberman & Pavane LLP
551 Fifth Avenue
New York, New York 10176
Phone: 212-687-2770
Telefax: 212-972-5487

Counsel for Plaintiff
Metso Minerals, Inc.

#242430

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused to be served a complete and correct copy of the foregoing:

**PLAINTIFF METSO'S
OPPOSITION TO
DEFENDANTS' RENEWED MOTIONS FOR
JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(B)**
[Docket Nos. 555, 556]
**(including exhibits)**

on defendants, as follows, by ECF and by Federal Express, to the following counsel of record:

George B. Yankwitt
Nathan Lane, III
Mary M. Chang
Squire, Sanders & Dempsey LLP
30 Rockefeller Plaza
New York, New York 10112

Counsel for Defendants
Powerscreen Int'l Dist. Ltd. now known as Terex GB Ltd., Terex Corp., Emerald Equipment Systems, Inc., and Powerscreen New York, Inc.

Dated: April 28, 2011

/s/ Michael C. Stuart
Michael C. Stuart