**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
METSO MINERALS, INC.,

                Plaintiff,

        -against-

 POWERSCREEN INTERNATIONAL
DISTRIBUTION LIMITED, now known as
TEREX GB LIMITED, TEREX
CORPORATION, POWERSCREEN NEW
YORK, INC. and EMERALD EQUIPMENT
SYSTEMS, INC.,

                Defendants.
----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
06-cv-1446 (ADS)(ETB)

**APPEARANCES:**

**Cozen O'Connor**
*Attorneys for the Plaintiff*
277 Park Avenue
New York, NY 10172
      By:    Michael C. Stuart, Esq.
            Lisa Ferrari, Esq., of Counsel

**Squire Sanders & Dempsey LLP**
*Attorneys for all the Defendants*
30 Rockefeller Plaza
New York, NY 10112
      By:    George B. Yankwitt, Esq.
            Mary Margaret Chang, Esq.
            Andrew H Fried, Esq., of Counsel

**Merchant & Gould, P.C.**
*Attorneys for all the Defendants*
1050 17th Street
Suite 1950
Denver, CO 80265
      By:    Jon Trembath, Esq., of Counsel

**Clauss & Sabatini, PC**
*Attorneys for the Defendant Terex Corporation*
1350 Broadway
Suite 1710
New York, NY 10018
      By:    Ava R. Maynard, Esq., of Counsel

**Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP**
*Attorneys for the Defendant Powerscreen New York, Inc.*
330 Old Country Road
Suite 301
Mineola, NY 11501
      By:    Andrew E. Curto, Esq., of Counsel

**SPATT, District Judge.**

The Plaintiff Metso Minerals commenced the present law suit in 2006, alleging that the Defendants Powerscreen International Distribution Limited ("Powerscreen"), Terex Corporation ("Terex"), Powerscreen New York, Inc. ("PSNY"), and Emerald Equipment Systems, Inc. ("Emerald"),  manufactured and sold products that infringed United States Patent 5,577,618 (the "'618 patent").  Following discovery, claim construction, and summary judgment, the Plaintiff tried its case to a jury in late 2010.  At the seven-week trial, among other defenses, the Defendants challenged the validity of the '618 patent, but on December 6, 2010, the jury returned a verdict rejecting this challenge.  The jury found, in part, that no asserted claim of the '618 patent would have been obvious to a person of ordinary skill in the art at the time of the invention.  The jury concluded that the Defendants had willfully infringed, either literally or by equivalents, claims 1, 2, 3 and 7 of the '618 patent with respect to the manufacture and sale of eleven screening machines in the United States over a ten year period.  In addition, the jury rendered an advisory verdict denying the defenses of laches and inequitable conduct.

On March 3, 2011, the Court entered Judgment on the jury verdict, including the jury's two advisory verdicts.  With regard to the defense of laches, the Court entered judgment that

"[t]he defendants did not prove that the plaintiff is not entitled to recover damages for acts that occurred before it filed this lawsuit on March 29, 2006 because: (1) plaintiff delayed filing this lawsuit for an unreasonably long and inexcusable period of time, and (2) the defendants have been prejudiced in a significant way as a result of the plaintiff's delay in filing this lawsuit."

With regard to the defense and counterclaim of inequitable conduct, the Court entered judgment that "[t]he defendants did not prove that the inventor, Malachy Rafferty, breached the duty of candor and good faith and committed inequitable conduct in the United States Patent and Trademark Office during the prosecution of the application for the '618 patent by failing to disclose material information with the intent to mislead the U.S. Patent Office Examiner."

Federal Rule of Civil Procedure 52(a)(1) ("Fed. R. Civ. P. 52(a)(1)") provides that "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1); See N.A.A.C.P. v. AcuSport, Inc., 271 F. Supp. 2d 435, 471 (E.D.N.Y. 2003) ("Under the modern Federal Rules of Civil Procedure, the court is required to make and explain its own independent findings of fact and conclusions of law in an equitable action even where an advisory jury has rendered a verdict.") DeFelice v. Am. Int'l Life Assurance Co. of New York, 112 F.3d 61, 65 (2d Cir. 1997) (noting that a trial court that uses an advisory jury must make both "its own factual findings and conclusions, in reliance upon the advisory jury's verdict if the court so chooses, and . . . explain how it arrived at those findings and conclusions").

An advisory verdict is not binding on the court making those findings. See Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 907 (2d Cir. 1993) ("A district court is not bound

by the findings of the advisory jury, which it is free to adopt in whole or in part or to totally disregard." (quoting Sheila's Shine Prods., Inc. v. Sheila Shine, Inc., 486 F.2d 114, 122 (5th Cir.1973))); Felker v. Pepsi-Cola Co., 101 F.3d 109 (2d Cir.1996) (unpublished opinion) (upholding trial court's rejection of advisory jury findings). The Court "need only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." See the Advisory Committee Note to 1946 Amendment of Fed. R. Civ. P. 52.

Therefore, according to the provision of Fed. R. Civ. P. 52(a)(1), the Court makes the following findings of fact and conclusions of law and thereby modifies the final entry of judgment as set forth below.

## I. LACHES

The Defendants assert that the doctrine of laches should be applied in the present case to limit the Plaintiff's recovery, if any, to damages from sales after the lawsuit was commenced because (1) Metso delayed filing this lawsuit for an unreasonably long and inexcusable period of time, and (2) the Defendants were prejudiced in a significant or material evidentiary way due to Metso's delay in filing this lawsuit. The Defendants state that they began selling the accused screening plants in the United States in 2000, and that despite the Plaintiff's knowledge of this, the Plaintiff did not file the present suit until 2006. The Defendants assert that during this time, the Plaintiff lost and destroyed files relevant to the litigation, and that this caused material prejudice. The Plaintiff states that any document destruction during this period was routine and immaterial, and that much of the delay in filing suit was due to settlement negotiations.

Previously, this Court found that summary judgment on this issue was inappropriate.

Here, even considering settlement negotiations, the period between discovery of the alleged infringement and the filing of suit is significant. Further,

the Plaintiff admits to having permitted the destruction in 2005 of the entirety of the patent prosecution file held by the U.S. attorney who filed the '618 application. While the Plaintiff claims that all of the documents in this file were duplicates of those held by others, the Court finds that the destruction of this file alone raises genuine issues of fact with respect to the Defendants' assertion of laches.

Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd., 681 F. Supp. 2d 309, 339-340 (E.D.N.Y. 2010) ("Metso I").

The Court now finds that the Defendants have failed to establish the first element of the laches defense; namely, an unreasonable delay by the Plaintiff Metso in bringing suit. In addition, even if it is assumed that this first element was established, the Court finds that the Defendants have suffered neither economic nor evidentiary prejudice.

## A. **Relevant Law**

The defense of laches is a "question primarily addressed to the discretion of the trial court which must consider the equities of the parties." Gardner v. Panama R.R. Co., 342 U.S. 29, 30, 31, 72 S. Ct. 12, 13, 96 L. Ed. 31 (1951) (per curiam). "[Laches] is an equitable defense that bars a plaintiff's equitable claim when he [or she] is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." Ikelionwu v. U.S., 150 F.3d 233, 237 (2d Cir. 1998) (internal quotations and citations omitted). In a patent case in particular, the defense of laches arises when a patentee "neglect[s] or delay[s] ... bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." Gasser Chair Co., Inc. v. Infanti Chair Mfg., Corp., 60 F.3d 770, 773 (Fed. Cir. 1995) (quoting Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028–29 (Fed. Cir. 1992) (en banc)). "The remedy for inequitable conduct is the 'atomic bomb' of patent law" because it renders the entire patent unenforceable. Therasense, Inc. v. Becton, Dickinson and Co., 649 F.3d 1276, 1288 (Fed. Cir. 2011).

To demonstrate laches, the defendant must prove by a preponderance of the evidence: (1) unreasonable and inexcusable delay in filing suit, and (2) material prejudice resulting from the delay. Aukerman, 960 F.2d at 1032–33. A rebuttable presumption of laches arises in patent infringement cases for delays longer than six years. Id. at 1034. Nevertheless, because it is an equitable doctrine, laches does not operate in a rigid fashion. The reasonableness of a delay in bringing suit depends on the facts and circumstances of each case. Gasser, 60 F.3d at 773; Aukerman, 960 F.2d at 1032.

## B. Presumption of Laches

As stated above, "a delay of more than six years after the . . . inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches." Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1163 (Fed. Cir. 1993).

In mid-February 2000, in Northern Ireland and the United Kingdom, Powerscreen first displayed to the public the same models of the mobile screeners at issue here. In May 2000, Metso's U.K. attorneys notified Powerscreen via letter that their mobile screeners infringed Metso's patent. However, the display only took place outside of the U.S. and Metso's communication only concerned the European patent which corresponds to the '618 patent. The Plaintiff claims that it was not aware of the Defendants' infringing sales in the U.S. until December 2000.

However, the relevant time period is measured from the time the Plaintiff knew *or reasonably should have known* of the Defendants' alleged infringing activities to the date of suit. Aukerman, 960 F.2d at 1032 (emphasis added). This lawsuit was filed on March 29, 2006. The

Court finds that the Plaintiff Metso reasonably should have known of its claim before March 29, 2000.

The first U.S. sale was on March 9, 2000 and this was after displays of the same infringing mobile screeners in parts of Europe. Although the Plaintiff alleges that these displays could not have placed it on notice that the Defendants were selling infringing mobile screeners in the U.S. at that time, it certainly put them on notice of the strong possibility of U.S. sales occurring in the near future. In addition, Mr. Benjamin Hansbury was the global product manager of mobile screens for Metso, which meant he was responsible for activity in all global markets. This also leads to the conclusion that Metso reasonably should have known of the infringement at this time.

Therefore, the Defendants have proven a delay of six years plus a few weeks, which technically invokes the presumption of prejudice. Even though the relevant time period is just over six years, it is nevertheless appropriate in this case to give the Defendants the presumption of laches as a matter of equity. See Hearing Components, 600 F.3d at 1375 (affirming the district court's application of a presumption of prejudice when a delay of six years minus a day was proven). Accordingly, the presumption shifts to Metso the burden of producing evidence that would show either that Metso's delay was reasonable under the circumstances or that the Defendants suffered neither economic nor evidentiary prejudice. Id.; see Aukerman, 960 F.2d at 1038 (the presumption of laches can be rebutted "by offering evidence to show an excuse for the delay or that the delay was reasonable" or by offering evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue.'"). Once the presumption of laches has attached, "the defendants could have remained utterly mute on the issue of prejudice

and nonetheless prevailed." <u>Hall v. Aqua Queen Mfg., Inc.</u>, 93 F.3d 1548, 1554 (Fed. Cir.

1996).

**C.** <u>**As to Whether the Delay was Unreasonable or Inexcusable**</u>

Although the presumption of prejudice typically applies when the delay is longer than six

years, there are several ways in which a plaintiff can rebut this presumption.  As this Court

charged the jury at the trial:

> Facts and circumstances that can justify a long delay can include:
>
> 1. Being involved in other litigation during the period of delay.
> 2. Being involved in negotiations with the Defendants during the period of delay.
> 3. Economic hardship during the period of delay.
> 4. The amount of infringing activity by the Defendants in the United States known to Metso during the period of delay.

(Trial Tr. at 5380–81.)

In the present case, Metso was involved in other litigation during the period of delay.  In

March 2005, Metso commenced a lawsuit in the U.K. against Defendant Powerscreen alleging

that the same mobile screeners at issue here infringed Metso's corresponding U.K. patent.  Mr.

Hansbury testified that during the period of delay, "[w]e were quite active during that period,

and, as I say, reacting and working with our lawyers and considering and preparing for the

initiation of the litigation in the U.K."  (Trial Tr. at 504:3-6.)  Although the Defendants have

pointed out that the ongoing litigation must involve the patent at issue, the Court finds that

litigation of the corresponding European patent to the U.S. '618 patent is sufficient to meet this

requirement.

In addition, Metso has presented evidence that it was involved in negotiations with the

Defendants during the period of delay.  From approximately March 2002 until March 2005,

Metso and the Defendant Powerscreen exchanged several letters concerning the relevant patent

infringement in an effort to resolve the present dispute. While the substance of these letters was not admitted at trial, the dates and general subjects of the correspondences were in evidence. Moreover, Mr. Hansbury testified at the trial that the two parties "exchanged correspondence back and forth between [their] lawyers . . . [and] had a meeting in London" with regard to these claims. (Trial Tr. at 475: 23-25.) The Court recognizes that the majority of the earlier dated discussions were centered on infringement of the corresponding European patent. Nevertheless, these are negotiations that would have most likely resolved issues of infringement with regard to the U.S. patent as well. Furthermore, by April 2003, the correspondence did specifically reference the U.S. '618 patent. (Plaintiff's Trial Exhibit ("PTX") 32.) Although the parties' communications were "sporadic" and "marked by long hiatuses" according to the Defendants, this does not preclude a finding that negotiations nevertheless occurred. See Haworth, Inc. v. Herman Miller, Inc., 856 F. Supp. 354, 357-58 (W.D. Mich. 1994) ("Although plaintiff's pursuit of negotiations with defendant during this period cannot be characterized as consistent, plaintiff did advise defendant of the [law] suit, and plaintiff's continuing intent to enforce its patents . . ."). The Plaintiff's correspondence with the Defendants evinced a clear intent to enforce its patents.

For the reasons set forth above, the Court finds that Metso has rebutted the presumption that it unreasonably and inexcusably delayed in filing the present suit. Therefore, it was the Defendants' burden to demonstrate by a preponderance of the evidence that Metso unreasonably and inexcusably delayed in filing the present suit. The Court finds that the Defendants have not met this burden.

**D.  <u>As to Whether the Delay Resulted in Evidentiary Prejudice</u>**

Even assuming, *arguendo*, that the Plaintiff Metso has not sufficiently rebutted the first

element of laches, it has rebutted the presumption that there was economic or evidentiary

prejudice to the Defendants.

As explained by the Federal Circuit,

"Material prejudice ... may be either economic or evidentiary.  Evidentiary, or
'defense' prejudice, may arise by reason of a defendant's inability to present a full
and fair defense on the merits due to the loss of records, the death of a witness, or
the unreliability of memories of long past events, thereby undermining the court's
ability to judge the facts....  Economic prejudice may arise where a defendant and
possibly others will suffer the loss of monetary investments or incur damages
which likely would have been prevented by earlier suit."

<u>Aukerman</u>, 960 F.2d at 1033 (citations omitted).  Evidentiary prejudice "must consist of some

separate disadvantage resulting from the delay, such as loss of records, unavailability of

evidence, etc., that prevents a party from proving a separate claim or defense."  <u>Hearing</u>

<u>Components, Inc. v. Shure Inc.</u>, 600 F.3d 1357, 1376 (Fed. Cir. 2010).

The Defendants at trial argued evidentiary or "defense" prejudice because the files of

U.S. Patent attorney John Holman were destroyed during the period of delay.  (<u>See</u> Trial Tr. at

119:7-15) ("The facts are that the attorney who represented Mr. Rafferty in his dealing with the

patent office destroyed his file concerning the application for a patent five years after Metso

made a claim of infringement, and the attorney testified under oath that he could not remember

anything.  He destroyed his file after telling Metso he would be destroying his file.  He destroyed

his file five years after Metso first made a claim that Powerscreen was infringing a patent.").

The Plaintiff acknowledges that in October 2005, Mr. Holman's law firm destroyed its

file relating to the prosecution of the '618 patent along with approximately 30,000 to 40,000

other files when the storage facility housing those files was about to be demolished, pursuant to a newly enacted two-year retention policy. However, the Plaintiff asserts that there are only two categories of documents that were contained in this file: (1) communications with the U.S. Patent Office, which would have been part of the public record; and (2) communications with the law firm of Cruikshank & Co. in Dublin, Ireland, which were retained in the files of the Cruikshank law firm and produced to the Defendants during pre-trial discovery. Mr. Holman never communicated directly with Mr. Rafferty, so that the file would not contain this type of communication. (Trial Tr. at 4599:2.)

Three other grounds of evidentiary prejudice were raised during the pre-trial depositions and post-trial briefing. First, as to the destruction of drawings and logbooks, the Court finds that the lack of this type of evidence did not prejudice the Defendants. Second, the Court finds that destruction of invoices was similarly not prejudicial because the Defendants acknowledge that such invoices were independently procured by the Defendants from public litigation records. In addition, the Defendants did not present any evidence that invoices were destroyed after the time at which the Plaintiff should have reasonably been aware of infringement.

Third, the Court finds that the allegation that the memory of Mr. Rafferty faded over time is not sufficient to support a finding of laches. This is undoubtedly an inevitable part of complex litigation. Even if this infringement case were pursued immediately in March 2000, the Defendants desired Mr. Rafferty to recall events almost a decade prior, namely as to what had taken place prior to September 1993. Moreover, the Court does not agree with the Defendants that Mr. Rafferty's memory was affected with regard to whether he understood his duty of candor and disclosure to the Patent and Trademark Office ("PTO") during the prosecution of the patent. Mr. Rafferty's recollection as to whether he intended to mislead the PTO is not the type

of fact that would be affected by a delay in this case. In addition, if Mr. Rafferty had discussed this topic with his attorneys, it would have been privileged and inaccessible to the Defendants. Finally, the Defendants waited two and a half years after the commencement of the present suit to depose Mr. Rafferty in Northern Ireland. This undeniably contributed to whatever memory issues they now allege.

Therefore, the Court finds that the Plaintiff has sufficiently rebutted any presumption of evidentiary prejudice. **A**ccordingly, it was the Defendants' burden to demonstrate it suffered prejudice in a significant way as a result of the Plaintiff's delay in filing this lawsuit. The Defendants have not met this burden.

### E.  Other Equitable Considerations

Finally, the Court notes that the jury found that the Defendants willfully infringed the '618 patent. This is another equitable factor weighing against the Defendants in determining whether to apply laches. See Odetics, Inc. v. Storage Tech. Corp., 919 F. Supp. 911, 924 (E.D. Va. 1996), overruled on other grounds by Odetics, Inc. v. Storage Tech. Corp., 116 F.3d 1497 (Fed. Cir. 1997). As the Court has explained in a companion decision to this memorandum and order, there was sufficient evidence from which the jury could conclude that there was objective recklessness and it was proper for the Court to instruct the jury to consider the Defendants' refrain from obtaining advice of counsel as one relevant factor in a willful infringement analysis. Due to the fact there was both a legally and factually supportable finding of willful infringement, this factor further compels the Court to dismiss the defense of laches in the present case.

In sum, Metso has adequately rebutted the presumption of laches "by offering evidence to show an excuse for the delay or that the delay was reasonable" or by offering evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in

issue.'" Aukerman, 960 F.2d at 1038. At all times, the Defendants bore the ultimate burden of persuasion as to the affirmative defense of laches and the Court judges the facts of unreasonable delay and prejudice on the totality of the evidence. The Court therefore enters judgment that the defendants have not met their burden to demonstrate the defense of laches and that the Plaintiff may recover damages for acts that occurred before it filed this lawsuit on March 29, 2006.

## II. INEQUITABLE CONDUCT

The Defendants also allege that Metso's '618 patent is unenforceable due to inequitable conduct. In particular, the Defendants assert that Malachy Rafferty, the inventor of the '618 patent, failed to disclose the Dominator mobile screener as prior art to the U.S. PTO during the prosecution of the application of the '618 patent. The Court has previously held that because disclosure of the MasterStock 70 and 80 conveyors would have been cumulative of the already-disclosed '987 patent, the failure to disclose it was not material, and therefore the omission does not affect the validity of the '618 patent. Metso v. Powerscreen, 681 F. Supp. 2d 309, 338 (E.D.N.Y. 2010). Therefore, the only alleged prior art at issue is the Dominator screener.

### A. **Relevant Law**

Generally, "[a] patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution." Digital Control, Inc. v. Charles Mach. Works, 437 F.3d 1309, 1313 (Fed. Cir. 2006) (citing Norian Corp. v. Stryker Corp., 363 F.3d 1321, 1330-31 (Fed. Cir. 2004)). "To prove inequitable conduct, the accused infringer must provide evidence that the applicant (1) misrepresented or omitted material information, and (2) did so with specific intent to deceive the PTO." Am. Calcar, Inc. v. Am. Honda Motor Co., Inc., 651 F.3d 1318, 1334 (Fed. Cir. 2011). The materiality required to

establish inequitable conduct is, in general, but-for materiality.  Id.  "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."  Id.  Deceptive intent can be inferred from indirect and circumstantial evidence.  However, that "inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard."  Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir. 2008). "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." Therasense, Inc. v. Becton, Dickinson and Co., 649 F.3d 1276, 1289 (Fed. Cir. 2011) (citing Molins PLC v. Textron, Inc., 48 F.3d 1172, 1181 (Fed. Cir. 1995)).  Intent and materiality are separate requirements.  Id. at 1290 (citing Hoffmann–La Roche, Inc. v. Promega Corp., 323 F.3d 1354, 1359 (Fed. Cir. 2003)).

### B.  **Materiality**

The Defendants allege that there is one aspect of the Dominator mobile screener that is unique and therefore its nondisclosure was material for that reason.  This relevant feature is the vertical folding of the lateral conveyor about a horizontal axis.  However, because the Court finds that in view of the teachings of Smith, Osadchuk, Hartl and Zehr, which were all considered by the PTO during the prosecution of the application for the '618 patent, the Dominator's disclosure would have been cumulative.  See Honeywell Int'l Inc. v. Universal Avionics Sys. Corp., 488 F.3d 982, 1000 (Fed. Cir. 2007) ("Information cumulative of other information already before the Patent Office is not material.").  Therefore, the Defendants have

not proven by clear and convincing evidence that the Dominator was prior art that but-for its non-disclosure, the PTO would not have allowed the claim.

### C. **Intent**

Even assuming, *arguendo*, that materiality was established by the Defendants sufficient to meet a clear and convincing standard, the Defendants have not demonstrated that the applicant made a deliberate decision to withhold the reference and that is the single most reasonable inference to be drawn from the evidence.

At a videotaped deposition in Ireland, Mr. Rafferty testified that he signed the requisite duty to disclose as part of his patent application, but he did not have a complete understanding as to what this meant. He stated that he left it in the hands of the person he was paying to do it—the Irish law firm of Cruikshank & Co. of Dublin Ireland. (Rafferty Dep. 312:2-3.) The Court recognizes that "inventors represented by counsel are presumed to know the law." Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1385 (Fed. Cir. 2001). However, Mr. Rafferty also testified that he had a legitimate reason for not disclosing the Dominator mobile screener to Cruikshank. He understood that the Dominator was "different" from his claimed invention, and therefore believed he was not required to disclose it. (Rafferty Dep. at 436:2-4.)

The Court, as well as the jury, had the opportunity to observe the demeanor of Mr. Rafferty at this deposition and make a credibility determination that he was not being "evasive," as the Defendants accuse him to be. See Monon Corp. v. Stoughton Trailers Inc., 239 F.3d 1253, 1263-64 (Fed. Cir. 2001) (deferring to a district court's credibility determination regarding intent to deceive the PTO because the testimony was "'a coherent and facially plausible story that is not contradicted by extrinsic evidence,' and the trial court evidently believed him.") (internal citation omitted). Moreover, it was not the Plaintiff's burden to prove Mr. Rafferty's honest intent.

Rather, it was the Defendants' burden to meet the requisite clear and convincing standard that his intent was deceptive. "The patentee need not offer any good faith explanation unless the accused infringer first carried his burden to prove a threshold level of intent to deceive by clear and convincing evidence." Star Scientific, Inc., 537 F.3d at 1368.

Accordingly, the Court finds, as the jury did, that there was a reasonable inference to be drawn from the evidence as to Mr. Rafferty's intent other than deceptiveness. The Defendants have not sufficiently met the requisite clear and convincing standard for the intent element of the Defendants' inequitable conduct defense. See M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc, 439 F.3d 1335, 1341 (Fed. Cir. 2006) ("When the absence of a good faith explanation is the only evidence of intent . . . that evidence alone does not constitute clear and convincing evidence warranting an inference of intent.").

Therefore, the Court enters judgment that the defendants did not prove that the inventor, Malachy Rafferty, breached the duty of candor and good faith and committed inequitable conduct in the United States Patent and Trademark Office during the prosecution of the application for the '618 patent by failing to disclose material information with the intent to mislead the U.S. Patent Office Examiner.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that judgment be entered denying the defense of laches and the defense and counterclaim of inequitable conduct.

**SO ORDERED.**

Dated: Central Islip, New York
December 8, 2011

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge
