**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
METSO MINERALS, INC.,

                    Plaintiff,

          -against-

 POWERSCREEN INTERNATIONAL
DISTRIBUTION LIMITED, now known as
TEREX GB LIMITED, TEREX
CORPORATION, POWERSCREEN NEW
YORK, INC. and EMERALD EQUIPMENT
SYSTEMS, INC.,

                    Defendants.
---------------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
06-cv-1446 (ADS)(ETB)

**APPEARANCES:**

**Cozen O'Connor**
*Attorneys for the Plaintiff*
277 Park Avenue
New York, NY 10172
          By:     Michael C. Stuart, Esq.
                    Lisa Ferrari, Esq., of Counsel

**Squire Sanders & Dempsey LLP**
*Attorneys for all the Defendants*
30 Rockefeller Plaza
New York, NY 10112
          By:     George B. Yankwitt, Esq.
                    Mary Margaret Chang, Esq.
                    Andrew H Fried, Esq., of Counsel

**Merchant & Gould, P.C.**
*Attorneys for all the Defendants*
1050 17th Street
Suite 1950
Denver, CO 80265
          By:     Jon Trembath, Esq., of Counsel

**Clauss & Sabatini, PC**
*Attorneys for the Defendant Terex Corporation*
1350 Broadway
Suite 1710
New York, NY 10018
      By:    Ava R. Maynard, Esq., of Counsel

**Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP**
*Attorneys for the Defendant Powerscreen New York, Inc.*
330 Old Country Road
Suite 301
Mineola, NY 11501
      By:    Andrew E. Curto, Esq., of Counsel

**SPATT, District Judge.**

The Defendants in this patent infringement case, Powerscreen International Distribution Limited ("Powerscreen"), Terex Corporation ("Terex"), Powerscreen New York, Inc. ("PSNY"), and Emerald Equipment Systems, Inc. ("Emerald"), and the Plaintiff Metso Minerals, Inc. ("Metso"), have filed a number of post-trial motions. The Court now addresses four of the Plaintiff's motions: (1) a motion for treble damages, pursuant to 35 U.S.C. § 284; (2) a motion for pre- and post-judgment interest; (3) a motion for an accounting for supplemental damages, pursuant to 35 U.S.C. § 284; and (4) a motion for attorneys' fees and costs, pursuant to 35 U.S.C. § 285.

## I.      BACKGROUND

For purposes of this Decision and Order, the Court will state only the background information that is relevant to the issue of damages.

On March 26, 2006, the Plaintiff Metso initiated the present case against the Defendants. In the Complaint, Metso requested an award of damages with prejudgment interest; an injunction; a finding of willful infringement and treble damages; attorneys' fees and costs; and "such other and further relief as this Court or a jury may deem just and proper." (Docket Entry

"DE" No. 1.)  On March 29, 2010, in the Joint Pretrial Order, Metso specifically requested damages pursuant to 35 U.S.C. § 284, and stated that "this claim is exceptional, entitling Metso to its attorney fees under 35 U.S.C. § 285."  (DE No. 311.)

On October 8, 2010, shortly before the trial, Metso filed a "Statement Regarding Damages and Other Relief Sought" in accordance with this Court's individual rules, which bifurcated the requested damages award under 35 U.S.C. § 284.  (DE No. 403.)  In this statement, Metso specifically described the following categories of damages it was seeking: (1) monetary damages from the initial infringement through September 30, 2007; (2) trebling of monetary damages for willful infringement; (3) pre-judgment interest; (4) monetary damages for infringement after October 1, 2007; (5) post-judgment interest; (6) costs and expenses; (7) attorneys' fees.  This was the first time that the Plaintiff divided its damages claim into infringement before and after October 1, 2007—the date that fact discovery had ended.  The Defendants did not object to this specific aspect of Metso's claims for relief.

At the trial, Metso sought to demonstrate damages using a hypothetically negotiated royalty based on the factors outlined in Georgia–Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  The parties presented opposing damages experts.  Catherine Lawton, Metso's expert, concluded that Metso was entitled to $15,874,098.80, computed from a royalty base of $158,740,988, at a 10% royalty rate on the sale of 1,271 units from 2000 through September 30, 2007.  Christopher Vellturo, the Defendants' expert, estimated a total lump sum damages award of $431,000 from the same $158,740,988 royalty base with regard to the same infringing products.  Thus, Vellturo opined that Metso was entitled to approximately .27% of the total infringing sales.  In other words, his opinion was that "Metso would have accepted less than 1 percent of their revenues at a hypothetical negotiation."  (Trial Tr. at 4469:2-5.)

After a seven week trial, at the charging conference, the Court rejected Metso's request to charge the jury to only consider damages up until October 2007, the close of fact discovery. Thus, the damages question on the Jury's verdict Form read as follows:

> Please state the amount of monetary damages you award the Plaintiff Metso against the Defendants for the *total amount* of reasonable royalties for the use that the defendants have made of the Metso's '618 patent.

The jury awarded the Plaintiff Metso a verdict of 15.8 million. In addition, the jury found that the Defendants willfully infringed Metso's '618 patent.

The Court will now assess the Plaintiff's various pecuniary related motions.

## II.      MOTION FOR TREBLE DAMAGES

Consistent with Metso's Complaint (DE No. 1) and "Statement Regarding Damages and Other Relief Sought" (DE No. 403), Metso now requests an award of enhanced damages pursuant to 35 U.S.C. § 284.

Based on a review of the evidence in this case, the findings and conclusions made and set forth in this and separate contemporaneous Orders, and the totality of the circumstances, the Court concludes that a doubling of the damage award to Metso is appropriate in this case.

### A.  Relevant Law

Section 284 of the patent statute provides that damages may be enhanced up to three times the compensatory award. Such an enhancement is appropriate where "the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement was willful." Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992); see Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc., 34 F.3d 1048, 1056 (Fed. Cir. 1994). However, "a finding of willful infringement does not mandate that damages be enhanced, much less mandate treble damages." Read Corp., 970 F.2d at 826. Thus, the jury's finding that the Defendants willfully infringed

various claims of the '618 patent is a necessary but not automatic basis for enhancing the damages award in this case.

As explained by the Federal Circuit,

> the paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances.  The court must consider factors that render defendant's conduct more culpable, as well as factors that are mitigating or ameliorating.

Id. (citing cases); see i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 858–59 (Fed. Cir. 2010).

To assist the trial court in determining whether to enhance a damages award, the Read court listed a number of factors that the court was to consider.  These factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct.  Read Corp., at 826-27; see also Amsted Indus. Inc. v. Buckeye Steel Castings Co., 24 F.3d 178, 183 (Fed. Cir. 1994).

To enable appellate review, the district court "is obligated to explain the basis for the [enhanced] award, particularly where the maximum amount is imposed."  Read Corp., 970 F.2d at 828.

**B.  As to the Application of the Relevant Enhancement Factors**

As an initial matter, the Court rejects the Defendants' argument that the Court may not enhance the Plaintiff's damages because the predicate finding of willful infringement is erroneous as a matter of law.  As the Court addresses in a separate contemporaneous Order, the

Defendants have not established that there were erroneous jury instructions in this regard or that or that there was insufficient evidence from which to conclude that Defendants willfully infringed the '618 patent.

Therefore, the Court now sets forth the reasons for doubling the award, paralleling the factors set forth in Read Corporation v. Portec Inc.

1. **Whether There was Deliberate Copying and Whether the Defendants Had a Good Faith Belief of Patent Invalidity and/or Non-Infringement**

First, the Court finds that the Defendants willfully and deliberately copied the '618 patent and did not form a well-supported good faith belief of non-infringement. The Defendants admitted at the trial that they were aware of Metso's '618 patent during the 1998 design of the Defendants' infringing mobile screeners. (Trial Tr. at 2706.) The Defendants now contend that they put forward compelling evidence that demonstrated that they conducted a reasonable investigation of the scope of the '618 patent; undertook to design around it; and believed it had successfully done so. However, even if their belief of non-infringement was subjectively in good faith, this is negated by the Court's finding that the Defendants evinced ostrich-like, head-in-the-sand behavior. See Video Views, Inc. v. Studio 21, Ltd., 925 F.2d 1010, 1021 (Fed. Cir. 1991) ("[O]ne who undertakes a course of infringing conduct may neither sneer in the face of the copyright owner nor hide its head in the sand like an ostrich."); National Business Forms & Printing, Inc. v. Ford Motor Co., No. 08 Civ. 1906, 2009 WL 3570387, at *6 (S.D. Tex., Oct. 30, 2009) (an infringer "cannot be naive and be like ostriches and put their heads in the sand and ignore obvious facts" and then later claim entitlement to status as an "innocent infringer.").

The Defendants' opinion of non-infringement at the initial stages of the development of their infringing screeners was based upon Richard Byrne's cursory understanding of the patent claims. In fact, he had no knowledge of U.S. patent law and merely read the "abstract" of the

'618 patent.  Moreover, General Manager of Powerscreen Keiran Heagarty ultimately decided

two years later, "based on experience in the industry, based on [his] own personal judgment" that

the screener did not infringe.  (Trial Tr. at 3808.)  However, Heagarty was neither an engineer

nor a U.S. patent attorney, and did not even read the patent itself.  Most importantly, the

Defendants did not present any evidence to demonstrate that they obtained an exculpatory

opinion of counsel before commencing the infringing activity (Trial Tr. at 2707), even though

the Defendants  employed a large number of attorneys whom they could have consulted.  See

Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1581–82 (affirming a district

court's enhancement of damages, in part because willfulness was based on the fact that "[n]o

written opinion of counsel on either invalidity or noninfringement of any of the three . . . patents

was offered . . .").

Therefore, the first two factors, (1) whether the infringer deliberately copied the ideas or

design of another, and (2) whether the infringer, when he knew of the other's patent protection,

investigated the scope of the patent and formed a good-faith belief that it was invalid or that it

was not infringed, strongly support enhancing the damage award.  In the Court's view, they are

indicative of willful conduct and a lack of good faith on the part of the Defendants.

2. **Whether the Defendants Engaged in Litigation Misconduct**

"Litigation misconduct generally involves unethical or unprofessional conduct by a party

or his attorneys during the course of adjudicative proceedings."  Old Reliable Wholesale, Inc. v.

Cornell Corp., 635 F.3d 539, 549 (Fed. Cir. 2011).  "Typically, 'litigation misconduct' refers to

bringing vexatious or unjustified suits, discovery abuses, failure to obey orders of the court, or

acts that unnecessarily prolong litigation."  i4i Ltd. Partnership, 598 F.3d at 859.

The Plaintiff has pointed to 31 instances of what it characterizes as litigation misconduct on the part of the Defendants. This litany of occurrences appears to be an attempt to throw as much proverbial mud against the wall as possible with the hope that the Court will sift through to see what sticks. While the Plaintiff claims that the Defendants' litigation misconduct has been significant, pervasive, continuous, unrelenting and intentional with the clear goal of harassing Metso, its witnesses and its counsel, the Court is not convinced that is rises to that level.

There is no doubt that this case has been contentious and that there were several instances of not entirely commendable behavior throughout the long history of litigation between these parties. Many varieties of misconduct can support a district court's finding of enhanced damages. See Eon-Net LP v. Flagstar Bancorp, 653 F.3d 1314, 1324 (Fed. Cir. 2011). However, based upon this Court's review of the case law in the Federal Circuit, none of the instances in the present case rise to the level of litigation misconduct. Cf. Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 54 S. Ct. 146, 78 L. Ed. 293 (1933) (affirming dismissal of a patentee who had purchased the silence of another inventor whose testimony would have provided grounds to invalidate the patents); Eon-Net LP, 653 F.3d at 1324 (counsel destroyed relevant documents, failed to engage in the claim construction process in good faith, and displayed a "lack of regard for the judicial system" as well as a "cavalier attitude" towards the "patent litigation process as a whole"); Mathis v. Spears, 857 F.2d 749, 752 (Fed. Cir. 1988) (party "blatantly misled[ ] the PTO" and then "attempted to employ the courts as handmaidens to its iniquity").

No such litigation misconduct is present here. First, the few references to inadequate compliance with certain Local Civil Rules do not rise to the level of litigation misconduct. Similarly, the Defendants' submission to the Court of an unexecuted draft consulting agreement

between Mr. Rafferty and Metso was not undoubtedly meant to mislead the Court in believing that the agreement was in place so as to constitute litigation misconduct. Cf. ICU Med., Inc. v. Alaris Med. Sys., Inc., 558 F.3d 1368, 1380 (Fed. Cir. 2009) (party made "multiple, repeated misrepresentations" to the court); Aptix Corp. v. Quickturn Design Sys., Inc., 269 F.3d 1369, 1374-75 (Fed. Cir. 2001) (affirming the district court's award of attorney fees when the non-prevailing party engaged in the "extreme litigation misconduct" of falsifying evidence). Rather, the Defendants' counsel pointed out that the purpose of submitting the consulting agreement was "to attempt to show the Court that Metso has been attempting to shield Mr. Rafferty from us from day one." (Feb. 4, 2008 Hearing Tr. at 8.)

Third, the Court is cognizant of Judge Boyle's reluctance to issue an Amended Letter of Request for Examination Out of the Jurisdiction to the Defendants because their overly broad discovery requests in the U.K. caused delay, despite being warned that pre-trial discovery was limited there. However, the Court cannot say that the overly broad discovery requests, even under these circumstances, would rise to the level of litigation misconduct. Finally, the Defendants' counsel did act inappropriately during a deposition, calling the Plaintiff's counsel an "ass" on the record. However, he subsequently apologized to the Court for this misbehavior, and Judge Boyle recognized, as this Court does, that "people can get excited and tempers flare." While this Court unequivocally condemns this sort of unsportsmanlike behavior, "name calling" is not the type of litigation misconduct to warrant enhanced damages.

Most, if not all, of the examples cited by the Plaintiff can be construed merely as vigorous advocacy. Thus, this factor weighs against multiplying the damages award.

### 3. Whether the Defendants' Size and Financial Condition Warrant Trebling

Terex Corporation, one of the Defendants, is a multi-national conglomerate. Terex has itself stated in a press release issued post-trial that the sales of its infringing screeners in 2010 were approximately $10.4 million and that a patent infringement damages award of $15.8 million will not have a "material impact on Terex's consolidated business or overall operating results." While the Defendants assert that Terex specifically did not sell any of the accused screeners and that sales by Powerscreen, its indirect subsidiary, only account for a very small portion of Terex's consolidated revenues, this contention is without merit. The Court fully explains in a separate contemporaneous Order that Terex is equally liable for infringement because the evidence revealed circumstances justifying disregard of the status of the parent and the subsidiary as distinct, separate corporations. Therefore, it is clear that Terex's size and financial condition weigh in favor of the enhancement of damages in this case.

### 4. Whether the Case Was Close

As fully explained in a companion decision to this Decision and Order, the Court does not find that the Defendants presented a substantial question of noninfringement so as to make it a close case. However, the defenses that were raised had enough merit to at least present the question of noninfringement to the jury. This is precisely why the Court found at the summary judgment stage that there were genuine issues of material fact warranting a trial. Even after the close of all the evidence, the Court refused to grant the Plaintiff judgment as a matter of law on the issue of infringement. (Trial Tr. at 4729.)

Therefore, the Court finds that this factor does not weigh in favor of enhancing the damages award.

5. **The Duration of the Defendants' Misconduct**

The Defendants began their infringement in March 2000 and continued to do so until the effective date of the permanent injunction. Thus, the Defendants continued to sell the infringing screeners during the entire four and one-half **year** pretrial period, throughout the trial itself, and even post-verdict. Overall, the infringing activities took place over 11 years, which the Court finds to be a significant period of time.

The Defendants point out that the duration of infringing activity is a product of the Plaintiff's own dilatory conduct. It is true that the Plaintiff took over six years from the date of infringement to file the present action. However, there were several justifications for this delay, including communications with the Defendants regarding possible negotiation. Moreover, a delay in filing is no excuse for the infringement that continued to occur throughout the trial and even after the verdict, which in and of itself amounts to a significant period of time. The explanation that the Defendants are only filling orders for mobile screeners taken before the judgment is also not a compelling excuse.

Accordingly, the Court finds that this factor weighs in favor of the enhancement of damages.

6. **Whether the Defendants Took Any Remedial Action**

After the Plaintiff initially notified the Defendants of the infringement, the Defendants continued to sell the accused screeners and did not take any remedial action. While the Defendants may have believed they had designed around Metso's patent, as explained above, they did so in an ostrich-like manner. Moreover, although it would have potentially taken time and resources to do so, the Defendants had an alternative mobile screener design that was

noninfringing which it could have implemented.  Thus, this factor also weighs in favor of enhancement.

7.  **The Defendants' Motivation for Harm**

The Defendants' intentions with regard to infringement weigh against enhancement.  The Court finds that the Defendants' motivation to infringe was not malicious, but was due to competitive reasons.  Even the Plaintiff admits in its motion that "Powerscreen wanted to copy the design in the '618 patent and its commercial embodiment because they needed to do so to improve Powerscreen's market share in the mobile screener business."  (Pl. Mem. at 5.)

8.  **Whether the Defendants Attempted to Conceal Their Misconduct**

As for the final consideration, the Court finds that the Defendants made no attempts to conceal their misconduct, and that this factor weighs against a damages enhancement.  The accused screeners were prominently displayed at trade shows, press releases, manuals, and sales brochures.

C.  <u>**Whether an Enhancement to the Damages Award is Warranted**</u>

On one hand, the Court finds that the Defendants deliberately copied Metso's patent; intentionally precluded themselves from forming a good faith belief of noninfringement; are a multi-national conglomerate with considerable finances; engaged in infringing activities for a substantial period of time; and did not take any remedial action when notified of the infringement.  On the other hand, the Court finds that there was no egregious litigation misconduct; the Defendants presented legitimate defenses; the motivation for harm was not sinister; and the Defendants made no attempts to conceal their misconduct.

Accordingly, the Court finds that the Defendants' conduct was egregious in certain respects and entailed sufficient culpability to warrant a doubling of the damage award.  In

particular, the Defendant's willful infringement and ostrich-like behavior with regard to its conducting a scope of the Plaintiff's patent are factors that weigh in favor of enhancing the damage award. On the other hand, a full enhancement of treble damages is not appropriate in light of the mitigating factors, especially the lack of litigation misconduct. Thus, the $15,800,000 damage award to Metso is enhanced to double that amount, namely to the sum of $31,600,000.

It is worth noting that this conclusion means that Metso will be entitled to $31,600,000 for the time period of March 2000 through October 2007, although the Defendants' profits during that time total $32,862,311. (Trial Tr. at 1758:10-19.) In this regard, the Plaintiff contends that doubling the damages award will not sufficiently compensate them in light of the Defendants' significant profits. However, this argument is without merit. The statutory authority states only that the court may increase the *damages* up to three times the amount found or assessed. See 35 U.S.C. § 284. There is an "important distinction between 'damages' and 'profits,' and the relevance of this distinction to the 1946 amendment of the statute." Aero Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 505, 84 S. Ct. 1526, 2542, 12 L. Ed. 2d. 457 (1964). "The present statutory rule is that only 'damages' may be recovered. These have been defined by this Court as 'compensation for the pecuniary loss he (the patentee) has suffered from the infringement, without regard to the question whether the defendant has gained or lost by his unlawful acts." Id. (citing Coupe v. Royer, 155 U.S. 565, 582, 15 S. Ct. 199, 206, 39 L. Ed. 263 (1893)). This is precisely why the Federal Circuit has held that the treble damages provision of § 284 does not apply to the recovery of profits under § 289. See Braun Inc. v. Dynamics Corp. of America, 975 F.2d 815, 824, 24 U.S.P.Q.2d 1121, 1128 (Fed. Cir. 1992).

Overall, the Court finds that a doubling of the total damages award based upon a 10%
reasonable royalty rate along with a supplemental damages award and pre- and post- judgment
interest, is an adequate damages award to totally compensate Metso for the Defendants'
infringement.

### III.    MOTION FOR PRE- AND POST-JUDGMENT INTEREST

In addition to a motion for enhancing the damages award, the Plaintiff Metso moves (1)
for an award of pre-judgment interest on all pre-judgment damages, and (2) under 28 U.S.C.
§ 1961 for an award of post-judgment interest on all pre-judgment damages, including any
interest and any enhancement to the pre-judgment damages award, as well as on any post-
judgment damages.

### A.  Relevant Law

According to the Federal Circuit, prejudgment interest is designed to compensate for the
delay a patentee experiences in obtaining money he, she, or it would have received sooner if no
infringement occurred, while enhanced damages, on the other hand, are in the nature of
punishment.  Beatrice Foods Co. v. New England Printing and Lithographing Co., 923 F.2d
1576, 1580 (Fed. Cir. 1991) (quotations omitted, citing Paper Converting Machine Co. v.
Magna–Graphics Corp., 745 F.2d 11, 23 (Fed. Cir. 1984)).  As a result, pre-judgment interest can
only be applied to the primary or actual damage portion and not to the punitive or enhanced
portion of a damage award.  Id. (quotations omitted, citing Underwater Devices Inc. v.
Morrison–Knudsen Co., 717 F.2d 1380, 1389 (Fed. Cir. 1983)).

Pre-judgment interest is provided for by statute.  Section 284 states that damages for
patent infringement include "a reasonable royalty for the use made of the invention by the

infringer, *together with interest* and costs as fixed by the court." 35 U.S.C. § 284 (1994)

(emphasis added).

The Supreme Court has spoken directly on the issue of pre-judgment interest. In <u>General</u>

<u>Motors Corporation v. Devex Corporation</u>, 461 U.S. 648, 103 S. Ct. 2058, 76 L. Ed. 2d 211

(1983), the Court said:

> The standard governing the award of prejudgment interest under § 284 should be consistent with Congress' overriding purpose of affording patent owners complete compensation. In light of that purpose, we conclude that prejudgment interest should ordinarily be awarded. In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into as reasonable royalty agreement. . . .
>
> . . .
>
> We do not construe § 284 as requiring the award of prejudgment interest whenever infringement is found. That provision states that interest shall be "fixed by the court," and in our view it leaves the court some discretion in awarding prejudgment interest. For example, it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit. There may be other circumstances in which it may be appropriate not to award prejudgment interest. We need not delineate those circumstances in this case. We hold only that prejudgment interest should be awarded under § 284 absent some justification for withholding such an award.

<u>General Motors Corp. v. Devex Corp.</u>, 461 U.S. 648, 655-657, 103 S. Ct. 2058, 76 L. Ed.

2d 211 (1983) (footnotes omitted).

"Unlike post-judgment interest for which the interest rate is set by statute [discussed

infra] there is no mandatory interest rate and no standard rate for calculating an award of

prejudgment interest." <u>TiVo, Inc. v. Echostar Comm'ns Corp.</u>, No. 04 Civ. 1, 2006 U .S. Dist.

LEXIS 64291, 2006 WL 6830818, at *5 (E.D. Tex. Aug. 17, 2006). "The Federal Circuit has

given district courts great discretion when determining the applicable interest rate for an award

of prejudgment interest." <u>IPPV Enterprises, LLC v. EchoStar Commc'n Corp.</u>, No. 99 Civ. 577,

2003 U.S. Dist. LEXIS 3530, 2003 WL 723260, at *3 (D. Del. Feb. 27, 2003) (citation omitted);

see Uniroyal, Inc. v. Rudkin–Wiley Corp., 939 F.2d 1540, 1545 (Fed. Cir. 1991) (granting

district courts "wide latitude" in this regard).

Although courts have selected different rates, most often courts will award either the

prime rate or the U.S. Treasury rate. TiVo, Inc., 2006 U.S. Dist. LEXIS 64291, 2006 WL

6830818, at *6, (collecting cases). "Courts have recognized that the prime rate best

compensate[s] a patentee for lost revenues during the period of infringement because the prime

rate represents the cost of borrowing money, which is 'a better measure of the harm suffered as a

result of the loss of the use of money over time.'" IMX, Inc. v. LendingTree, LLC, 469 F. Supp.

2d 203, 227 (D. Del. 2007) (citing Mars, Inc. v. Conlux USA Corp., 818 F. Supp. 707, 720-21

(D. Del. 1993), aff'd, 16 F.3d 421 (Fed. Cir. 1993)).

With regard to post-judgment interest, the patent statute states that post-judgment interest

"shall be allowed on any money judgment in a civil case recovered in a district court. . . ." 28

U.S.C. § 1961. Section 1961 further provides that "[s]uch interest shall be calculated from the

date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity

Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the

calendar week preceding the date of the judgment." Id. The Supreme Court has stated that

"[t]he purpose of post-judgment interest is to compensate the successful plaintiff for being

deprived of compensation for the loss from the time between the ascertainment of the damage

and the payment by the defendant." Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S.

827, 835–36, 110 S. Ct. 1570, 108 L. Ed. 2d 842 (1990) (internal quotations and citation

omitted).

As with pre-judgment, the Federal Circuit defers to the relevant circuit for interpretation of the post-judgment statute. Transmatic Inc. v. Gulton Indus. Inc., 180 F.3d 1343, 1347–48 (Fed. Cir. 1999).

**B. As to Whether the Plaintiff's Request for Pre- and Post-Judgment Interest Should be Granted**

**1. Pre-Judgment**

The Court sees no justification to deny the Plaintiff pre-judgment interest under § 284. See General Motors Corp., 461 U.S. at 657. While the Defendants assert that the Plaintiff has unreasonably delayed in filing this action, the Court has previously rejected this contention in denying the defense of laches in a companion decision to this Decision and Order. Accordingly, the Court concludes that prejudgment interest is appropriate for both the jury's award of damages and any supplemental damages that will be awarded pre-judgment. Nickson Indus., Inc. v. Rol Mfg. Co., Ltd., 847 F.2d 795, 800 (Fed. Cir. 1988) (noting that prejudgment interest generally "should be awarded from the date of infringement to the date of judgment.") (citing General Motors Corp., 461 U.S. at 656).

Prejudgment interest shall be calculated using the Treasury Rate, compounded annually. See Bio-Rad Lab. Inc., v. Nicolet Instrument Corp., 807 F.2d 964, 969 (Fed. Cir. 1986) ("The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court."). This Court has previously noted that "[t]he . . . Treasury Bill rate is the cost of raising funds by the Government. Corporations are more likely to borrow at the prime rate. Thus, in the Court's view the prime rate is more reflective of [the patentee's] cost of funds than the . . . Treasury Rate." Stryker Corp. v. Intermedics Orthopedics, Inc., 891 F. Supp. 751, 833 (E.D.N.Y. 1995) (Spatt, J.). However, the patentee in Stryker pointed to trial testimony as to why the prime rate was warranted. Id. ("According to the

plaintiff, use of the prime rate is appropriate because that rate (i) more accurately reflects the costs of the plaintiff's borrowing during the time of infringement than the 3 month Treasury Bill rate, and (ii) compares closely with the plaintiff's rate of returns on investment.").

In the present case, the Plaintiff has offered no factual or evidentiary support as to why this higher rate should be awarded.  See Laitram Corp. v. NEC Corp., 115 F.3d 947, 955 (Fed. Cir. 1997) ("The district court found that there was no evidence that [the patentee] borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of [the] infringement. . . . We hold therefore that there was no abuse of discretion in the district court's choice of prejudgment interest.").  Therefore, the Court sees no reason to doubt that the Treasury Bill rate will fully compensate Metso in this case.  See Itron, Inc. v. Benghiat, No. 99 Civ. 501, 2003 U.S. Dist. Lexis 15039, at *54 (D. Minn. Aug. 29, 2003) (Although Benghiat's proposal for using the short-term prime rate would certainly give him a greater return, Benghiat has presented no evidence that the Treasury Bill rate will not sufficiently compensate him.").

However, the Court does find that prejudgment interest should be compounded, "because the incremental profits [the patentee] would have earned on the lost sales over the infringement period would have been invested in a manner resulting in yearly accrued growth.  In addition, although not dispositive in and of itself of the issue of compounding interest, the Court notes that [the Defendants'] infringement was willful."  Stryker Corp., 891 F. Supp. at 833.

The Plaintiff contends that the end date for applying pre-judgment interest has not yet taken place because no meaningful "judgment" has yet been entered.  See Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 98, 104 (2d Cir. 2004) ("The demarcation between the [pre-judgment and post-judgment time] period occurs when a meaningful judgment is entered. . . .

[When] a judgment . . . correctly determines liability, but errs in applying the appropriate method to calculate damages . . . such a judgment was not ascertained in a meaningful way for the purposes of post-judgment interest.").  In support of this argument, the Plaintiff points out that the Court has not yet awarded Metso any attorneys' fees and has not awarded additional supplemental damages for the infringing period after September 2007 onward.  The Court disagrees.  A Judgment on the jury verdict rendered on December 6, 2010 was entered by this Court on March 3, 2011.  At that time, the Plaintiff was awarded money damages in the amount of $15,800,000, which was supported by the evidence.  See Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 836, 110 S. Ct. 1570, 108 L. Ed. 2d 842 (1990).  While this amount of damages only reflected infringing sales that took place before October 2007, the Plaintiff is entirely responsible for that outcome.  Moreover, this judgment expressly included the jury's advisory verdicts with regard to laches and inequitable conduct.  This determination of liability and award of damages undeniably demarcated between 35 U.S.C. § 284 and 28 U.S.C. § 1961.  Therefore, pre-judgment interest will be applied from the date infringement began for each infringing model up until March 3, 2011.

Accordingly, after reviewing the parties' submissions, the Court finds that pre-judgment interest should be awarded to Metso according to the following method.  Interest shall be awarded for infringement during the period beginning March 9, 2000, and running through March 3, 2011.  Interest shall be calculated using the average U.S. Treasury Bill rate during that same period and shall be compounded annually based upon the actual number of infringing sales in each year.  The number of sales shall be based upon the sales figures submitted by the parties at trial, plus the figures to be determined in any accounting that the Court will order for the period from October 2007 through March 3, 2011.  (See infra.)

The Court will order the parties to meet and confer to jointly arrive at a calculation of pre-judgment interest according to the formula prescribed above. The Court will then amend its judgment to encompass the proper amount of interest.

**2. Post -Judgment**

The Court finds, in accordance with relevant statutory authority, that the Plaintiff should be awarded post-judgment interest under 28 U.S.C. § 1961 for any money judgment in this case. This includes the patent infringement damages awarded by the jury, any supplemental patent infringement damages awarded, as well as the-prejudgment interest on both the jury's damages award and the supplemental damages award.

**IV.     MOTION FOR AN ACCOUNTING FOR SUPPLEMENTAL DAMAGES**

**A.  <u>The Plaintiff's Motion for an Accounting For Supplemental Damages and the Defendants' Objections</u>**

On March 14, 2011, the Plaintiff Metso moved pursuant to 35 U.S.C. § 284 for an accounting of supplemental damages and for an award of these supplemental damages for the Defendants' infringing sales that were not considered by the jury and were not included in the jury's damages award.  The Plaintiff is seeking to recover damages for the period from October 2007, the close of fact discovery, through July 25, 2011, the effective date of the permanent injunction.  In particular, Metso moves for: (1) an accounting to determine damages caused by the Defendants' infringement during this time period; (2) an award of the supplemental damages; and (3) any enhancement of a supplemental damages award in accordance with Metso's other motions for trebling and pre- and post-judgment interest.

The Plaintiff claims that proof of infringement damages at the trial was delineated from the initial infringement in March 2000 until October 2007, in accordance with United States Magistrate Judge Thomas Boyle's discovery deadlines.  This was the same relevant time period

that formed the basis for the opinion of Catharine Lawton, the Plaintiff's damages expert at the trial. Thus, the Plaintiff alleges that the jury's damages award was based upon evidence of damages presented at trial, which did not include any infringing activity which took place from October 2007 onward.

The Plaintiff maintains that a motion for an accounting of supplemental damages is standard practice in patent infringement cases to ensure that a plaintiff is fully compensated for all damages suffered as a result of a defendant's patent infringement. In addition, the Plaintiff asserts that these damages cannot be waived and that the Court is mandated to award these damages consistent with binding statutory, Federal Circuit, and Supreme Court authority.

On the other hand, the Defendants contend that the Plaintiff Metso is not entitled to supplemental damages, either from the date fact discovery closed through the verdict or from the date of the verdict through the permanent injunction. The Defendants raise three alternative grounds for why supplemental damages are not warranted and thereby why this Court should not order that the Defendants produce a supplemental accounting.

First, the Defendants argue that an accounting cannot be awarded because of a failure of proof on the issue of damages at the trial. Essentially, the Defendants argue that Metso is now improperly attempting to remedy its failure of proof at the trial as to post-October 2007 sales. Their contention is that Metso bears the burden of proving damages for its patent infringement claim, and Metso could have presented evidence through its damages expert of reasoned estimates of Powerscreen's post-October 2007 sales from publically available UCC filings or from extrapolations of data Powerscreen had already produced. In addition, the Defendants assert that Metso could have requested the Court to take supplemental discovery on this point but did not do so.

Second, the Defendants allege that Metso waived any right to an accounting by excluding a request for such relief in the Complaint or the Pretrial Order.  In particular, the Defendants assert that because any issue of an accounting was omitted from the Pretrial Order, it is waived.

Third, the Defendants claim that Metso is untimely and improperly requesting an accounting and that this violates the Seventh Amendment of the Constitution.  Specifically, the Defendants contend that Metso's request for an accounting invites the Court to reexamine the jury's verdict.

## B.  Relevant Law

Section 284 states that "the court *shall* award the claimant damages adequate to compensate for the infringement" and "[w]hen damages are not found by a jury, the court *shall* assess them."  35 U.S.C. § 284 (emphases added).  The Court applies Second Circuit law to procedural issues and Federal Circuit law to substantive and procedural issues "pertaining to patent law."  Aero Prods. Int'l, Inc. v. Intex Recreation Corp., 466 F.3d 1000, 1016 (Fed. Cir. 2006); see also Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d 1378, 1381 (Fed. Cir. 2002) (noting that Federal Circuit law controls "the distinctive characteristics of patent damages law").

The Federal Circuit has explicitly held that a patent holder is entitled to supplemental damages for infringing sales that the jury did not consider and that precede entry of a permanent injunction.  See Finjan, Inc. v. Secure Computing Corp., 626 F.3d 1197, 1212 (Fed. Cir. 2010) ("we have noted that a patentee is 'not fully compensated' if 'the damages award did not include future lost sales.'" (quoting Carborundum Co. v. Molten Metal Equip. Innovations, Inc., 72 F.3d 872, 881 (Fed. Cir. 1995)); see also Fresenius USA, Inc. v. Baxter Int'l, Inc., 582 F.3d 1288, 1303 (Fed. Cir. 2009) ("A damages award for pre-verdict sales of the infringing product does not fully compensate the patentee because it fails to account for post-verdict sales of repair parts.").

**C.** **As to Whether the Plaintiff's Request for a Supplemental Accounting Should be Granted**

    **1.** **Post-Verdict**

Courts routinely grant motions for a further accounting where the jury did not consider certain periods of infringing activity *post*-verdict. See, e.g., Corp. v. Acres Gaming, Inc., Nos. 97 Civ. 1383 and 98 Civ. 1462, 2001 U.S. Dist. LEXIS 23416, at *52–54, (D. Nev. Aug. 1, 2001) (noting that "accountings appear to be standard practice," based on authorities in which accountings were granted for post-verdict periods not considered by juries); Stryker v. Davol, Inc., 75 F. Supp. 2d 746, 747 (W.D. Mich. 1999) (granting a motion for an accounting of infringing activities during the period after the jury's verdict up until the granting of the patentee's motion for a permanent injunction); Maxwell v. J. Baker, Inc., 879 F. Supp. 1007, 1011 (D. Minn. 1995), rev'd on other grounds, 86 F.3d 1098 (Fed. Cir. 1996) (finding that a plaintiff was entitled to an accounting for sales during the post-verdict period not considered by the jury); Mikohn Gaming Whelan Assoc., Inc. v. Jaslow Dental Lab., Inc., 609 F. Supp. 1325, 1327 (E.D. Penn. 1985) ("Plaintiff's motion seeks a further accounting for the . . . licenses sold after the last day of the trial . . . . The plaintiff is entitled to such an accounting."). The Court sees no reason to depart from this practice. In fact, the Defendants do not state a persuasive justification to deny that Metso is entitled to supplemental damages from the time of the verdict through the entry of the permanent injunction.

Therefore, the Defendants are directed to provide an accounting to the Plaintiff from the date of the jury verdict, December 6, 2010, through the effective date of the permanent injunction, July 25, 2011.

The final determination in this regard is what a reasonable royalty rate should be for this approximate seven month period. Neither party has put forward a recommendation. The

Plaintiff only points out that a reasonable royalty rate to be applied to the Defendants' post-verdict sales is not necessarily the same as the reasonable royalty that was applied to the Defendants' pre-verdict sales. "There is a fundamental difference . . . between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement." <u>Amado v. Microsoft Corp.</u>, 517 F.3d 1353, 1361 (Fed. Cir. 2008). "Prior to judgment, liability for infringement, as well as the validity of the patent, is uncertain, and damages are determined in the context of that uncertainty. Once a judgment of validity and infringement has been entered, however, the calculus is markedly different because different economic factors are involved." <u>Id.</u> The Federal Circuit has stated that various factors to take into account to determine a post-verdict reasonable royalty rate include "the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability—for example, the infringer's likelihood of success on appeal . . ." <u>Id.</u>

The Plaintiff has requested the Court to set a briefing schedule for the parties to propose a reasonable royalty rate for the Defendants' post-verdict sales of infringing screeners from the date of the jury verdict until the entry date of the permanent injunction. The Court grants this request. Once the Plaintiff obtains the relevant sales information, it is directed to provide this Court with a total damages request and a memorandum of law, not to exceed more than 5 pages, proposing a reasonable royalty rate for the Defendants' post-verdict sales of the infringing screeners. Within 14 days, the Defendants are directed to respond with their proposal for a reasonable royalty rate for the sale of the post-verdict screeners at issue, also not to exceed more than 5 pages. No reply will be accepted.

## 2. Pre-Verdict

The more complicated issue presented by the current motion is whether Metso is entitled to a supplemental accounting and damages award *pre*-verdict — from October 1, 2007 through December 6, 2010. The Defendants argue that the Plaintiff has waived this accounting and that there was no evidence presented at the trial to justify such an award.

This issue was previously considered by this Court in the context of the charging conference. At that time, the Defendants opposed limiting the jury's damages verdict to October 2007. The Court acknowledged that the Plaintiff had not explicitly requested restricting damages at the trial to the close of fact discovery until the charging conference. The Court, without the benefit of the parties' briefings or independent research of the relevant law, ruled that there would be no time limitation on the damages considered by the jury. The Court stated:

> Plaintiff is responsible for the fact that there was no discovery after October 2007.
>
> If plaintiff wanted to get additional discovery after October 2007, they could have appealed to me. They did not. They are responsible for any problems that occurred because they did not have discovery, like every other case.
>
> This case is no different. The plaintiff has the obligation to prove its damages, and can't rely on accountings later on, whatever that may be. *And I'm not making any comment, one way or the other, about that*. The important thing is the plaintiff consented to the termination of the discovery by not appealing to me, to say, I need more time.
>
> . . .
>
> If plaintiff's expert decided not to give an opinion beyond October 2007, so be it.
>
> But I am not helping in that regard. The damages are what she testified to, period. It's too late to do anything else right now. There could have been a request to me before the trial started.
>
> Judge, I need additional discovery here. Not a word was mentioned to me about that.

You have waived it, Mr. Stuart, and this jury's going to decide damages
not up until October 1, 2007, damages, period, and you have an exception.

(Trial Tr. at 5282:14-5283:17) (emphasis added).

After a careful review of the parties' post-trial submissions and the applicable case law, the Court now comments on what it previously declined to comment about: whether the Plaintiff may now rely on a supplemental accounting to cover an additional period of infringement. Although the Court previously commented on this subject, the Court now finds that the Plaintiff did not waive its right to a pre-verdict supplemental accounting and damages award.

As the Defendants point out, and as the Court considered when it initially found a waiver, the Plaintiff did fail in a number of respects to do everything in its power to present comprehensive evidence of damages at the trial. For example, although fact discovery was ordered by Judge Boyle to be completed by October 2007, the Plaintiff could have appealed to this Court for an order compelling discovery specifically related to sales information in order to continue ascertaining damages. As another example, the Plaintiff did not need to agree on November 17, 2008 to not supplement its expert testimony report, even though the Plaintiff knew its expert based its opinion on a time frame that ended a year prior and that the accused screeners were continuing to be sold. As a final example, the Plaintiff's expert Catherine Lawton could have testified to damages occurring after October 2007, based on either hypothetical extrapolations or UCC information that was publicly available. See, e.g., Joyal Prods. v. Johnson Electric N. Am., Inc. et al., No. 04 Civ. 5172, 2009 U.S. Dist Lexis 15531, at *40 (D. N.J. Feb. 27, 2009) (approving an accounting for a time period where the patentee's expert witness had to estimate the infringer's sales based upon forecasts provided in discovery).

However, the record does not reflect that the Plaintiff took any formal steps to obtain additional materials relating to the Defendants' most recent sales. While acknowledging that infringing activity continued, the Plaintiff's expert nevertheless based her damages theory on a time frame which ended with the close of fact discovery in October 2007. For more than three and one-half years, the Plaintiff merely relied on its intention to file a motion for a supplemental accounting post-trial in order to take account of any continuing infringement from the end of fact discovery. The Court has not found a case in which a patentee has filed for a supplemental accounting to capture such a significant period of time.

Overall, the Court does not condone the Plaintiff's approach to the recovery of damages in the present case. However, the Court also finds the Defendants behavior to be questionable. It cannot be that the Defendants sat idly by for over three years with the assumption that they could continue to sell the accused screeners and not be potentially liable for those sales if they were later found to be infringing. The Defendants must have recognized this potential avenue for relief. Neither party acted reasonably, but this does not entitle the Defendants to the windfall that would ensue if this Court were to exclude damages for this lengthy period of time.

Other district courts have awarded supplemental damages which, in part, include damages for sales after those considered by the jury but pre-verdict. See, e.g., ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc., No. 10 Civ. 248, 2011 WL 4899922, at *3 (E.D. Va. Oct. 14, 2011) (awarding supplemental damages for the approximate five month period pre-dating the trial and jury verdict); Semiconductor, Inc. v. Rambus, Inc., 609 F. Supp. 2d 951, 959–65, 987 (N.D. Cal. 2009) (awarding pre-verdict supplemental damages after the "the last date for which [the patentee] was able to present evidence of [infringing] sales to the jury"); Aero Products Int'l, Inc., et al. v. Intex Recreation Corp., No. 02 Civ. 2590, 2005 WL 1498667,

at *2, *11 (N.D. Ill. June 9, 2005) (awarding supplemental damages for the approximate one month period prior to start of the trial). While these cases have certain distinguishable facts, they stand for the proposition that this Court has the authority to award pre-verdict supplemental damages in the present case.

The Defendants assert that the Court should not award an accounting because there was a failure of proof on the issue of damages at trial. However, the present case is not similar to that cited by the Defendants for that proposition, E.G.L. Gem Lab Ltd., 90 F. Supp. 2d 277, 307-09 (S.D.N.Y. 2000). First and foremost, E.G.L. was a trademark case. The Honorable Lewis A. Kaplan recognized this distinction explicitly when he stated that "[t]he considerations in the trademark realm are quite different. Trademarks, unlike patents, do not confer legally protected monopolies on useful advances in science and technology in order to provide incentives for inventors." Id. at 292. Moreover, in the E.G.L. case, Judge Kaplan recognized that there was a complete failure of proof on the issue of damages, for which both sides bore some responsibility. The plaintiff in that case did not put in any damage proof and the plaintiff's counsel in his closing argument made no reference at all to the subject of damages. E.G.L. is simply not analogous to the present case, in which the Plaintiff's expert witness testified extensively as to damages, albeit limited to a specified time period.

The Defendants alternatively argue that Metso has waived any award of supplemental damages by failing to raise it in both its Complaint and the Joint Pretrial Order. On the other hand, the Plaintiff argues that this portion of its damages is not possible of being waived. Not so. While Section 284 states that "the court *shall* award the claimant damages adequate to compensate for infringement," meaning "full compensation for any damages the patent owner suffered as a result of the infringement," Grain Processing Corp. v. Am. Maize-Products Co.,

185 F.3d 1341, 1349 (Fed. Cir. 1999), courts have found waivers to be warranted under certain circumstances.  See, e.g., Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., No. 04 Civ. 1371, 2008 U.S. Dist LEXIS 100533, at *3–4 (D. Del. Dec. 12, 2008); Lucent Technologies, Inc. v. Newbridge Networks Corp., 168 F. Supp. 2d 269, 271–73 (D. Del. 2001); Braintree Laboratories, Inc. v. Nephro-Tech, Inc., 81 F. Supp. 2d 1122, 1140 (D. Kan. 2000) ("The court considers a request for an accounting to be a significant claim for relief and not a mere clerical exercise which would routinely and readily follow from a verdict in plaintiff's favor.  Failure to so preserve the request for an accounting acts as a waiver and closes the door on further inquiry.").

However, the majority of courts to have faced this issue, including the Federal Circuit, have found a waiver unjustified under circumstances similar to the facts in the present case.  See Finjan, Inc. v. Secure Computing Corp., 626 F.3d 1197 (Fed. Cir. 2010) (finding that the plaintiff did not waive its right to supplemental damages because its amended complaint sought only "such damages as it shall prove at trial" and "such further and other relief as the Court and/or jury may deem proper and just"); TiVo, Inc., 2006 U.S. Dist. LEXIS 64291, at *6, 2006 WL 6830818 (E.D. Tex. Aug. 17, 2006) ("Failure to include a separate request for "supplemental" damages does not result in waiver because such damages are a component of any request for compensatory damages."); Mikohn Gaming, 2001 U.S. Dist. LEXIS 23416 at *54–56 (D. Nev. Aug. 1, 2001) (finding that the patentee's failure to separately request an "accounting" in the pre-trial order was "of no consequence" and did not waive an award of supplemental reasonable royalty damages).  Here, the Plaintiff's Complaint sought damages and "such other and further relief as this Court or a jury may deem just and proper."  (DE No. 1.)  In addition, in Metso's "Statement Regarding Damages and Other Relief Sought" filed prior to the trial, the Plaintiff

specifically sought an award of damages under Section 284 for the Defendants' infringing activities through the close of fact discovery and thereafter "in an amount to be determined after post-trial submissions on the issue." (DE No. 403.)

Therefore, the Court finds that the Plaintiff has not waived its right to a supplemental accounting for pre-verdict infringing sales.

However, the issue remains that the Court's instruction to the jury did not specifically delineate the damages period to terminate in October 2007. Instead, the Court instructed the jury to award all the damages that could be proven with reasonable certainty. Thus, the Defendants argue that the jury here already determined the damages attributable to the period for which Metso now seeks an accounting. In response, the Plaintiff argues that it is clear that the jury only awarded damages for the period of time up until October 2007 and did not include damages for any other time period, notwithstanding the Court's instruction. The Court agrees.

At the trial, the damage experts for both Metso and the Defendant agreed that the total infringing sales between March 9, 2000 and October 2007 amounted to $158, 740,988. Lawton, the Plaintiff's expert, opined that Metso was entitled to $15,874,098.80, based upon a 10% royalty rate. It was made clear in Lawton's testimony that her calculation did not encompass sales for any period after October 2007. The jury subsequently awarded Metso $15,800,000. This ultimate award of damages is a rounded number of the exact figure advanced by the Plaintiff's damages expert. Thus, the jury's verdict mirrored Lawton's calculation. Given Lawton's detailed testimony on damages from 2000 through 2007, and the clear exclusion of testimony regarding any subsequent period, the Court concludes that the jury was not presented with sufficient evidence from which to determine damages for infringement after the close of

fact discovery.  Therefore, the verdict did not reflect damages for that time period.  <u>See Itron,</u>

<u>Inc.</u>, 2003 U.S. Dist. Lexis 15039, at *49.

In addition, because it is clear that the jury's verdict was based only upon the time period

up to October 2007, an award of supplemental damages would not implicate any constitutional

considerations concerning reexamination of the jury's verdict, as the Defendants have contended.

Accordingly, irrespective of the Court's earlier statements at the charge conference,

because the time period subsequent to September 2007 was not considered by the jury, the Court

may now grant an accounting for October 2007 up to the date of the verdict.  <u>See Mikohn</u>

<u>Gaming Corp.</u>, 2001 U.S. Dist. LEXIS 23416 at *52–54; <u>Maxwell v. J. Baker, Inc.</u>, 879 F. Supp.

1007, 1011 (D. Minn. 1995), rev'd on other grounds, 86 F.3d 1098 (Fed. Cir. 1996) (finding that

plaintiff was entitled to accounting for sales during period not considered by the jury).  As

requested by the Plaintiff, the Court will utilize a 10% royalty rate for the total sales of the

Defendants' infringing screeners during this period of time.  Although the jury did not expressly

conclude that this was the royalty rate applied in its damages award, it is clear that this was the

basis for their award, as explained above.

In sum, the Defendants are directed to promptly provide the Plaintiff with documents that

are sufficient to identify the exact number of infringing screeners sold from October 1, 2007

through July 25, 2011 to any distributor, entity or person in the United States.  This information

should include the purchase order number, date of sale, screener model sold, seller, purchaser,

and selling price of each screener.  In addition, the Defendants shall provide an affidavit attesting

to the accuracy and completeness of the information provided.  This amount of damages will

then be entitled to enhancement and interest, as set forth above.

<h1 style="text-align:center">V.     MOTION FOR ATTORNEYS' FEES AND COSTS</h1>

## A.  <u>The Plaintiff's Fee Application and the Defendants' Objections</u>

Finally, the Court will now address the Plaintiff's motion for an award of attorneys' fees and costs pursuant to 35 U.S.C. § 285.  Initially, the Plaintiff sought a total fee award in the amount of $7,864,985.03, which includes $2,801,277.28 in litigation costs, expenses, and disbursements.  Subsequently, the Plaintiff has filed a supplemental motion seeking an additional $649,769.00 in attorneys' fees.  The Plaintiff bases its request on several grounds: (1) that Metso was the only prevailing party and succeeded on all of its claims; (2) that the Defendants' infringement was found to be willful; and (3) that the Defendants engaged in litigation misconduct, unprofessional behavior, and vexatious litigation tactics.  On the other hand, the Defendants contend that the Court may not award the Plaintiff attorneys' fees in the first instance because the predicate finding of willful infringement was erroneous as a matter of law.  In addition, the Defendants point out that the Plaintiff cannot show any litigation misconduct warranting a finding that this case is exceptional and that the circumstances here militate against an exceptional case finding or an award of reasonable attorneys' fees and costs to the Plaintiff.

## B.  <u>The Relevant Law For Awarding Attorneys' Fees in a Patent Case</u>

Section 285 of the Patent Statute authorizes the Court "in exceptional cases" to award "reasonable attorney fees" to the prevailing party.  Whether a case is "exceptional" is a determination of fact, and the awarding of attorneys' fees in such cases is left to the court's discretion.  35 U.S.C. § 285; <u>Molins PLC v. Textron, Inc.</u>, 48 F.3d 1172, 1186 (Fed. Cir. 1995); <u>Amsted Indus.</u>, 24 F.3d at 184.  "Exceptional circumstances justifying an award of fees . . . include unfairness, bad faith, inequitable conduct, vexatious or unjustified litigation, and

misconduct during litigation. This list is not exhaustive, and the existence of any one circumstance may make a case exceptional." Molins, 48 F.3d at 1191.

An express finding of willful infringement may be a sufficient basis for classifying a case as exceptional. Id. (citing Modine Mfg. Co. v. Allen Group Inc., 917 F.2d 538, 543 (Fed. Cir. 1990)). However, even where willful infringement is proven, a case may, or may not, be deemed "exceptional" under Section 285. Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1340 (Fed. Cir. 2004) (explaining cases); Lightwave Techs., Inc. v. Corning Glass Works, No. 86 Civ. 759, 1991 U.S. Dist. LEXIS 543, at *39 (S.D.N.Y. Jan. 18, 1991) ("Indeed, the purpose of an increase in damages is different from that of an award of attorney fees: whereas an increase in damages based on willful infringement is based on the need to compensate the patentee and to deter and punish infringers, an award of attorneys' fees is based more appropriately on the conduct of the parties during the litigation."). "Attorney fees are not to be routinely assessed against a losing party in litigation in order to avoid penalizing a party for merely defending or prosecuting a lawsuit, and are awarded to avoid a gross injustice." Revlon, Inc. v. Carson Prods. Co., 803 F.2d 676, 679 (Fed. Cir. 1986) (internal citations omitted).

There is a two-step inquiry that the Court must conduct. First, "[t]he district court must determine whether the case is 'exceptional'; if it is, then it is within the court's discretion to award attorneys' fees to the prevailing party." J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc., 822 F.2d 1047, 1050 (Fed. Cir. 1987); see Interspiro USA Inc. v. Figgie Intern. Inc., 18 F.3d 927 (Fed. Cir. 1994). The moving party bears the burden to demonstrate by clear and convincing evidence that a case is exceptional. Cambridge Prods., Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1050 (Fed. Cir. 1992). "However, even in cases where there is clear and convincing evidence of exceptional conduct under Section 285, the award of attorneys' fees is not

mandatory." <u>Capital Bridge Co., Ltd. V. IVL Technologies Ltd.</u>, No. 04 Civ. 4002, 2007 WL 3168327, at *5 (S.D.N.Y. Oct. 26, 2007); <u>see S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.</u>, 781 F.2d 198, 201 (Fed. Cir. 1986) ("Even an exceptional case does not require in all circumstances the award of attorney fees."); <u>Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.</u>, 393 F.3d 1378, 1382 (Fed. Cir. 2005) ("Even for an exceptional case, the decision to award attorney fees and the amount thereof are within the district court's sound discretion."). There are a number of factors a court can consider to determine whether attorneys' fees are appropriate, including the "closeness of the case, tactics of counsel, the conduct of the parties and any other factors that may contribute to a fairer allocation of the burdens of litigation as between winner and loser." <u>J.P. Stevens Co.</u>, 822 F.2d at 1051.

## C. <u>As to Whether This Case is "Exceptional" Warranting Attorneys' Fees</u>

The Court finds that Metso has failed to establish by clear and convincing evidence that this case is "exceptional." Therefore, Metso is not entitled to attorneys' fees. The present action was indeed hard-fought and rigorously contesded, necessitating discovery disputes, a lengthy trial, and voluminous filings with this Court. However, a review of the record reveals that there is simply no basis to find that the Defendants acted in bad faith, committed inequitable conduct, or participated in vexatious activity. To the extent that Metso's theory is that the Defendants should be liable for attorneys' fees because they ultimately lost the case at trial, the Court has found that there were reasonable bases for Defendants' arguments, including the defenses of inequitable conduct, obviousness, and non-infringement. "An award of attorney fees to a prevailing party under Section 285 is unique to patent law, and must be predicated upon something beyond the fact that the patent holder has prevailed. In other words, the case at hand must be truly unusual to justify an award of attorney fees." <u>Cornell Univ. v. Hewlett-Packard</u>

<u>Co.</u>, No. 01 Civ. 1974, 2009 WL 1405208, at *1 (N.D.N.Y. Mar. 15, 2009) (Radar, J., Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation).

While the jury has found that the infringing conduct was willful, there are no other factors that would mark this case as exceptional, such as offensive litigation tactics, including vexatious or unjustified litigation or frivolous filings, being employed; or that the losing party litigated in bad faith.  <u>See Superior Fireplace Co. v. Majestic Prods. Co.</u>, 270 F.3d 1358, 1377-78 (Fed. Cir. 2001); <u>Brasseler U.S.A. I, L.P. v. Stryker Sales Corp.</u>, 267 F.3d 1370, 1380 (Fed. Cir. 2001); <u>Multiform Desiccants, Inc. v. Medzam, Ltd.</u>, 133 F.3d 1473, 1481-82 (Fed. Cir. 1998).

After reviewing the entire record, including discovery over a four and one-half year period, the Court finds that the Defendants did employ some marginally vexatious litigation tactics.  However, as both parties recognize, this case has been high stakes from its inception. Litigation by its nature is adversarial and often zealous advocacy can cross the fine line between fervor and offense.  However, even taking all of the Plaintiff's allegations of misconduct as true for purposes of this motion, Defendants' counsel did not act beyond the bounds of civility. There was nothing "truly unusual" about the Defendants' conduct so as to characterize this case as "exceptional".  However, even if this case could be considered exceptional, the Court still exercises its discretion to deny the Plaintiff's request for attorneys' fees.  <u>See McNeil-PPC, Inc. v. Perrigo Co.</u>, 516 F. Supp. 2d 238, 260 (S.D.N.Y. 2007) ("However, even if Plaintiffs had committed inequitable conduct, the Court would still decline to award fees.").

As such, Metso's motion for attorneys' fees under 35 U.S.C. § 285 is denied.

**D.  <u>As to Whether Costs Should Be Awarded</u>**

Although the award of costs in a patent infringement case is not expressly stated in Section 285, the Federal Circuit has held that an award of expenses under this section is

nevertheless appropriate.  Central Soya Co., Inc. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578

(Fed. Cir. 1983) ("The purpose of § 285 is, in a proper case and in the discretion of the trial

judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense

of the suit. . . . We interpret attorney fees to include those sums that the prevailing party incurs in

the preparation for and performance of legal services related to the suit."); see Mathis v. Spears,

857 F.2d 749, 759 (Fed.Cir.1988) (allowing for the award of expenses under § 285).

Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party

unless the court otherwise directs."  Fed. R. Civ. P. 54(d).  "Costs" are defined by statute as

follows:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part
> of the stenographic transcript necessarily obtained for use in the case; (3) Fees
> and disbursements for printing and witnesses; (4) Fees for exemplification and
> copies of papers necessarily obtained for use in the case; (5) Docket fees under
> section 1923 of this title; (6) Compensation of court appointed experts,
> compensation of interpreters, and salaries, fees, expenses, and costs of special
> interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  Local Rule 54.1(c) has expanded upon § 1920, identifying ten

categories of items and their respective taxability: (1) transcripts; (2) depositions; (3) witness

fees, mileage, and subsistence; (4) interpreting costs; (5) exemplifications and copies of papers;

(6) maps, charts, models, photographs, and summaries; (7) attorney fees and related costs; (8)

fees of masters, receivers, commissioners, and court appointed experts; (9) costs for title

searches; and (10) docket and miscellaneous fees.  Local Civ. R. 54.1(c).

The Supreme Court has cautioned that "the discretion given district judges [by Rule

54(d)] to tax costs should be sparingly exercised with reference to expenses not specifically

allowed by statute."  Farmer v. Arabian American Oil Co., 379 U.S. 227, 235, 85 S. Ct. 411, 13

L.Ed.2d 248 (1964).

Therefore, this Court has the authority to award costs to the prevailing party, the Plaintiff, in the current lawsuit.  See Kohus v. Toys R US, Inc., 282 F.3d 1355, 1357 (Fed. Cir. 2002). Moreover, the award of costs may be appropriate even when an award of attorneys' fees is not granted.  See iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1380 (Fed. Cir. 2011) (vacating an award of attorneys' fees but allowing the award of costs and expense for copying, court reporting, transcripts, travel, research, obtaining documents and pleadings, and electronic document handling under § 285); Cf. Advanced Magnetic Closures, Inc. v. Rome Fastener Corp., 607 F.3d 817, 834 (Fed. Cir. 2010) (awarding attorneys' fees under § 285 but ordering that each party should bear its own costs).  "The burden is on the prevailing party to establish to the court's satisfaction that the taxation of costs is justified."  John and Kathryn G v. Board of Ed. of Mt. Vernon Public Schools, 891 F. Supp. 122, 123 (S.D.N.Y. 1995).

The Court has reviewed the hundreds of pages of documentation put forward by the Plaintiff in support of their motion for attorneys' fees and costs.  While it appears that some of the costs fall into permissible categories, such as filing fees and copying expenses, many of the costs are for expenditures that are not allowable pursuant to the statute.  The Plaintiff has not provided the Court with any breakdown of the total amount of costs, which they calculate to be $2,801.277.28.

Therefore, within 10 days of the date of this Order, the Plaintiff is directed to file with this Court a bill of costs, including an affidavit that the costs claimed are allowable by law, are correctly stated, and were necessarily incurred.  Bills for the costs claimed shall be attached as exhibits pursuant to Local Rule 54.1(a).  The Defendants will then have 5 days to object to any costs.

Finally, we note that the Plaintiff may not obtain the award of expert fees pursuant to § 285. A court can invoke its inherent power to award such fees in exceptional cases based upon a finding of bad faith. See, e.g., Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc., 549 F.3d 1381, 1391 (Fed. Cir. 2008); Amsted Indus. v. Buckeye Steel Castings Co., 23 F.3d 374, 378 (Fed. Cir. 1994); Mathis v. Spears, 857 F.2d 749, 757–58 (Fed. Cir. 1988). However, as there is no basis for a finding of bad faith here, the Court will not award expert fees. See iLOR, LLC, 631 F.3d at 1380.

## VI. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiff's motion to enhance the damages award pursuant to 35 U.S.C. § 284 is **GRANTED**, but only to the extent that any damages award shall be doubled; **and it is further**

**ORDERED** that the Plaintiff's motion for pre- and post-judgment interest is **GRANTED**. With regard to pre-judgment interest, it shall be calculated according to the formula prescribed in Part III of this Order. After the Defendants provide the Plaintiff with a supplemental accounting, the parties shall meet and confer to arrive at a joint calculation according to this formula. Within 10 days of the date the supplemental accounting is provided, the parties shall provide to the Court a joint letter setting forth the correct calculation and amount of prejudgment interest to the date of this Order; **and it is further**

**ORDERED** that the Plaintiff's motion for a supplemental accounting and damages award for previously unaccounted-for infringing sales pursuant to 35 U.S.C. § 284is **GRANTED**. The Defendants shall provide a full accounting of all infringing sales from the

period beginning October 1, 2007 running through the effective date of the permanent injunction, the July 25, 2011 Order; **and it is further**

ORDERED that the Plaintiff's motion for attorneys' fees pursuant to 35 U.S.C. § 285 is DENIED; **and it is further**

ORDERED that the Plaintiff shall file a bill of costs with this Court within 10 days of the date of this judgment.  The Defendants are directed to file any objections within 5 days of the Plaintiff's submission.

**SO ORDERED.**

Dated: Central Islip, New York
December 8, 2011

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge