UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
METSO MINERALS, INC.,                                      :
           Plaintiff,                              :
                                   :     CV-06-01446 (ADS) (ETB)
           v.                                         :
                                   :
POWERSCREEN INT'L DIST. LTD. (now known as   :
Terex GB LTD.), TEREX CORP., POWERSCREEN    :
N.Y., INC., and EMERALD EQUIP. SYS., INC.,          :
                Defendants.                         :
-----------------------------------------------------------------------x

**PLAINTIFF METSO'S BRIEF AS TO A ROYALTY RATE FOR
DEFENDANTS' POST-VERDICT PATENT INFRINGEMENT**

**I.**      **Preliminary Statement**

This brief is submitted as directed by the Court (see Dkt. No. 688, p. 24) to propose a

royalty **rate** for defendants' post-verdict patent infringement.  For defendants' pre-verdict patent

infringement, the jury set a 10% royalty rate of defendants' sales to distributors. (Dkt. No. 688,

p. 30).  The Court's permanent injunction included a "Sunset" provision that permitted defendants

to continue their patent infringement after the jury's December 6, 2010 verdict through July 25,

2011. (Dkt. No. 613, pp. 11-13; Dkt. No. 638).  Due to defendants' pre-verdict willful infringement,

the Court doubled the pre-verdict damages awarded by the jury (Dkt. No. 688, p. 14), and also

doubled any supplemental damages to be awarded by the Court. (Dkt. No. 688, pp. 31, 38).  During

the almost eight-month-long "Sunset" period between the jury's verdict and the effective date of the

permanent injunction, defendants voluntarily sold 67 infringing screeners for a total of about $11.7

million in sales, apparently because defendants could still sell at a substantial profit at the jury-

determined 10% royalty rate.

Metso proposes that the royalty rate for defendants' post-verdict patent infringement should

be **20%,** and that, in accordance with the Court's prior decision, the resulting amount should be

**doubled** due to defendants' adjudged willful infringement. (Dkt. No. 688, pp. 31, 38).  Defendants'

post-verdict infringement was extraordinarily willful, taking place after defendants knew that the

jury had ruled that Metso's patent was valid, enforceable and infringed.

## II.     Relevant Law

In <u>Amado v. Microsoft Corp.</u>, 517 F.3d 1353, 1361 (Fed. Cir. 2008), the Federal Circuit noted that "there is a fundamental difference, however, between a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement."  The Federal Circuit instructed that post-verdict infringement should typically entail a <u>higher</u> royalty rate than the reasonable royalty found at trial. <u>Id.</u> at 1362 n.2.  Notably, for <u>post</u>-verdict patent infringement, the Federal Circuit did <u>not</u> apply the 15 factors for pre-verdict infringement set forth in <u>Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.</u>, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970).  Instead, the Federal Circuit set forth 5 factors that a trial court must consider when determining the appropriate royalty rate for post-verdict infringement:

> When a district court concludes that an injunction is warranted, but is persuaded to stay the injunction pending an appeal, the assessment of damages for infringements taking place after the injunction should take into account the change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability -- for example, [1] the infringer's likelihood of success on appeal, [2] the infringer's ability to immediately comply with the injunction, [3] the parties' reasonable expectations if the stay was entered by consent or stipulation, etc. -- as well as the evidence and arguments found material to the granting of [4] the injunction and [5] the stay. <u>Id.</u>, 517 F.3d at 1362.

In the present litigation, the "Sunset" provision of the permanent injunction was effectively a stay of the injunction for 8 months. See <u>ActiveVideo v. Verizon</u>, 2011 U.S. Dist. Lexis 135673, *40 (E.D.Va. 11/23/2011).

Failure to recognize the parties' changed legal status as a result of a jury's verdict of infringement of a valid patent "would create an incentive for every defendant to fight each patent infringement case to the bitter end because without consideration of the changed legal status, there is essentially no downside to losing." <u>Paice LLC v. Toyota</u>, 609 F.Supp.2d 620, 628 (E.D. Texas 2009) (post-verdict royalty at 4 times the pre-verdict royalty rate). In <u>Joyal Prods. v. Johnson Elec.</u>, 2009 U.S. Dist. Lexis 15531, at *39 (D.N.J. 2/27/2009), a pre-verdict royalty of 8% was raised to a post-verdict, pre-injunction royalty of 26% which "would not allow [the defendant] to profit from any further willful infringement, and, further, would adequately compensate [the plaintiff] for being

2

unwillingly deprived of its right to exclusivity". In <u>Bard Peripheral Vascular, Inc. v. C.R. Bard, Inc.</u>, 2012 U.S. App. Lexis 2612, *54-*56 (Fed. Cir. 2/12/2012), a pre-verdict royalty rate of 10% was doubled to 20% for post-verdict sales of infringing surgical grafts because the parties competed directly in that established market.

### III.   Application Of The Relevant Factors

#### A.   Defendants' Likelihood Of Success On Appeal

In defendants' post-trial motions, defendants challenged each and every one of the Court's and the jury's determinations. On each issue (claim construction, infringement, willful infringement, validity, and inequitable conduct), the Court determined that defendants challenges were without basis (not a "close factual call") and that the Court and/or jury was correct. (Dkt. No. 688, pp. 19, 22-3, 25-7, 30-1, 36, 43, 46; Dkt. No. 687, p. 16)). Thus, defendants' likelihood of success on appeal is low, strengthening Metso's bargaining position.

#### B.   Defendants' Ability To Immediately Comply With The Injunction

Two months after the jury's verdict of December 6, 2010, defendants argued in opposing Metso's motion for a permanent injunction that they would be unable to comply with a permanent injunction order by marketing a putatively non-infringing machine until at least five months thereafter (i.e., June 2011), convincing the Court that it needed the "Sunset" provision to enable them to fill contracts that had been signed before the jury's verdict. (Dkt. No. 613, p. 10). Defendants therefore admitted that they could not have immediately complied with an injunction order without causing substantial damage to their reputation and to their customers. Metso's bargaining position is strengthened by this factor. <u>ActiveVideo</u>, at *43.

#### C.   The Parties' Reasonable Expectations If The Stay Was Entered By Consent Or Stipulation

The parties' reasonable expectations if the stay was entered by consent or stipulation is inapplicable here since the stay (i.e., the "Sunset" provision) was Court ordered. As such, it does not strengthen or weaken the parties' respective bargaining positions. <u>ActiveVideo</u>, at *43.

**D.     Evidence Material To The Granting Of The Injunction**

In issuing the permanent injunction, the Court found that Metso had suffered irreparable injury, there were inadequate remedies at law because Metso practiced the patented technology and did not license it, Metso was in direct competition with defendants, and Metso lost market share as a result of defendants' infringement.  Any hardship and the public interest considerations that may have slightly favored defendants were eliminated by the "Sunset" provision. (Dkt. No. 613, pp. 4-11).  In totality, this factor therefore strengthens Metso's bargaining position.

**E.     Evidence Material To The Granting Of The "Sunset" Provision**

The Court did not issue a stay pending appeal as defendants initially requested (see Dkt. Nos. 626, 626-1) but issued the "Sunset" provision to give defendants extra time to redesign a putatively non-infringing machine and to allow defendants to avoid breaching contracts that had been made but not yet filled, although defendants never submitted any proof as to such unconsummated contracts, let alone evidence as to all of defendants' 67 post-verdict sales over 8 months — sales that substantially equal defendants' annual sales in each of 2009 and 2010. Thus, the reasons for granting the "Sunset" provision strengthen Metso's bargaining position.

**F.     Conclusion As To The *Amado* Factors**

The Amado factors demonstrate that Metso's bargaining position as of the date of the jury verdict was extremely strong and that the post-verdict royalty rate should be significantly higher than the pre-verdict (March 2000) royalty rate.

**G.     Even The *Georgia Pacific* Factors Support A Higher Royalty Rate**

Although the Federal Circuit ruled that the *Georgia Pacific* factors do not apply to a post-verdict royalty rate analysis, especially when a permanent injunction is issued with a "Sunset" provision, nevertheless the 15 *Georgia Pacific* factors, 318 F.Supp. at 1120, also strongly favor a higher royalty rate.  At trial, Metso's expert, Catherine Lawton, testified at length as to the *Georgia Pacific* factors as of March 2000 when defendants' infringement began.  The jury awarded Metso the full amount of damages for screener infringement based upon her trial testimony.  Admitted trial

4

evidence as to these factors (as of March 2000) remains equally applicable to the date of the jury's verdict, except for the last factor, the amount that Metso and defendants would have agreed upon at the pertinent time if both were reasonably and voluntarily trying to reach an agreement.  As of the jury verdict date, the jury had ruled that Metso's patent was valid, enforceable and willfully infringed by defendants, and that the prior royalty rate was 10%.  A permanent injunction was imminent, placing defendants' significant U.S. inventory of unsold machines at risk of being destroyed or forcibly exported, all at considerable cost to defendants.  Defendants could not offer customers a redesigned putatively non-infringing machine for 7 months, assuming the redesign was acceptable to customers.  Defendants had a strong interest in continuing to sell their infringing screeners to maintain customer and dealer loyalty.  Metso knew, and the Court observed (Dkt. No. 688, p. 13), that even at a 20% royalty rate, defendants still made a profit on their infringement. Metso had the negotiating power to obtain all of those profits.  After more than 10 years in the business, by 2010 Metso's machines were well-established, and Metso had no reason to license its patent to defendants since doing so would adversely impact Metso's sales of its directly competing screeners in the extremely competitive, near recession economy of early 2011.  Clearly Metso was in a much stronger bargaining position after the jury's verdict than in March 2000.

## IV.    Conclusion

For the foregoing reasons, the post-verdict, pre-injunction royalty rate for defendants' infringing sales should be **20%**, which should also be **doubled** in view of defendants' adjudged continued willful infringement.

Dated: February 17, 2012                       /s/ Michael C. Stuart
                                                Michael C. Stuart
                                                Lisa A. Ferrari
                                                Marilyn Neiman
                                                COZEN O'CONNOR
                                                277 Park Avenue
                                                New York, New York 10172
                                                Phone: 212-883-4900
                                                Telefax: 212-208-4663

                                                Counsel for Plaintiff
                                                Metso Minerals, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused to be served a complete and correct copy of the foregoing:

**PLAINTIFF METSO'S BRIEF AS TO A ROYALTY RATE FOR
DEFENDANTS' POST-VERDICT PATENT INFRINGEMENT**

on defendants, as follows, by ECF, to the following counsel of record:

> George B. Yankwitt
> Nathan Lane, III
> Mary M. Chang
> SQUIRE, SANDERS & DEMPSEY LLP
> 30 Rockefeller Plaza
> New York, NY 10112
>
> Jon R. Trembath
> MERCHANT & GOULD
> 1050 Seventeenth Street
> Denver, CO 80265
>
> Counsel for Defendants
> Powerscreen Int'l Dist. Ltd. (now known as Terex GB
> Ltd.), Terex Corp., Emerald Equipment Systems, Inc.,
> and Powerscreen New York, Inc.

Dated: February 17, 2012                    /s/ Michael C. Stuart
                                            Michael C. Stuart

NYO #1932023

6