# Merchant & Gould

An Intellectual Property Law Firm

1950 Independence Plaza
1050 Seventeenth Street
Denver, Colorado 80265-0100
Telephone: 303.357.1670
Fax: 303.357.1671
www.merchantgould.com

A Professional Corporation

Direct Contact | 303.357.1631
jtrembath@merchantgould.com

March 9, 2012

**VIA ECF** **(Courtesy copy via Federal Express)**

Honorable Arthur D. Spatt
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York  11722

Re:   *Metso Minerals, Inc. v. Powerscreen International Distribution Limited, et al.*
       United States District Court Eastern District of New York
       Civil Action No. CV-06-01446 (ADS) (ETB)

Dear Judge Spatt:

   Defendants ("Powerscreen") submit this letter in response to Plaintiff's letter and two briefs, filed on February 29, 2012, related to Plaintiff's request for post discovery damages and prejudgment interest.

   On December 8, 2011, this Court issued a post-trial Memorandum and Order (Docket No. 688) related to Plaintiff's post trial damages requests.  In that memorandum, this Court ordered the parties to submit:

1. A royalty calculation for machines which Defendant sold after close of discovery, for which Plaintiff did not present evidence at trial (October 2007 – December 6, 2010), subject to a 10% royalty rate; Memorandum, p. 31.

2. A calculation of pre-judgment interest for calculated royalty using March 3, 2011 as the date of judgment.  *Id.* at p. 19.; and

3. A royalty rate to be determined for sales of Defendant's machines post verdict through the date of the injunction (December 6 - July 25, 2011); *Id.* at p. 24.

   The Court also directed Powerscreen to "promptly provide Plaintiff with documents that are sufficient to identify the exact number of infringing screeners sold from October 1, 2007 through July 25, 2011 to any distributor, entity or person in the United States." *Id*. at 31.  Powerscreen provided the required identification of all such screeners on January 16, 2012, along with the

Honorable Arthur D. Spatt
United States District Judge
March 9, 2012
Page 2

required "affidavit attesting to the accuracy and completeness of the information provided." *Id*. at 31; Exh. B to Plaintiff Metso's Total Damages Request.

By letter dated January 24, 2012, Plaintiff sent Powerscreen a list of 50 additional screeners that Plaintiff claimed Powerscreen missed in its identification. *Id*. at Exh. D. Powerscreen searched its records for the screeners Plaintiff listed and found that the majority of these screeners were not sold in the United States and the remaining machines were either already included in the evidence presented at trial or the provided serial numbers did not exist in Powerscreen's sales database. By letter of February 10, 2012, Powerscreen informed Plaintiff that none of the machines in the list of 50 were eligible for an accounting and that Powerscreen stood by the veracity of the affidavit submitted on January 16, 2012. *Id*. at Exh. E.

This letter addresses this Court's orders in turn, and also addresses various errors made by Plaintiff in its calculations.

1. **Royalty for Machine Sales that Plaintiff did not Present at Trial**

The table below summarizes sales of screeners that were not included in Plaintiff's damage calculations presented at trial. They are divided by sales made by December 6, 2010 (date of the jury's verdict), for which this Court ordered a 10% royalty applied, and sales post verdict, for which this Court has not yet determined a royalty rate. Memorandum of Decision and Order, Docket No. 688. The numbers and calculations are attached as Exhibit 1.

| Date | Gross Sales | Royalty Based on the Court's order |
|---|---|---|
| Post discovery to 12/06/2010 | $42,591,179 | **$4,259,118** |

Plaintiff has included an additional 47 units in their pre-verdict calculations, calling them "Missing Units." These units are what remains of the allegedly 50 missing units that Plaintiff submitted to Powerscreen for identification on January 24, 2012 (and discusses in its "Total Damages Request" brief). Of the 47 units listed by Plaintiff here, 45 were **not sold into the United States**. They were sold into Canada, Mexico, and India. The remaining two units are:

| Machine Serial No. | Explanation |
|---|---|
| PID00066K75D30069 | This machine was included in Plaintiff's damages presentation to the jury, and is listed in Plaintiff's own spreadsheet at entry # 1494 (Exh. 1 to Lawton Declaration). It is also listed in Powerscreen's spreadsheet (Exhibit 5, attached) as entry #1499. |
| PID00066L76D30106 | There is no machine with this serial number. Powerscreen believes that this is a typo, and the machine is actually PID00066L76D30108. This machine was included in Plaintiff's damages presentation to the jury, and is listed in |

> Plaintiff's own spreadsheet at entry # 1514 (Exh. 1 to Lawton Declaration). It is also listed in Powerscreen's spreadsheet (Exhibit 5, attached) as entry #1519.

The 47 so-called Missing Units are not properly included in Plaintiff's royalty calculation of $5,027,290. The correct calculation, without these units, is $4,259,118.

**2. Pre-Judgment Interest**

This Court ordered the parties to calculate interest "using the average U.S. Treasury Bill rate during that same period [March 9, 2000 to March 3, 2011] and compounded annually based upon the actual number of infringing sales in each year." Memorandum and Order, Docket No. 688 p. 19. Plaintiff's calculations include several errors.

First, Plaintiff did not use a Treasury Bill ("T-Bill") rate as ordered by this Court. Instead, Plaintiff used the annual Treasury "constant maturities" rate. Exh. 1 to Lawton Declaration ("Market yield on U.S. Treasury securities at 1-year constant maturity, quoted on investment basis"). This rate is based on a bundle of securities, and is the rate this Court discussed as being applicable to a post-judgment interest calculation. Memorandum and Order at p. 16. As shown in Exhibit 2 attached hereto, Powerscreen's calculation uses the Treasury Bill rate as specifically required by this Court and sourced from the U.S. Department of Treasury Resource Center. Memorandum and Order at pp. 18 and 19.

Second, although Plaintiff's calculation accounts for some duplicates, it includes other duplicate transactions, and royalties with interest on multiple transactions for the exact same machine. Powerscreen has corrected the calculation for all duplicates, as shown in Exhs. 3 and 4, attached hereto.

Third, Plaintiff has improperly included the so-called "Missing Units," explained above, in its pre-judgment interest calculations. Plaintiff is not entitled to royalties on these machines sold outside the United States, and is thus also not entitled to pre-judgment interest for these sales.

Fourth, the pre-judgment interest is to be calculated on the actual judgment. Here, the damages judgment was for $15,800,000 in royalties. Plaintiff's pre-judgment interest, however, is based on $15,874,098. Plaintiff has not made any correction in its calculation to account for this discrepancy.

Correcting for all of the inaccuracies in Plaintiff's calculations, the pre-judgment interest is

| Date | Pre-Judgment Interest |
| --- | --- |
| For units presented at Trial | $2,189,454 (Exh. 1, attached hereto) |
| Post discovery to 12/06/2010 | $26,424      (Exh. 5, attached hereto) |
| **TOTAL** (for all machines sold by 12/06/2007) | **$2,215,878** |

### 3. Post-Verdict Royalty

Mobile screening plants with folding screens were sold for decades before U.S. Patent No. 5,577,618 issued, and continue to be sold today and into the foreseeable future by many manufacturers, including Metso, Powerscreen, Sandvik and McCloskey. As this Court noted, the '618 patent is not an invention of the mobile screening plant, but rather "comprises an improvement on a screener so that the machine may be more readily compacted for transport from site to site." Memorandum of Decision and Order, Docket No. 686, p. 2. As such, Metso did not and could not make out a lost profits damages case at trial; Metso's damages case is limited to a reasonable royalty.

Incorrectly applying the Amado v. Microsoft Corp. case, Metso is now asking this Court for a 20% royalty of gross sales of Powerscreen's machines from December 7, 2010 to July 25, 2011, the date this Court entered a permanent injunction. 517 F.3d 1353 (Fed. Cir. 2008). The 20% gross sales royalty that Metso requests translates into 96% of Powerscreen's profits. There is nothing "reasonable" about Metso's royalty request. With this Court's ordered enhancement of damages, Metso's requested award would be **192% of Powerscreen's profits**. That is simply untenable.

The 1946 amendment to the Patent Act removed disgorgement of an accused infringer's profits as a potential damages award in a utility patent infringement suit. Aero Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 505 (1964). But Metso's royalty request, translating to 96% of Powerscreen's profits before enhancement, amounts to exactly that: statutorily prohibited disgorgement.

The Amado case could not, and does not, permit such disgorgement of profits. In Amado, the accused infringer lost in district court, and the district court entered a permanent injunction, then ***stayed that injunction pending appeal***. ***The Federal Circuit then affirmed the district court's finding of infringement***. Amado v. Microsoft, 185 Fed.Appx. 953 (Fed.Cir. 2006). The Amado district court then determined the royalty Microsoft owed for its sales during the appeal, while the injunction was stayed.

The jury had awarded Amado $0.04 for each unit sold by Microsoft. Amado, 517 F.3d at 1361. For Microsoft's sales during the stay of injunction pending appeal, the judge awarded Amado the same $0.04 per unit, but then trebled the amount for willful infringement. Id. On the second appeal, the *Federal Circuit determined that this trebling was error*, and remanded the determination to the district court. Id. at 1362. Specifically, the Federal Circuit stated:

> "When a district court concludes that an injunction is warranted, but is persuaded to *stay the injunction pending an appeal*, ***the assessment of damages for infringements taking place* after *the injunction*** should take into account the change in the parties' bargaining positions, and the resulting change in economic circumstances . . ." Id. (emphases added).

Honorable Arthur D. Spatt
United States District Judge
March 9, 2012
Page 5

The present case is not one where this Court entered an injunction after judgment, then stayed the injunction pending appeal, allowing infringing sales to continue. Here, this Court entered an injunction on July 25, 2011, and Powerscreen has complied with that injunction. This Court's final judgment regarding infringement, validity, trial awarded damages, and willfulness was entered on December 8, 2011, at which point Powerscreen had not sold a single accused screener in 5 months (Powerscreen's last sale was 2 weeks before this Court entered the injunction).

Metso's argument that Powerscreen's timely compliance with this Court's injunction order somehow entitles Metso to 192% of Powerscreen's profits is beyond the pale. As the table below shows, using the Court's orders to date, with a 10% royalty on gross revenue, already puts more than 100% of Powerscreen's profits into Metso's pocket (see table below). Doubling Metso's "reasonable" royalty for a patent on an "improvement . . . so that the machine may be more readily compacted for transport" to award an almost double disgorgement of all of Powerscreen's profits would be a stunning contradiction of even the most liberal interpretations of damages law. See, e.g., Uniloc USA v. Microsoft, 632 F.3d 1292, 1320 (Fed. Cir. 2011) ("The Supreme Court and this court's precedents do not allow consideration of the entire market value of accused products for minor patent improvements simply by asserting a low enough royalty rate."); ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed.Cir. 2010) ("Any evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute.").

| Date | Gross Sales | Powerscreen's Profit | Royalty | Court Ordered Enhancement | Pre-Judgment Interest |
| --- | --- | --- | --- | --- | --- |
| Presented at Trial | $158,740,988 | $32,862,311 | $15,800,000 | $31,600,000 | $2,215,890 |
| Post discovery to 12/06/2010 | $42,591,179 | $8,816,374 | $4,259,118 | $8,518,236 | $26,424 |
| 12/07/2010 to 07/25/2011 | $11,684,142 | $2,418,617 | $1,116,841 | $2,233,682 | $12* |
| Total | $213,016,309 | **$44,097,302** | $21,227,532 | **$42,352,918** | **$2,215,890** |

Metso's awarded total, before post-judgment interest: **$44,568,808**
* interest on machines sold 12/07/10 – 03/03/11. The remaining machines would be subject to post-judgment interest.

### 4. Conclusion

Metso's proposed damages calculation includes sales that were not made into the United States and duplicate sales, uses the wrong rate for calculating pre-judgment interest, and does not correct for a royalty that is larger than what the jury awarded. Metso's demand for a post-verdict royalty that amounts to 192% of Powerscreen's profits is counter to all precedent and the Patent

Honorable Arthur D. Spatt
United States District Judge
March 9, 2012
Page 6

Act itself.  Correcting Metso's accounting errors and applying this Court's ordered 10% royalty rate to all sales still gives Metso an overall damages award of $44,568,808, more than full disgorgement of Powerscreen's profits.  That more than sufficiently meets 35 U.S.C. § 284's requirement of "damages adequate to compensate for the infringement" of a patent on an "improvement . . . so that the machine may be more readily compacted for transport." Memorandum of Decision and Order, Docket No. 686, p. 2.

         Respectfully submitted,

         */s/ Jon R. Trembath*
         Jon R. Trembath
         Attorney for Defendants

Enclosure
cc:    Plaintiff's counsel (via ECF)