**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
METSO MINERALS, INC.,

                       Plaintiff,

                                                              **ORDER**
      -against-                                 06-cv-1446 (ADS)(ETB)

POWERSCREEN INTERNATIONAL
DISTRIBUTION LIMITED, now known as
TEREX GB LIMITED, TEREX
CORPORATION, POWERSCREEN NEW
YORK, INC. and EMERALD EQUIPMENT
SYSTEMS, INC.,

                       Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Cozen O'Connor**
*Attorneys for the Plaintiff*
277 Park Avenue
New York, NY 10172
       By:    Michael C. Stuart, Esq.
                Marilyn Neiman, Esq.
                Lisa Ferrari, Esq., Of Counsel

**Lathrop & Gage LLP**
*Attorneys for the Defendants*
950 17th Street, Suite 2400
Denver, CO 80202
       By:     Jon R. Trembath, Esq., Of Counsel

**SPATT, District Judge.**

       This matter was tried before a jury from October 18 to December 6, 2010.  On March 3, 2011, judgment was entered in favor of the Plaintiff Metso Minerals Inc. ("Metso").  Following certain post-trial proceedings, on August 18, 2011, the Defendants Powerscreen International Distribution Limited, now known as Terex GB limited, Terex Corporation ("Terex"),

1

Powerscreen New York, Inc., and Emerald Equipment Systems, Inc. (collectively "Powerscreen") appealed to the United States Court of Appeals for the Federal Circuit from the Court's orders relating to a motion by Metso for injunctive relief.

On January 6, 2012, Powerscreen appealed to the Federal Circuit from the Court's judgment based on the jury verdict, and the orders regarding pre- and post-trial motions, and other decisions and rulings affecting the questions of the validity and infringement of U.S. Patent No. 5,577,618 ("the '618 patent").

On June 22, 2012, this Court held a hearing regarding whether to stay all post-trial proceedings as well as regarding the propriety and amount of a bond on appeal. Regarding a bond, the following colloquy took place:

> THE COURT: I don't understand why a bond is not posted. I will find out. Why isn't a bond posted?
>
> MR. TREMBATH: Your Honor, one wasn't required. We are happy to post a bond. Give us three weeks. We will post it for the $50 million, as proposed, with a caveat that if the final judgment isn't $50 million, we would like Metso to pay a pro rata share of the cost of the bond. If that is okay with the court.
>
> THE COURT: I'm sorry. You will post a bond for the whole $50 million and what?
>
> MR. TREMBATH: If their judgment doesn't total $50 million at the end of the day, because we are operating on their number, we don't think they get the $50 million.
>
> THE COURT: If not $50 million, they will pay back the amount of the bond.
>
> MR. TREMBATH: The bond.
>
> THE COURT: That is fair enough. What do you say about that?
>
> MR. STUART: Well, first of all, they have looked at all our filing and they have admitted at least $44 million. So we are talking about a difference of $6 million. And I think that it is premature to make any sort of ruling on that or ask us to agree to anything. After there is an appeal, then they can ask for costs based upon

> whatever theories they have. Whatever the law is. I haven't looked at what the law is.
>
> THE COURT: I am surprised. I guess I'm not understanding. Here they have offered to put up a bond for the entire amount that you say is due, and all they say is that if it is ultimately determined that that is not the amount you should collect, you should pay them back for part of the bond, and you say no?
>
> MR. STUART: You are talking about the cost of the bond?
>
> THE COURT: Yes.
>
> MR. STUART: The difference. I haven't looked at the law but my guess is that we would be liable for that under --
>
> THE COURT: I'm not interested in whether you are liable.
>
> MR. STUART: So I think yes. Yes.
>
> THE COURT: They have made a very good suggestion.
>
> MR. STUART: Yes. We will agree to that.
>
> . . .
>
> THE COURT: Bond for $50 million by July 13. You will send me a letter saying you are [] putting up the bond. And the only condition is, if it is ultimately decided by the federal circuit or by this court that it is not the full $50 million, that percentage-wise on the cost of the bond they will reimburse you.

(Trembath Decl., ¶ 4 & Ex. A, at 7-9.)

On June 25, 2012, the Court issued an order which provided, in pertinent part:

> [A]s stated on the record on June 22, 2012, the Defendants shall file an appeal bond in the amount of $50 million by July 16, 2012. If the Plaintiff does not eventually recover this full amount, it shall be responsible for its pro rata share of the cost of the bond.

On July 12, 2012, Powerscreen filed the bond. On August 3, 2012, the Court entered the bond as an order:

3

> Plaintiff has agreed that a bond in the amount of $50,000,000 will adequately guarantee Plaintiff of full payment and that if the ultimate award granted is less tha[n] $50,000,000, Plaintiff will reimburse Defendants for the cost of the bond above the amount finally awarded.

Metso never appealed nor challenged the Court's orders regarding the bond.

On May 14, 2013, the Federal Circuit concluded that the '618 patent was invalid and reversed the judgment in favor of Metso. On August 9, 2013, the Federal Circuit denied Metso's motion for reconsideration. On August 16, 2013, the Federal Circuit entered its final Judgment in favor of Powerscreen, and issued its Mandate. In doing so, the Federal Circuit stated that "no costs" were awarded. Metso has indicated that it intends to appeal that reversal to the Supreme Court of the United States.

On September 9, 2013, Powerscreen moved for (1) release of the bond and (2) enforcement of the orders requiring Metso to reimburse Terex for the premium paid for the bond, an amount that totaled $400,000.

On September 13, 2013, Terex paid an additional $100,000 to the surety for the quarterly installment corresponding to the bond premium from July 6, 2013 through October 6, 2013, the first quarter of the second year the bond was in place. Interestingly, the invoice was dated July 22, 2013, and stated that installment payment was "due upon receipt." In addition, above the remittance form to be sent to the surety along with a check were the typewritten words, "This is a Reissued Invoice," suggesting that Terex may have been delinquent in paying the installment payment for the coverage period beginning on July 6, 2013.

Also, on September 13, 2013, Powerscreen filed a supplemental declaration, exhibits, and an amended proposed order. The Supplemental Declaration stated that "[s]ince the filing of the Motion" on September 9, 2013, Terex "[h]ad received an invoice from the bond surety in the amount of $100,000." (Trembath Decl, at ¶ 3.)

4

On September 23, 2013, Metso consented to Powerscreen's request to rescind the bond, but opposed that part of Powerscreen's motion to recover the bond costs on behalf of Terex. Metso acknowledged that Powerscreen sought $500,000 and generally disputed Powerscreen's entitlement to that amount. However, Metso did not specifically argue, as it does now, that the additional $100,000 payment Terex made, almost one month after the Federal Circuit mandate, was different in kind from the $400,000 in payments made prior to that mandate.

On November 27, 2013, the Court granted Powerscreen's motion seeking reimbursement in the amount of $400,000. The Court reasoned that Metso was "liable for its pro rata share, 100% of the cost of the appeal bond, $400,000." However, the Court did not acknowledge that Terex had paid the additional $100,000 quarterly bond premium and sought recovery of that sum. On December 5, 2013, the Clerk of the Court entered judgment in favor of Terex in the amount of $400,000.

On December 19, 2013, Powerscreen filed a letter motion and declaration with proof of payment of the additional $100,000 Terex paid, seeking to correct the judgment to include the full cost of the bond premium in an amount of $500,000. Metso opposed the letter motion.

On December 27, 2013, this Court denied Powerscreen's letter motion without prejudice as not compliant with Local Civil Rule 7.1.

On January 3, 2014, Powerscreen submitted a formal motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.) 59(e) or, in the alternative, Fed. R. Civ. P. 60(a), seeking to correct the judgment to reflect the additional $100,000 bond premium paid by Terex. Metso opposes this motion. In particular, Metso faults Powerscreen for failing to seek release of the bond immediately after the May 14, 2013 Federal Circuit order reversing the jury verdict. In this regard, Metso contends that Powerscreen could have avoided this additional $100,000 payment

5

but failed to mitigate the cost of the bond. Powerscreen counters that the Federal Circuit decision was not final until it issued its mandate on August 16, 2013, and that Powerscreen, in fact, mitigated the cost of the bond "to the extent feasible by arranging for invoice of the annual bond premium on a quarterly basis." (Powerscreen Reply Mem., at 5.) Metso responds that, even after the mandate was issued on August 16, 2013, Powerscreen did not move to release the bond until September 9, 2013, at which time it did not mention the next quarterly installment Terex was set to pay.

However, the Court need not address these arguments because, in its view, the omission of the additional $100,000 payment in the November 27, 2013 decision constituted a "clerical mistake" correctable under Fed. R. Civ. P. 60(a).

As an initial matter though, the Court finds that to the extent Powerscreen seeks relief under Fed. R. Civ. P. 59(e), Powerscreen's motion is untimely. Courts have recognized three major grounds justifying reconsideration pursuant to Rule 59(e): "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citations and internal quotation marks omitted). To invoke Rule 59(e) to alter or amend a judgment, the moving party must move "no later than 28 days after entry of judgment." Fed. R. Civ. P. 59(e); see also Local Civil Rule 6.3. Moreover, under Fed. R. Civ. P. 6(b), courts may not extend the time for taking any action under Rule 59(e). Goldstein v. Hulihan, 09 CIV. 6824 CS (PED), 2012 WL 1438259, at *5 (S.D.N.Y. Apr. 6, 2012), report and recommendation adopted, 09-CV-6824 (CS)(PED), 2012 WL 1438251 (S.D.N.Y. Apr. 25, 2012); see also Jackson v. Crosby, 375 F.3d 1291, 1293 n. 5 (11th Cir. 2004) (noting that the additional 3 days provided

6

in Fed. R. Civ. P. 6(d), formerly Rule 6(e), "can never extend the time for filing a Rule 59(b) or (e) motion").

In this case, Powerscreen filed its procedurally-improper letter motion on December 19, 2013. The Court denied that motion without prejudice, giving Powerscreen a window of 14 days under Fed. R. Civ. P. 59(e) to file a formal motion (i.e., by January 2, 2014, or 28 days after the December 5, 2013 judgment). Instead, Powerscreen filed its motion on January 3, 2014, 29 days after the judgment.

Powerscreen contends that its December 19, 2013 letter motion was timely and therefore, under the provision of Fed. R. Civ. 59(e), the Court may consider on the merits Powerscreen's otherwise untimely motion filed on January 3, 2014. However, as the Second Circuit has held, "[a]ny interpretation of the rules permitting piecemeal filing, as [Powerscreen] advances here, would allow parties to circumvent the purpose of Rule 60's time limits by filing incomplete motion papers at the deadline." Colucci v. Beth Israel Med. Ctr., 531 F. App'x 118, 120 (2d Cir. 2013); cf. Feldberg v. Quechee Lakes Corp., 463 F.3d 195, 197 (2d Cir. 2006) ("Permitting the [plaintiffs] to supplant their timely yet insufficient 'placeholder' Rule 59(e) motion . . . with their subsequent augmented filing . . . would afford them an easy way to circumvent Rule 60(b)'s prohibition on granting an enlargement of time for filing motions under Rule 59(e).").

Nonetheless, as noted above, the Court finds that relief is appropriate under Fed. R. Civ. P. 60(a), which "has no time limit." Uni-Rty Corp. v. Guangdong Bldg. Fin., Inc., 95 CIV. 9432 (GBD), 2013 WL 150214, at *3 (S.D.N.Y. Jan. 11, 2013). Rule 60(a) provides that a court "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). "The decision to award relief pursuant to Rule 60(a) rests within the sound discretion of the district court." Peyser v.

Searle Blatt & Co., Ltd., 99 CIV. 10785 (WK), 2003 WL 1610772, at *1 (S.D.N.Y. Mar. 24, 2003).

The November 27, 2013 order makes clear that Metso is liable for its pro rata share, 100%, of the cost of the appeal bond, without any caveats as to the timing of the release of the bond. In this regard, permitting Terex to recover the additional $100,000 premium payment does not "provide a way for parties to relitigate matters already decided, to change errors in what a court has deliberately done, or to attempt to establish a right to relief which the court has not previously recognized." L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc., 00-CV-7394 (ADS), 2013 WL 3863892, at *4 (E.D.N.Y. July 25, 2013)(citations and quotation marks omitted)(Spatt, J.). Rather, the Court makes this correction to reflect its "contemporaneous intent" at the time of the initial decision. Garvies Point Rd. Corp. v. City of Glen Cove, 11-CV-0949 (JS)(WDW), 2012 WL 3288885, at *2 (E.D.N.Y. Aug. 10, 2012).

The Court emphasizes that the issue of the $100,000 premium payment was previously before the Court, and Metso had the opportunity to, but did not argue, as it does now, that this payment "stands in an entirely different category than the $400,000 award" in light of Powerscreen's alleged dilatory tactics with respect to the final bond premium payment. (Metso Mem. in Opp., at 11.) In this regard, the Court finds that there were no unnecessary dilatory tactics by Powerscreen in regard to the additional $100,000 bond payment.

For the foregoing reasons, the Court grants in part and denies in part Powerscreen's motion to amend or correct the December 5, 2013 judgment granting Powerscreen's motion for reimbursement of the bond premium in the amount of $400,000. The motion is denied as untimely to the extent Powerscreen seeks relief under Fed. R. Civ. P. 59(e). The motion is

granted to the extent Powerscreen seeks relief under Fed. R. Civ. P. 60(a). The Clerk of the Court is directed to amend the December 5, 2013 judgment to enter judgment in favor of Terex Corporation in an additional amount of $100,000, for a total of $500,000.

**SO ORDERED.**

Dated: Central Islip, New York
January 29, 2014

                                              *Arthur D. Spatt*
                                              ARTHUR D. SPATT
                                              United States District Judge